# EXHIBIT 2

2018 WL 8806551
Only the Westlaw citation is currently available.
United States District Court, E.D.
Michigan, Southern Division.

ALLSTATE INSURANCE
COMPANY, et al., Plaintiffs,
v.
OMIC, LLC d/b/a Oakland MRI, et al., Defendants.

Case No. 17-13908
|
Signed 09/24/2018

**Attorneys and Law Firms**

Andrew H. DeNinno, Michael Schollard, Nathan Tilden, Richard D. King, Jr., Jacquelyn McEttrick, Smith & Brink, P.C., Braintree, MA, for Plaintiffs.

Emily R. Warren, Peter W. Joelson, Joelson Rosenberg, PLC, Farmington Hills, MI, Gary R. Blumberg, Dearborn, MI, for Defendants.

ORDER GRANTING IN PART AND DENYING
IN PART DEFENDANTS' AMENDED MOTION
TO STRIKE PORTIONS OF COMPLAINT
AND TO DISMISS COMPLAINT [ECF No. 13]

Victoria A. Roberts, United States District Judge

**I. INTRODUCTION**

*1 Plaintiffs allege that Defendants – a neurosurgery clinic, a magnetic resonance imaging ("MRI") and diagnostic imaging facility, and their two owners/managers (collectively, "Defendants") – engaged in a healthcare fraud scheme from 2008 through the filing of the complaint, which involved submitting false and fraudulent insurance claims seeking reimbursement from Plaintiffs under the Michigan No-Fault Act, Mich. Comp. Laws § 500.3101, *et seq.*

Defendants – OMIC, LLC d/b/a Oakland MRI ("Oakland MRI"), Lucia Zamorano, M.D., PLC d/b/a Michigan Brain & Spine Surgery Center ("Michigan Brain & Spine"), Susan Swider ("Swider"), and Lucia Josefina-Swider Zamorano, M.D. ("Zamorano") – move to strike certain allegations in the complaint pursuant to Federal Rule of Civil Procedure 12(f) and to dismiss the complaint under Rule 12(b)(6).

The motion is fully briefed. The Court determines the motion without a hearing pursuant to E.D. Mich. LR 7.1(f)(2).

For the reasons below, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' motion.

To the extent Defendants request dismissal, their motion is **DENIED**.

With respect to Defendants' request to strike certain allegations in the complaint, the motion is **GRANTED IN PART**, as set forth below.

**II. BACKGROUND**
Plaintiffs are three Allstate entities: Allstate Insurance Company, Allstate Property and Casualty Insurance Company, and Allstate Fire and Casualty Insurance Company (collectively "Allstate"). The following facts are alleged in the complaint.

Swider is the sole owner of Oakland MRI, and Zamorano is the sole owner of Michigan Brain & Spine; however, Swider and Zamorano jointly operate the clinics (the "Defendant Clinics"). Zamorano organized Michigan Brain & Spine in 2005; Swider organized Oakland MRI in 2006.

Oakland MRI submitted its first charge to Allstate for a February 28, 2008 date of service. Allstate claims that after February 2008, Zamorano referred nearly every Michigan Brain & Spine patient to Oakland MRI for diagnostic imaging. Indeed, since 2009, Zamorano has referred 5,713 patients for MRIs, 5,294 (92.7%) of whom she sent to Oakland MRI. Allstate says these "extraordinary referral numbers" are motivated by Swider and Zamorano's personal relationship; specifically, Allstate says Swider and Zamorano are domestic partners with intermingled finances.

With their shared financial gain as a motivating factor, Allstate alleges that from 2008 through the filing of the complaint, Defendants "engaged in a scheme to defraud Allstate by submitting false and fraudulent insurance claims through the U.S. Mail seeking reimbursement under the Michigan No-Fault Act ... for purported evaluations and diagnostic testing that was [1] improperly referred, [2] unlawful, [3] medically unnecessary, and [4] billed at unreasonable rates."

Allstate says the majority of the testing and treatment at issue originated with purported office examinations performed by Zamorano and Michigan Brain & Spine. It says this testing was not individualized and often performed despite the complete absence of neurologic deficits in patient examinations.

**\*2** Specifically, Allstate alleges that Defendants' scheme included the following fraudulent practices: (1) on a *pro forma* basis at the outset of treatment, Zamorano made medically unnecessary MRI referrals to Oakland MRI, in violation of applicable standards of care; (2) in conjunction with the medically unnecessary MRIs, Oakland MRI performed additional medically unnecessary ancillary procedures, such as x-rays, 3D rendering of MRIs, and use of a contrast agent for routine imaging; and (3) Zamorano ordered and/or performed medically unnecessary electrodiagnostic testing – i.e., electromyography testing ("EMG") and nerve conduction studies ("NCS") – that was not indicated by patients' complaints and neurological examination findings, but rather was based on a predetermined protocol. Allstate also alleges that Oakland MRI performed MRIs that were improperly referred by attorneys in the absence of valid prescriptions.

Allstate says Defendants' fraudulent scheme was designed to and did result in the ordering and performance of far more tests and MRI scans than were medically reasonable and necessary for the treatment of the patients at issue in the complaint.

Allstate further alleges that Defendants engaged in fraudulent billing practices. Specifically, it says Zamorano and Michigan Brain & Spine routinely exaggerated the CPT billing codes submitted to Allstate in order to inflate its charges.

Finally, Allstate alleges that Oakland MRI's charges are unreasonable and not customary (i.e., not the same it customarily charges for the service in a case not involving insurance). Allstate refers to documents filed with the State of Michigan in which Oakland MRI states that its cost, at most, will be $493 per MRI and its average charge for an MRI will be $873. In comparison, however, since February 2009, Oakland MRI charged Allstate a minimum of $5,000 and as much as $7,000 for each MRI it performed. During the first year Oakland MRI submitted charges to Allstate (i.e., charges before February 24, 2009), the amount it charged per MRI was between $1,635 and $3,360; however, on February 24, 2009, Oakland MRI abruptly doubled and in some cases tripled the amount it charged Allstate for MRIs performed. Allstate alleges the amounts Oakland MRI charges Allstate is greater than the amount it charges other payors and greater than when services are not provided under the No-Fault Act.

Allstate says Defendants' fraudulent scheme – including their fraudulent billing practices and submission of unreasonable and uncustomary charges – was designed solely to generate additional claims for payment and increased billing amounts against Allstate.

Allstate filed its complaint on December 5, 2017. Allstate asserts causes of action for common law fraud, civil conspiracy, payment under mistake of fact, unjust enrichment, and violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(c) and (d).

As a result of Defendants' fraudulent scheme, Allstate says it reimbursed the Defendant Clinics in excess of $264,600 for fraudulent claims submitted. In addition to that amount, Allstate seeks to recover: (1) treble damages; (2) statutory interest; (3) claims handling costs; (4) the cost of investigation to uncover the fraudulent scheme; and (5) attorney fees.

Allstate also requests declaratory relief pursuant to 28 U.S.C. § 2201. Specifically, it asks the Court to declare that: (1) Allstate has no obligation to pay pending and previously denied No-Fault insurance claims submitted by Defendants for reasons set out in the complaint; (2) Oakland MRI cannot seek payment from Allstate for benefits for any claim related to the fraudulent conduct detailed in the complaint because the charges for MRIs submitted by it are unreasonable; and (3) the Defendant Clinics cannot seek payment from any person insured by Allstate related to the fraudulent conduct detailed in the complaint.

### III. MOTION TO STRIKE

#### A. LEGAL STANDARD

**\*3** Under Federal Rule of Civil Procedure 12(f), the Court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." A matter is "impertinent" or "immaterial" when it is not relevant to the issues involved in the action, and "[t]he word 'scandalous' in Rule 12(f) generally refers to any allegation that unnecessarily reflects on the moral character of an individual or states anything in repulsive language that detracts from the dignity of the court." *See Llewellyn-Jones v.*

*Metro Prop. Grp., LLC*, 22 F. Supp. 3d 760, 776 (E.D. Mich. 2014) (citation and internal quotation marks omitted).

Although the Court has broad discretion to strike matters under Rule 12(f), "it is well established that the action of striking a pleading should be sparingly used by the courts. It is a drastic remedy to be resorted to only when required for the purposes of justice." *Jackson v. Broughton*, No. 09-11438, 2010 WL 2993993, at *1 (E.D. Mich. July 28, 2010) (citation and internal quotation marks omitted). The Sixth Circuit has stated that courts should grant a motion to strike "only when the pleading to be stricken has no possible relation to the controversy." *Brown & Williamson Tobacco Corp. v. United States*, 201 F.2d 819, 822 (6th Cir. 1953).

District Courts within this circuit have further explained that the Court "should not strike a matter 'unless the court can confidently conclude that the portion of the pleading to which the motion is addressed is redundant or is both irrelevant to the subject matter of the litigation and prejudicial to the objecting party.'" *Rock Holdings, Inc. v. Certain Underwriters at Lloyd's London*, No. 09-11599, 2009 WL 2475400, at *4 (E.D. Mich. Aug. 11, 2009) (citation omitted). "A motion to strike should also be granted where the requested relief is unavailable." *Johnson v. Cty. of Macomb*, No. 08-10108, 2008 WL 2064968, at *1 (E.D. Mich. May 13, 2008).

### B. DEFENDANTS' MOTION TO STRIKE

Defendants argue that the Court should strike numerous allegations in the complaint. Defendants separate the types of allegations into six classes.

#### 1. Allegations Regarding Zamorano and Swider's Personal Relationship and Personal Finances

Defendants argue that the following allegations in the complaint regarding Zamorano's and Swider's personal relationship and personal finances are immaterial, impertinent, and scandalous:

9. Swider and Zamorano are domestic partners who jointly own at least five (5) houses that have a collective estimated value of over $4 million, and have various other intermingled finances.

39. Swider is the domestic partner of Zamorano, with whom she shares ownership of various real and personal property.

44. Zamorano is the domestic partner of Swider, with whom she shares ownership of various real and personal property.

102. These extraordinary referral numbers are motivated by the intermingled personal finances of Zamorano and Swider.

103. Zamorano and Swider jointly own at least five (5) houses that have a collective estimated fair market value of at least $4 million.

104. Zamorano also admitted in proceedings related to her termination from Wayne State University that she and Swider share credit cards.

105. Thus, each referral made by Zamorano to Oakland MRI results in a direct financial benefit to a member of her household and, indirectly, a financial benefit to herself.

196. Zamorano has been the domestic partner of Swider since at least 2001, and co-owns at least five (5) homes and other financial assets with her.

**\*4** 197. The financial benefit Swider realizes from the performance of MRIs at Oakland MRI results in a personal gain for Zamorano.

The number next to each allegation reflects the paragraph number of that allegation in the complaint.

Defendants argue that the Court should strike these allegations because: (1) the sexual orientation and/or marital status of Zamorano and Swider is not material to Allstate's claims; (2) the RICO Act does not require that alleged co-conspirators have a personal relationship or share in the financial gain from the alleged conspiracy; (3) Allstate included the allegations about Zamorano and Swider's sexual orientation so that the finder of fact will make improper conclusions about their morality; and (4) information regarding Zamorano and Swider's co-ownership of property, intermingling of finances, and value of their property is immaterial and impertinent.

Although Defendants are correct that Allstate's legal claims do not require a personal relationship between the alleged co-conspirators, the Court cannot conclude that allegations regarding Zamorano and Swider's personal relationship and intermingling of finances have no possible relation or

Allstate Insurance Company v. OMIC, LLC, Slip Copy (2018)
2018 WL 8806551

relevance to the case. Indeed, as Allstate says, the referrals from Zamorano to Swider's Oakland MRI are essentially self-referrals based on their relationship and commingling of finances. While the relationship between Zamorano and Swider is not an element of the claims alleged, it is relevant to the alleged scheme to defraud; it provides context to the high referral rate alleged and could be seen as circumstantial evidence of Defendants' motive and intent to engage in the alleged scheme to defraud.

The allegations that Swider and Zamorano share ownership of various real and personal property (i.e., ¶¶ 39, 44, 102, 105 and 197) are pertinent and not scandalous, and they satisfy Allstate's intended purpose of showing Swider and Zamorano have a shared financial incentive.

On the other hand, the Court finds that the allegations related to the number of homes Swider and Zamorano own and the value of their properties (i.e., ¶¶ 9, 103, and 196) are immaterial, redundant, and may be scandalous, as is the allegation regarding Zamorano's termination from Wayne State (i.e., ¶ 104). *See Morse v. Weingarten*, 777 F. Supp. 312, 319 (S.D.N.Y. 1991) (striking allegations related to defendant's income and previous criminal conviction in underlying securities fraud case, upon finding that the allegations were "immaterial and impertinent to this case, and may be scandalous").

Accordingly, the Court STRIKES paragraphs 9, 103, 104, and 196.

### 2. Allegations Regarding Zamorano's Termination from Wayne State University

Defendants next argue that the Court should strike Exhibit 3 to the complaint and paragraph 82-89 and 128 in the complaint. These allegations relate to Zamorano's termination from a faculty position at Wayne State University in 2005, which resulted in a civil lawsuit before this Court. Exhibit 3 to the complaint is an order entered by this Court in Zamorano's civil suit; Allstate cites the order to support its allegations regarding Zamorano's termination from Wayne State.

 *5  In the allegations at issue, Allstate alleges that: (1) Wayne State terminated Zamorano in February 2005 for improperly using a university-issued credit card for personal use in 2004; (2) Zamorano misrepresented the nature of the purchases and fabricated receipts in an attempt to conceal the improper charges; (3) Zamorano claimed that she shared the credit card with Swider and that Swider made some of the charges; and (4) Zamorano organized Michigan Brain & Spine less than five months after Wayne State terminated her.

Allstate says these allegations serve to explain the reason for and timing of the formation of the Defendant Clinics, and to demonstrate further the financial interrelatedness of Zamorano and Swider.

Allstate's attempt to show that these allegations are relevant to this controversy fails. The Wayne State events took place in 2004, four years before Allstate alleges Defendants' fraud scheme began. Accepting these allegations as true, "they are immaterial and impertinent to the Plaintiffs' claims. They have no relationship to the allegations of fraud; nor do the RICO claims allege that the defendants [began its fraud scheme before 2008 or defrauded Wayne State University]." *See Llewellyn-Jones*, 22 F. Supp. 3d at 777.

To the extent these allegations bear on Zamorano and Swider's financial interrelatedness and the timing of the Defendant Clinics' formation, they are redundant and unnecessary. Moreover, based on the nature of these allegations and the fact that they are not linked to the fraud scheme Allstate alleges, it is apparent they were included to inflame a factfinder and shed negative light on Zamorano's character.

In addition to being redundant in part, Exhibit 3 to the complaint and paragraphs 82-89 and 128 in the complaint are immaterial to Allstate's claims and are scandalous.

The Court STRIKES these allegations and Exhibit 3 from the complaint. *See id.*; *Morse*, 777 F. Supp. at 319.

### 3. Allegations Regarding Defendants' "Other Fraudulent Acts"

Defendants move to strike paragraphs 127 to 154 from the complaint, which concern so-called "other fraudulent acts" that Allstate says relate to the fraud scheme. Defendants say these allegations are immaterial and scandalous.

Above, the Court struck paragraph 128 from the complaint because the facts related to Zamorano's termination from Wayne State are immaterial to Allstate's claims. The "other fraudulent acts" allegations are different. Unlike the

allegations concerning Zamorano's termination from Wayne State, Allstate pleads facts linking the other "other fraudulent acts" allegations to the fraud scheme here.

Paragraphs 127 and 129 to 154 of the complaint contain allegations: (1) describing the connection between Defendants and radiologists (i) Vivek Sehgal, M.D. ("Sehgal") – a co-founder of Oakland MRI, and (ii) Bharat Mehta, M.D. and Reese James, D.O. – both of whom worked for Oakland MRI and treated several of the patients at issue; (2) regarding those radiologists' connection to a similar MRI facility and their involvement in a pattern of fraud with that facility and a personal injury attorney who represented patients treating at both that facility and Oakland MRI; (3) that the attorney demanded that Sehgal produce abnormal MRI results regardless of the actual condition of a patient; (4) that Sehgal set the alleged "unreasonable rates charged by Oakland MRI" based on his experience at the other MRI facility; and (5) that Oakland MRI accepted MRI referrals directly from attorneys, as opposed to a physician.

 *6  Defendants argue that the only reason Allstate included these allegations was to establish that Swider and Zamorano know individuals accused of or disciplined for wrongdoing so that the fact finder develops a false impression that Defendants are guilty by association with those individuals. The Court disagrees.

Allstate says "the[se] allegations are relevant both to defining the overall contours of the fraudulent scheme and to establishing the individual elements of each cause of action, including the circumstances to allow the inference that the defendants acted with intent to defraud."

Allstate pleads sufficient facts to show a plausible, or at least possible, link between the "other fraudulent acts" allegations and Defendants' purported fraud scheme. Because it is not clear that the allegations have "no possible relation to the controversy," the Court will not strike them from the complaint. *See Brown & Williamson*, 201 F.2d at 822.

Moreover, allowing these allegations to remain will not prejudice Defendants; if Allstate fails to demonstrate the relevance of these allegations after discovery, the Court can exclude the evidence at trial.

Other than paragraph 128, the Court DENIES Defendants' request to strike the "other fraudulent acts" allegations in the complaint.

### 4. Allstate's Attorney-Created Charts

Throughout the complaint, Allstate uses charts and graphs to present and summarize information such as: (1) the percentage of total MRIs performed by Oakland MRI referred by Zamorano from 2009 to 2016; (2) the amount Oakland MRI billed Allstate for certain medical services up until February 23, 2009 compared to the amount it billed for those services after that date; and (3) the criteria considered for determining the appropriate billing code (i.e., the CPT Code) for services.

Defendants say the Court should strike these charts and graphs because they contain information that is redundant and immaterial, and they do not add anything substantive to the complaint.

This is untrue. Many, if not all, of the charts and graphs present at least some information that is not otherwise alleged in the complaint.

Moreover, even if some of the information in the charts and graphs is redundant, the charts and graphs succinctly summarize and present information in a format that is useful to a reader. For example, rather than explaining the criteria for determining the appropriate CPT Code in many bogged down sentences, or describing in numerous sentences how much Oakland MRI increased the amount it charged Allstate for particular services after February 23, 2009 (e.g., from $1,800 for a Lumbar MRI without contrast on and before February 23, 2009 to $5,400 after that date), Allstate presented that information in easily-readable charts.

Courts have approved using similar charts and graphs to present and summarize information in complex civil RICO actions. *See State Farm Mut. Auto. Ins. Co. v. Warren Chiropractic & Rehab Clinic P.C.*, No. 14-11521, 2015 WL 4724829, at *8 (E.D. Mich. Aug. 10, 2015) (collecting cases).

The Court DENIES Defendants' request to strike the charts from the complaint

### 5. Allstate's Prosecutorial Assumptions

In paragraphs 649 and 679 of the complaint, Allstate alleges, "The facts set forth above constitute indictable offenses pursuant to 18 U.S.C. § 1341 (mail fraud)."

**\*7** Defendants say the Court should strike each allegation as "an unfounded legal argument, a misstatement of the applicable law, and well beyond the scope of the enumerated counts in the complaint."

Allstate says that because the complaint alleges Defendants "engaged in the racketeering activity of mail fraud, which is made illegal by a federal criminal statute[,] ... it is patently ridiculous for the defendants to argue that references to a criminal statute are 'impertinent and scandalous.' "

These allegations are improper legal conclusions that add nothing relevant to the complaint. *See Lamson & Sessions Co. v. Indem. Ins. Co. of N. Am.*, No. 99-1013, 1999 U.S. Dist. LEXIS 17412 at \*5 (N.D. Ohio Oct. 19, 1999).

The Court STRIKES paragraphs 649 and 679 from the complaint.

### 6. Allstate's Requests for Unavailable Relief

In paragraph 636 of the complaint and under Counts V and VI in its demand for relief, Allstate seeks to recover its "investigative costs" as part of its damages. Defendants argue that Allstate cannot recover investigative costs it incurred before filing the case as damages or costs, and that the Court should strike that requested relief from the complaint.

Allstate disagrees. It says Defendants "conflate the damages Allstate sustained as a result of their fraud with the costs awardable pursuant to the fee-shifting provision of 18 U.S.C. § 1964(c)." Allstate claims that, "[b]ut for the defendants' fraudulent mailings, Allstate would not have incurred costs in investigating the veracity and compensability of the submissions." Therefore, Allstate says its "investigative costs are 'damages' that are properly recoverable [under its] RICO causes of action."

Defendants did not rebut this argument in its reply brief.

"The measure of civil damages under RICO is the harm caused by the predicate acts constituting the illegal pattern." *Cty. of Oakland v. Vista Disposal, Inc.*, 900 F. Supp. 879, 890 (E.D. Mich. 1995). Whether Allstate would have incurred costs "investigating the veracity and compensability of [Defendants'] submissions" is a question of fact. The Court preliminarily finds that these alleged damages are recoverable. However, Defendants may raise this issue again if the case goes to trial.

Defendants' request to strike Allstate's claims for investigative costs is DENIED.

## IV. MOTION TO DISMISS

### A. STANDARD OF REVIEW

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests a complaint's legal sufficiency. Although the federal rules only require that a complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief," *see* Rule 8(a)(2), the statement of the claim must be plausible. Indeed, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). A claim is plausible where the facts allow the Court to infer that the defendant is liable for the misconduct alleged. *Id.* This requires more than "bare assertions of legal conclusions"; a plaintiff must provide the "grounds" of his or her "entitlement to relief." *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007). In deciding a motion under Rule 12(b)(6), the Court must construe the complaint in the light most favorable to the plaintiff and accept as true all well-pled factual allegations. *Id.*

### B. DEFENDANTS' MOTION TO DISMISS

**\*8** None of Defendants' arguments to dismiss Allstate's complaint succeed.

### 1. Defendants' Reliance on *Covenant* is Misplaced

Defendants argue that the Michigan Supreme Court's decision *Covenant Med. Ctr., Inc. v. State Farm Mut. Auto. Ins. Co.*, 500 Mich. 191, 895 N.W.2d 490 (2017) ("*Covenant*"), requires this Court to dismiss Allstate's fraud-based claims and claim for declaratory relief. Defendants make several different arguments in reference to *Covenant*.

First, Defendants say *Covenant* requires the Court to dismiss Allstate's claims to the extent they arise under the No-Fault Act. This claim fails. Allstate's claims are based upon the alleged fraud Defendants' committed; the claims do not rely on a cause of action provided by the No-Fault Act.

Next, Defendants argue that because *Covenant* held that insurers do not have a statutory duty to reimburse healthcare providers under the No-Fault Act, Allstate's requested declaration is the same as the *Covenant* holding.

The Court is not certain where this argument gets Defendants, or why they believe this would be a basis to dismiss Allstate's complaint. Regardless, this argument fails. Defendants mischaracterize both the holding in *Covenant* and the declaratory relief sought by Allstate.

The primary holding of *Covenant* is that the Michigan No-Fault Act does not provide healthcare providers with a statutory cause of action of its own to directly sue a No-Fault insurer. 500 Mich. at 217, 895 N.W.2d 490. But, healthcare providers' charges for services under the No-Fault act still create liability for No-Fault insurers, such as Allstate, and a No-Fault insurer may still discharge the liability created by the submission of charges by a healthcare provider by paying the provider directly. *See id.* at 209-10, 895 N.W.2d 490 ("a no-fault insurer [may] satisfy its obligation to the insured by paying the injured person directly or by paying a party providing PIP services on the injured person's behalf").

With respect to Allstate's requested declaratory relief, the complaint does not limit the declaratory relief sought to only benefits or methods of payment for which Allstate is statutorily obliged. The declaratory relief sought accounts for the possibility that Defendants' alleged fraud creates liability that may be indirect or enforced by third parties – such as Allstate's insureds/Defendants' patients. Among other things, Allstate requests the Court to declare that Defendants "have no standing to submit, pursue, or receive assigned No-Fault benefits or any other payment from Allstate ... [and] Oakland MRI and Michigan Brain & Spine cannot seek payment from Allstate for benefits under Michigan's No-Fault Act, any policy of insurance, any assignment of benefits, any lien of any nature, or any other claim for payment related to the fraudulent conduct detailed in the within Complaint."

The declaratory relief sought by Allstate is not the same as the holding in *Covenant*, and *Covenant* does not undermine Allstate's request for declaratory relief.

Third, Defendants argue that *Covenant* "obviates" Allstate's fraud and RICO claims. They say that Allstate's alleged reliance on Defendants' invoices is not reasonable because: (1) Allstate has no statutory obligation to pay Defendants directly under the No-Fault Act; and (2) Allstate has an obligation to investigate claims for reasonableness and necessity before paying them. This argument also fails.

**\*9** As explained above, although Allstate may not be statutorily obligated to directly pay healthcare providers, Allstate may still discharge its liability by paying a healthcare provider directly. *See Covenant*, 500 Mich. at 209-10, 895 N.W.2d 490; *see also Allstate Ins. Co. v. State Farm Mut. Auto. Ins. Co.*, 321 Mich. App. 543, 559, 909 N.W.2d 495 (2017) ("no-fault insurers are permitted to make payments to healthcare providers 'on the injured person's behalf[ ]' ... to discharge their obligation ...").

Allstate alleges that Defendants submitted fraudulent bills to Allstate for recovery of No-Fault benefits, and Allstate reasonably relied on those fraudulent submissions in directly paying Defendants. Because the complaint alleges Defendants' fraudulent submissions induced Allstate to make payment directly to Defendants, the fraud claims are sufficiently pled. The *Covenant* decision does not undermine or preclude Allstate's fraud and RICO claims.

Moreover, to the extent Defendants argue that Allstate's reliance on their representations was not reasonable, there remains a question of fact for the jury. As Allstate says, Defendants are free to argue at trial that their submissions to Allstate were so clearly fraudulent that Allstate's reliance was not reasonable; however, this factual argument is improper at the motion to dismiss stage.

**2. Defendants' Abstention Arguments Lack Merit**

Defendants argue that the Court should abstain from deciding Allstate's claim for declaratory relief under: (1) the *Burford* abstention doctrine, *see Burford v. Sun Oil Co.*, 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943); (2) the *Colorado River* abstention doctrine, *see Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976); (3) the abstention doctrines expressed in *Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491, 62 S.Ct. 1173, 86 L.Ed. 1620 (1942), and *Wilton v. Seven Falls Co.*, 515 U.S. 277, 115 S.Ct. 2137, 132 L.Ed.2d 214 (1995); and (4) the

factors outlined in *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 554 (6th Cir. 2008).

Defendants fail to distinguish this case from numerous others in this district where the same or nearly identical arguments were made by the defendants. However, in each case, the abstention arguments were unavailing. *See*, *e.g.*, *State Farm Mut. Auto. Ins. Co. v. Vital Cmty. Care, P.C.*, No. 17-11721, 2018 WL 2194019, at *4-5 (E.D. Mich. May 14, 2018) (collecting cases); *State Farm Mut. Ins. Co. v. Elite Health Centers, Inc.*, No. 16-13040, 2017 WL 877396, at *9-11 (E.D. Mich. Mar. 6, 2017).

Because Defendants fail to distinguish this case from the numerous others overruling materially similar – if not identical – abstention arguments, the Court incorporates by reference the law and reasoning overruling defendants' abstention arguments in *Vital Cmty. Care*, 2018 WL 2194019, at *4-5 (collecting cases), and *Elite Health Centers*, 2017 WL 877396, at *9-11. For the reasons stated in those cases, Defendants' abstention arguments fail.

### 3. Arguments Defendants First Made in their Reply Brief are Improper and Lack Merit

Defendants assert two new arguments in their reply brief: (1) Allstate's charts attached to the complaint do not satisfy the pleading requirements of Fed. R. Civ. P. 9(b); and (2) Allstate's unjust enrichment claim fails as a matter of law. Both arguments fail on two grounds.

First, these arguments fail because Defendants improperly raised them for the first time in their reply brief. *See Scottsdale Ins. Co.*, 513 F.3d at 553 ("we have found issues to be waived when they are raised for the first time in motions requesting reconsideration or in replies to responses"); *Appalachian Railcar Servs., Inc. v. Boatright Enterprises, Inc.*, 602 F. Supp. 2d 829, 872 n. 24 (W.D. Mich. 2008) ("Ordinarily, this court will not consider arguments raised for the first time in a reply or surreply brief.").

*10 These arguments also fail on the merits.

Allstate's charts document the details of the fraudulent scheme by summarizing each alleged fraudulent act with identifying information, such as the provider, patient, date of service, claim number, payment amount, and date of payment, among other information. "Numerous courts have concluded that such documentation and explanation of the fraudulent scheme satisfies Rule 9(b), because it sufficiently puts the defendants on notice of the claims against which they will have to defend." *Warren Chiropractic*, 2015 WL 4724829, at *8 (collecting cases). Allstate's charts – and its complaint in general – satisfy Rule 9(b) particularity requirement.

Defendants also argue for the first time in their reply brief that Allstate's unjust enrichment claim fails. Defendants summarily assert that: (1) Allstate's conduct and its unlawful policy of wrongfully delaying, denying and diminishing benefits for its insureds precludes it from receiving equity; and (2) Allstate's unjust enrichment claim has the same pleading deficiencies as its fraud-based claims and it cannot rely on conclusory allegations of fraud to support its claim.

Defendants arguments are too conclusory to prevail. Defendants do not point to any particular conduct of Allstate that precludes Allstate from equitable relief. Moreover, the complaint contains sufficient factual allegations to support Allstate's fraud-based claims and unjust enrichment claim.

Defendants fail to demonstrate they are entitled to dismissal of any claim in the complaint.

### V. CONCLUSION

Defendants' motion to strike certain portions of the complaint and to dismiss the complaint is **GRANTED IN PART** and **DENIED IN PART**.

To the extent Defendants request dismissal, the motion is **DENIED**.

With respect to Defendants' request to strike certain allegations in the complaint, their motion is **GRANTED IN PART**, as set forth above.

**IT IS ORDERED**.

**All Citations**

Slip Copy, 2018 WL 8806551

---

**End of Document** © 2020 Thomson Reuters. No claim to original U.S. Government Works.