# EXHIBIT 3

Case 2:19-cv-13721-LVP-EAS ECF No. 39-3, PageID.1191 Filed 02/28/20 Page 2 of 10

Allstate Insurance Company v. Total Toxicology Labs, LLC, Not Reported in Fed. Supp....
2017 WL 3616476, RICO Bus.Disp.Guide 12,927

2017 WL 3616476
United States District Court, E.D.
Michigan, Southern Division.

ALLSTATE INSURANCE COMPANY,
Allstate Propery and Casualty
Insurance Company, Plaintiffs,
v.
TOTAL TOXICOLOGY LABS, LLC,
Martin Bluth, M.D., Scott P. Zack,
D.C., Corey J. Mann, Defendants.

CASE NO. 16-12220
|
Signed 08/23/2017

**Attorneys and Law Firms**

Jacquelyn McEttrick, Nathan Tilden, Richard D. King, Jr., John D. Tertan, Smith & Brink, PC, Braintree, MA, for Plaintiffs.

Ben M. Gonek, Law Offices of Ben M. Gonek, PLLC, Detroit, MI, for Defendants.

**ORDER DENYING DEFENDANTS' MOTION TO DISMISS [#18], GRANTING PLAINTIFFS' MOTION TO STRIKE REPLY [#24], AND DENYING DEFENDANTS' MOTION FOR EXTENSION OF TIME TO FILE REPLY [#25]**

Denise Page Hood, Chief, U.S. District Judge

**I. BACKGROUND**

*1 On June 16, 2016, Plaintiffs Allstate Insurance Company and Allstate Property and Casualty Insurance Company (collectively "Allstate") filed a Complaint against Defendants Total Toxicology Labs, LLC ("Total Toxicology"), Martin Bluth ("Bluth"), Scott P. Zack ("Zack"), and Corey J. Mann ("Mann") alleging that they conspired to defraud and defrauded Allstate by perpetrating a healthcare billing fraud scheme. (Doc # 1) The Complaint includes the following seven counts: Violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(c) against Bluth, Zack, and Mann (Count I); Violation of RICO, 18 U.S.C. § 1962(d) against Bluth, Zack, and Mann (Count II); Common Law Fraud against all Defendants (Count III); Civil Conspiracy against all Defendants (Count IV); Payment Under Mistake of Fact against Total Toxicology (Count V); Unjust Enrichment against Total Toxicology (Count VI); and Declaratory Relief Pursuant to 28 U.S.C. § 2201 against Total Toxicology (Count VII).

On October 27, 2016, Defendants filed a Motion to Dismiss. (Doc # 18) On November 14, 2016, Allstate filed a Response. (Doc # 21) Defendants filed a Reply on December 5, 2016. (Doc # 23) Allstate filed a Motion to Strike Reply on December 6, 2016. (Doc # 24) Defendants filed a Motion for Extension of Time to File Reply as well as a Response to Allstate's Motion to Strike also on December 6, 2016. (Doc # 25; Doc # 26) Allstate then filed a Response to Defendants' Motion for Extension of Time to File Reply also on December 6, 2016. (Doc # 27) The Court held a hearing on January 18, 2017. Allstate filed a Notice of Supplemental Authority on March 8, 2017. (Doc # 30)

The facts as alleged in the 88-page Complaint, with an additional 520 pages of attached exhibits, are as follows. Total Toxicology is a clinical urine drug testing laboratory servicing referring providers. (Doc # 1, Pg ID 1-2) Bluth is Total Toxicology's Chief Medical Officer. *Id.* at 2. Zack is Total Toxicology's President and Chief Financial Officer. *Id.* Mann manages Total Toxicology. *Id.* at 3. According to the Complaint, Total Toxicology purports to provide urine drug testing services to doctors who treat patients with chronic pain in order to ensure that patients are complying with their medication regimes, and/or to ensure that patients are not abusing prescription medications and/or illicit drugs. *Id.* at 2. Allstate alleges that Total Toxicology and its managers, Bluth, Zack, and Mann, conspired to and engaged in a healthcare billing fraud scheme to provide unnecessary urine drug testing and to submit false and fraudulent documentation to Allstate for payment of No-Fault benefits for patients who were involved in motor vehicle accidents and were eligible to obtain Personal Insurance Protection ("PIP") Benefits under Michigan's No-Fault Act, M.C.L. §§ 500.3105, 500.3107(1)(a). Allstate claims to have paid over $15,802.00 to Total Toxicology for allegedly fraudulent urine drug testing on specimens collected from patients insured under Allstate policies. *Id.* at 7-8.

*2 The Complaint describes a scheme involving hundreds of acts of mail fraud containing fraudulent claims that occurred in 2015 and 2016. *Id.* at 70. Attached to the Complaint is a chart highlighting representative examples of the mail fraud, detailing 121 acts of alleged mail fraud from February 4, 2015 to March 21, 2016. (Doc # 1-35) The chart includes claim

Case 2:19-cv-13721-LVP-EAS ECF No. 39-3, PageID.1192 Filed 02/28/20 Page 3 of 10

Allstate Insurance Company v. Total Toxicology Labs, LLC, Not Reported in Fed. Supp....
2017 WL 3616476, RICO Bus.Disp.Guide 12,927

numbers, patient initials, dates, senders, and contents of the mailings. *Id.* Also attached to the Complaint is another chart listing each Current Procedural Terminology ("CPT") Code billed for each claim at issue. (Doc # 1-7) This chart includes claim numbers, patient initials, dates of service, CPT codes billed, CPT code descriptions, and amount billed for each CPT code. *Id.* The Defendants allegedly continue to submit misrepresentation-laden bills and medical records to Allstate through the U.S. Mail, and Allstate's damages continue to accrue. (Doc # 1, Pg ID 72)

According to Total Toxicology's website, "liquid chromatography tandem mass-spectronomy (LC-MS/MS), is a more specific method [than in-office, qualitative urine drug testing], and returns a quantitative analytical result. These results provide precise identification of all drugs and metabolites present or absent." (Doc # 1-8, Pg ID 387) The Complaint alleges that Total Toxicology's most prevalent urine drug testing methodology, LC-MS/MS, consists of a single test that identifies all of the drugs present. (Doc # 1, Pg ID 13) The cost of performing this single test is the same regardless of how many drugs the referring provider requests that Total Toxicology test for. *Id.* at 15. According to the Complaint, Defendants push referring providers to refer for testing of as many drugs as possible per specimen regardless of need, since each subsequent drug test ordered after the first drug generates purely additional profits for Defendants. *Id.* at 16.

Reimbursement claims submitted to Allstate contain CPT codes that are published annually by the American Medical Association to facilitate the efficient processing of healthcare charges by insurance carriers. *Id.* The CPT Code Book details which urine drug testing CPT codes are applicable for different types of urine testing. *Id.* at 17. The Complaint alleges that Total Toxicology billed Allstate for services not rendered every time that it sought reimbursement for CPT code 83789 because (1) its LC-MS/MS methodology does not meet the criteria for the testing methodology encompassed by that CPT code, and (2) that CPT code can only be billed once per specimen. *Id.* at 18-20. Allstate further alleges that Total Toxicology almost always billed Allstate for multiple units of CPT code 83789 related to a single urine specimen, falsely indicating that multiple tests were performed when in fact no testing was performed that warranted billing that CPT code. *Id.* at 20.

According to the Complaint, Bluth, Zack, and Mann maintained improper referral relationships with physicians at Mendelson Orthopedics ("Mendelson"), an orthopedic clinic surgery practice, in order to generate baseless and unnecessary referrals to Total Toxicology. *Id.* at 21. Physicians associated with Mendelson were responsible for the referral of 77% of Total Toxicology's patients who were insured by Allstate. *Id.* Zack and Mann allegedly have several connections with Mendelson and its physicians. *Id.* Mendelson owns an MRI clinic which Zack and Mann manage, sharing in the profits. *Id.* Zack, Mann, and the owners of Mendelson also share interests in an ambulatory surgical center. *Id.* at 22. Physicians at Mendelson allegedly submit urine specimens to Total Toxicology as a matter of course, and without regard for necessity. *Id.* Defendants are allegedly aware of the baseless and unnecessary nature of these referrals.

Total Toxicology allegedly billed Allstate for unnecessary confirmatory urine drug testing of expected, negative point-of-care screening results, in contravention of the standard of care for clinical laboratories, for almost every claim at issue. *Id.* at 23-24, 27. According to the Complaint, confirmatory testing of a negative screening result is only appropriate if the referring provider determines that it is necessary after taking into consideration all known clinical facts for the specific patient at the time that the sample is collected. The Complaint alleges that no provider can make a blanket determination across all patients and all dates of service as to what constitutes reasonable confirmatory urine drug testing. *Id.* at 26. The Complaint acknowledges that referring providers ordered the confirmatory urine drug testing. However, Allstate claims that Zack and Mann knowingly used their relationship with Mendelson to generate these unnecessary referrals, and that Bluth falsely attested to the necessity of the urine drug testing. *Id.* at 28.

**\*3** The Complaint details several exemplar claims in support of these allegations, and Allstate attaches supporting documentation for each exemplar claim. For example, W.R., a patient of Mendelson, gave a urine sample to a Mendelson physician. *Id.* at 28. W.R.'s medical record indicates that there were no medications currently prescribed to W.R. and that his urine was appropriate. *Id.* Mendelson billed Allstate for point of care urine drug screening, the results of which indicated that the urine sample tested negative for each drug tested. *Id.* at 29. Mendelson nevertheless submitted a requisition form to Total Toxicology requesting a comprehensive panel of urine drug testing, also indicating on the requisition form that each medication or drug was tested via point of care screening and reported as negative, and that W.R. was not

Case 2:19-cv-13721-LVP-EAS ECF No. 39-3, PageID.1193 Filed 02/28/20 Page 4 of 10
Allstate Insurance Company v. Total Toxicology Labs, LLC, Not Reported in Fed. Supp....
2017 WL 3616476, RICO Bus.Disp.Guide 12,927

on any prescribed medication. *Id.* Total Toxicology then performed unnecessary confirmatory testing of the expected negative screening results, and billed Allstate through the U.S. Mail, indicating eleven CPT billing codes for drugs that had already been tested for by the referring provider and found to be negative. *Id.* at 29-30. Allstate was billed $995.85 relative to those eleven CPT codes. *Id.* at 30. Allstate was also billed for several other CPT codes corresponding to allegedly unnecessary testing pursuant to a predetermined comprehensive panel in contravention of the standard of care for clinical laboratories. *Id.* Bluth submitted and signed a medical necessity letter to Allstate to falsely support the charges for W.R.'s urine drug testing. *Id.* at 31.

Allstate further claims that Total Toxicology performed quantitative testing in hundreds of instances in which referring providers did not perform point of care screening before sending specimens to Total Toxicology. According to Allstate, Total Toxicology should have performed presumptive/qualitative testing instead, pursuant to the standard of care for clinical laboratories. The Defendants' decision to perform quantitative testing in the first instance resulted in unnecessary testing. According to the Complaint, Total Toxicology did not perform presumptive/qualitative testing, which is reimbursed at a lower rate than quantitative testing, before March 2016 despite having the capacity to do so. *Id.* at 40.

Allstate also alleges that Defendants' procedures and forms promote unnecessary urine drug testing. According to the Complaint, Total Toxicology's requisition form allowed providers to select a predetermined custom profile or panel preference that mandated that the full slate of drugs would be tested every time the provider referred a urine sample to Total Toxicology—without any patient-specific consideration. *Id.* at 45. Total Toxicology's requisition form did not allow referring providers to remove specific drugs from the selection of panel preferences, but rather only to choose additional tests. *Id.* Further, the referring provider's custom profile on file with Total Toxicology, and on which Total Toxicology has based testing, is necessarily not patient-specific because the custom profile is decided before the patient is known to the referring provider, at the beginning of the provider's relationship with Total Toxicology. Total Toxicology billed Allstate for urine drug testing that was ordered pursuant to a previously-filled custom profile or panel preference for 90% of the patients at issue in the Complaint. *Id.* at 47.

The Complaint cites a U.S. Department of Health and Human Services compliance publication, attached as Exhibit 23. It states: "The following compliance program guidance is intended to assist clinical laboratories in developing effective internal controls that promote adherence to applicable Federal and State law, and the program requirements of Federal, State, and private health plans." 63 Fed. Reg. 163 (Aug. 24, 1998) (Doc # 1-26, Pg ID 536). According to the guidance, a laboratory "should construct the requisition form to ensure that the physician or other authorized individual has made an independent medical necessity decision with regard to each test the laboratory will bill." *Id.* at 538. According to Allstate, instead of following this guidance and other guidelines, Total Toxicology's requisition form is designed to increase the number of tests performed and ignores considerations of medical necessity. (Doc # 1, Pg ID 44) Nevertheless, Bluth submitted letters to Allstate attesting to the medical necessity of the urine drug testing. *Id.* at 46; Doc # 1-4.

Allstate further alleges that Defendants added diagnosis codes to falsely support their bills for urine drug testing. Almost every patient at issue in the Complaint was diagnosed by the referring provider with "chronic pain due to trauma" or another pain diagnosis, identified by the standard diagnosis codes ICD-9 or ICD-10. However, Total Toxicology submitted bills to Allstate that included v58.69, a diagnosis code that indicates a patient was diagnosed with long-term (current) use of other medications, and Z79.899, a diagnosis code that indicates a patient was diagnosed with other long-term (current) drug therapy. (Doc # 1, Pg ID 48) Although a diagnosis can only be determined by a patient's treating physician, Defendants allegedly added false diagnoses for patients they never treated, solely because they believed the additional diagnoses would increase the likelihood that Allstate would pay their claims. *Id.* at 49. Exhibit 25 attached to the Complaint lists over 70 instances when Total Toxicology allegedly submitted bills to Allstate containing false v58.69 or Z79.899 diagnoses. (Doc # 1-28) The Complaint also details several exemplar claims, and Allstate attaches supporting documentation for each exemplar claim.

*4 Allstate alleges that Defendants engaged in two additional fraudulent billing practices. According to the Complaint, Defendants knowingly, intentionally, and routinely added billing codes that were encompassed by other more inclusive codes already billed (specifically adding CPT codes 83986 and 84311 for the same date of service as CPT code 81003, an inclusive code that already covered

Case 2:19-cv-13721-LVP-EAS ECF No. 39-3, PageID.1194 Filed 02/28/20 Page 5 of 10

**Allstate Insurance Company v. Total Toxicology Labs, LLC, Not Reported in Fed. Supp....**
2017 WL 3616476, RICO Bus.Disp.Guide 12,927

codes 83986 and 84311). *Id.* at 58-59. In addition, although Defendants perform only one procedure on each specimen they receive, Defendants knowingly and intentionally billed for multiple units of code G6056 per procedure, which by definition can only be billed once per procedure. *Id.* at 60. The Complaint lists 6 instances of billing multiple units of this code. *Id.* at 61.

## II. ANALYSIS

### A. Standard of Review

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for a motion to dismiss for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). This type of motion tests the legal sufficiency of the plaintiff's complaint. *Davey v. Tomlinson*, 627 F. Supp. 1458, 1463 (E.D. Mich. 1986). When reviewing a motion to dismiss under Rule 12(b)(6), a court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Directv Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007). A court, however, need not accept as true legal conclusions or unwarranted factual inferences." *Id.* (quoting *Gregory v. Shelby Cnty.*, 220 F.3d 443, 446 (6th Cir. 2000)). "[L]egal conclusions masquerading as factual allegations will not suffice." *Edison v. State of Tenn. Dep't of Children's Servs.*, 510 F.3d 631, 634 (6th Cir. 2007). As the Supreme Court has explained, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level ...." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted); *see LULAC v. Bresdesen*, 500 F.3d 523, 527 (6th Cir. 2007). To survive dismissal, the plaintiff must offer sufficient factual allegations to make the asserted claim plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The court primarily considers the allegations in the complaint, although matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint may also be taken into account. *Amini v. Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir. 2001).

### B. RICO Claims

Allstate alleges violations under RICO, 18 U.S.C. §§ 1962(c) and (d). These sections provide as follows.

> (c) It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.
>
> (d) It shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section.

18 U.S.C. §§ 1962(c), (d). To establish a RICO violation, a plaintiff must establish (1) conduct, (2) of an enterprise, (3) through a pattern, and (4) of racketeering activity. *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985). "Racketeering activity consists of acts which are indictable under a number of federal statutes listed in 18 U.S.C. § 1961(1)(B)." *Heinrich v. Waiting Angels Adoption Servs.*, 668 F.3d 393, 404 (6th Cir. 2012). One such indictable offense is mail fraud under 18 U.S.C. § 1341, which Allstate alleges is the racketeering activity in this case.

**\*5** Defendants move to dismiss Allstate's RICO claims (Count I and Count II) for failure to state a claim arguing that: (a) Allstate fails to allege a false statement or fraudulent intent on the part of any of the Defendants, and therefore, cannot establish mail fraud or racketeering activity; (b) Allstate fails to plausibly plead proximate causation; and (c) Allstate fails to plausibly plead that RICO "persons" distinct from the RICO "enterprise" engaged in unlawful activity.

#### a. Mail Fraud

To state a mail fraud claim, a plaintiff must establish that the defendant (1) devised or intended to devise a scheme to defraud (or to perform specified fraudulent acts); (2) involving a use of the mails; and (3) for the purpose of executing the scheme or attempting to do so. *United States v. Kennedy*, 714 F.3d 951, 958 (6th Cir. 2013) (quoting *United States v. Frost*, 125 F.3d 346, 354 (6th Cir. 1997)). To establish a scheme to defraud, a plaintiff must establish "that the defendant made a material false statement or omission, i.e., a statement or omission 'that would have affected a reasonable person's actions in the situation.' " *United States v. Lombardo*, 582 Fed.Appx. 601, 622 (6th Cir. 2014) (quoting *United States v. Daniel*, 329 F.3d 480, 487 (6th Cir. 2003)).

Case 2:19-cv-13721-LVP-EAS ECF No. 39-3, PageID.1195 Filed 02/28/20 Page 6 of 10

Allstate Insurance Company v. Total Toxicology Labs, LLC, Not Reported in Fed. Supp....
2017 WL 3616476, RICO Bus.Disp.Guide 12,927

Federal Rule of Civil Procedure 9(b) applies to Allstate's fraud claims and provides: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). "When pleading predicate acts of mail or wire fraud, in order to satisfy the heightened pleading requirements of Rule 9(b), a plaintiff must '(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent.' " *Heinrich*, 668 F.3d at 404 (quoting *Frank v. Dana Corp.*, 547 F.3d 564, 570 (6th Cir. 2008)).

"Although Rule 9(b) heightens the pleading standard, it always must be read 'against the backdrop' of Fed. R. Civ. P. 8, which aims simply to put a defendant on notice of the claims against him so that he may reasonably respond [to] the allegations in the complaint." *State Farm Mut. Auto. Ins. Co. v. Pointe Physical Therapy, LLC*, 107 F. Supp. 3d 772, 788 (E.D. Mich. 2015).

> In complex civil RICO actions involving multiple defendants, Rule 9(b) does not to require that the temporal or geographic particulars of each mailing made in furtherance of the fraudulent scheme be stated with particularity, but only that the plaintiff delineate, with adequate particularity in the body of the complaint, the specific circumstances constituting the overall fraudulent scheme.

*State Farm Mut. Auto. Ins. Co. v. Physiomatrix, Inc.*, No. 12-11500, 2013 WL 509284, at *5 (E.D. Mich. Feb. 12, 2013) (quoting *Aiu Ins. Co. v. Olmecs Med. Supply, Inc.*, No. CV-042934ERK, 2005 WL 3710370, at *11 (E.D.N.Y. Feb. 22, 2005)) (internal quotations omitted).

First, Defendants argue that the Complaint does not allege false statements by any of the Defendants with the requisite particularity because it does not state who made fraudulent statements, and does not state when or where fraudulent statements were made. Defendants assert that Allstate has not identified a single bill that was actually false, or a particular instance where Allstate paid for services that were not performed. Defendants note that Allstate fails to allege that Defendants billed it for any tests that were not part of the pre-select testing panels independently ordered by treating physicians, or that Defendants conspired with doctors to order unnecessary tests. Defendants further assert that Allstate fails to allege any facts regarding the testing services actually provided that were inconsistent with the codes used in the bills submitted to Allstate.

**\*6** The Court rejects these arguments in light of Allstate's specific allegations discussed above. Allstate has provided an 88-page description of how Defendants' alleged mail fraud works, along with charts demonstrating the types of claims submitted as a part of this allegedly fraudulent enterprise. The Complaint includes allegations that Defendants charged for services that were not provided; maintained improper referral relationships with physicians at Mendelson and were aware of the unnecessary nature of many Mendelson referrals; billed Allstate and attested to the medical necessity of unnecessary confirmatory testing of expected, negative point-of-care screening results (in contravention of the standard of care for clinical laboratories); performed quantitative testing in many cases in which they should have performed presumptive/qualitative testing instead, pursuant to the standard of care for clinical laboratories; added false diagnoses to insurance claims; created standardized protocols and forms that encouraged unnecessary testing and ignored medical necessity in individual cases; and billed treatment knowingly and intentionally using improper coding. Allstate has attached several charts to its Complaint detailing the purportedly fraudulent claims and fraudulent mailings by the Defendants. Allstate has also detailed several examples of purportedly fraudulent claims and provided documentation for these exemplar claims.

Courts in this district have concluded that such documentation and explanation of the fraudulent scheme satisfies Rule 9(b) because it sufficiently puts the defendants on notice of the claims against which they will have to defend. *See, e.g., State Farm Mut. Auto. Ins. Co. v. Warren Chiropractic & Rehab Clinic P.C.*, No. 4:14-CV-11521, 2015 WL 4724829, at *8 (E.D. Mich. Aug. 10, 2015); *State Farm Mut. Auto. Ins. Co. v. Universal Health Grp., Inc.*, No. 14-CV-10266, 2014 WL 5427170, at *3 (E.D. Mich. Oct. 24, 2014); *State Farm Mut. Auto. Ins. Co. v. Radden*, No. 14-13299, 2015 WL 631965, at *1 (E.D. Mich. Feb. 13, 2015); *Pointe Physical Therapy*, 107 F. Supp. 3d at 789. The Court concludes that the allegations in the Complaint, read in conjunction with the exhibits, contain

Case 2:19-cv-13721-LVP-EAS ECF No. 39-3, PageID.1196 Filed 02/28/20 Page 7 of 10
Allstate Insurance Company v. Total Toxicology Labs, LLC, Not Reported in Fed. Supp....
2017 WL 3616476, RICO Bus.Disp.Guide 12,927

sufficient factual content to put Defendants on notice of the fraud that they are alleged to have committed.

Regarding Defendants' argument that the Complaint does not state when and where fraudulent statements were made or identify the speaker, the Sixth Circuit has explained that a defendant may be liable for mail fraud, even if the defendant did not do the mailing himself if the defendant is a willful participant in a scheme to defraud and the use of the mail by other participants was foreseeable and in furtherance of the scheme. *Kennedy*, 714 F.3d at 959; *see also Warren*, 2015 WL 4724829, at *9. The Court finds that Allstate has sufficiently alleged how Defendants helped implement and further the fraudulent billing scheme that foreseeably resulted in the alleged fraudulent mailings.

Regarding Defendants' argument that the Complaint fails to state a claim because Total Toxicology was bound by the orders of referring physicians to perform all of the urine drug testing at issue, the Court finds that this is not an issue appropriate for resolution at the motion to dismiss stage. *See State Farm Mut. Auto. Ins. Co. v. Kalika*, No. 04 CV 4631 (CBA), 2006 WL 6176152, at *12 (E.D.N.Y. Mar. 16, 2006), *adopted* No. 04 CV 4631 (CBA) at Doc # 105 (Mar. 31, 2006). Defendants' argument disputes the factual allegations in the Complaint, but at this stage, the Court must accept those allegations as true.

Bolstering Allstate's argument that the Complaint does allege false statements by the Defendants is the fact that Michigan's No-Fault Act provides that personal protection insurance benefits are payable only for reasonable charges incurred for *reasonably necessary* services. *See* M.C.L. § 500.3107(1)(a) (emphasis added). According to the Complaint, each time Defendants billed Allstate invoking Michigan's No-Fault Act and demanding payment thereunder, they falsely represented that their claims were for reasonably necessary services. As discussed above, the Court finds that Allstate has sufficiently alleged that Defendants' urine drug testing was not reasonably necessary and was fraudulently billed.

Defendants next argue that the Complaint does not allege fraudulent intent by any of the Defendants with the requisite particularity. Defendants assert that Allstate alleges no facts from which the individual Defendants' intent could be inferred, other than generally alleging that they benefited from Total Toxicology's receipt of the proceeds from Allstate. Allstate responds that it has alleged specific facts that make it reasonable to believe the Defendants knew the fraudulent nature of their representations.

*7 Allegations of fraudulent misrepresentations must be made "with a sufficient factual basis to support an inference that they were knowingly made." *Coffey v. Foamex L.P.*, 2 F.3d 157, 162 (6th Cir. 1993). A complaint must set forth specific facts that make it reasonable to believe that the defendant knew that the statement was materially false or misleading. *Heinrich*, 668 F.3d at 406.

According to the Complaint, the exemplar claims and supporting documentation, and charts included in the Exhibits, Defendants billed Allstate for tests that were not performed; added false diagnoses that were not identified by the patients' treating physicians; mailed false letters of medical necessity while maintaining an improper referral relationship with Mendelson, which accounted for 77% of Total Toxicology's patients who were insured by Allstate, and which Defendants knew resulted in many unnecessary referrals; and billed Allstate demanding payment under Michigan's No-Fault Act for testing they knew was medically unnecessary and in contravention of the standard of care for clinical laboratories. According to the Complaint, Defendants' use of the U.S. Mail to submit these fraudulent claims to Allstate was essential to their ability to exploit benefits available under Michigan's No-Fault Act by generating as many referrals as possible without regard to medical necessity, and by testing urine for as many drugs as possible at no extra cost to Total Toxicology. The Court finds that Allstate has alleged specific facts that make it reasonable to believe that Defendants knowingly made the alleged fraudulent misrepresentations.

For the reasons set forth above, the Court finds that Allstate's allegations of mail fraud comply with the requirements of Rule 9(b), pleading false statements and fraudulent intent on the part of Defendants with sufficient particularity.

### b. Proximate Causation

Defendants next argue that the Court should dismiss Allstate's RICO claims for failure to state a claim because Allstate's theory of RICO liability depends on the independent professional acts of licensed doctors who ordered the urine drug testing, and therefore, Allstate fails to allege that Defendants proximately caused Allstate's purported RICO injury. Allstate responds that it properly alleged that the

Case 2:19-cv-13721-LVP-EAS ECF No. 39-3, PageID.1197 Filed 02/28/20 Page 8 of 10

Allstate Insurance Company v. Total Toxicology Labs, LLC, Not Reported in Fed. Supp....
2017 WL 3616476, RICO Bus.Disp.Guide 12,927

predicate act of mail fraud committed by Defendants directly caused the RICO injury.

RICO's private right of action provides that "[a]ny person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee...." 18 U.S.C. § 1964(c). Section 1962 contains RICO's prohibited activities, which makes it "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." *Id.* at § 1962(c). "Racketeering activity," in turn, is defined to include many indictable acts, including under "section 1341 (relating to mail fraud." *Id.* at § 1961(1)(B). "The upshot is that RICO provides a private right of action for treble damages to any person injured in his business or property by reason of the conduct of a qualifying enterprise's affairs through a pattern of acts indictable as mail fraud." *Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639, 647 (2008).

**\*8** Section 1964(c) requires a plaintiff to establish proximate cause in order to show injury "by reason of a RICO violation." *Holmes v. Secs. Investor Prot. Corp.*, 503 U.S. 258, 268 (1992). "When a court evaluates a RICO claim for proximate causation, the central question it must ask is whether the alleged violation led directly to the plaintiff's injuries." *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 461 (2006). The Supreme Court's analysis in *Bridge*, a case involving competing bidders at county-run auctions of tax liens acquired on the properties of delinquent taxpayers, is instructive here. 553 U.S. at 642. In that case, the respondents brought a civil RICO claim predicated on mail fraud, alleging that the petitioners had fraudulently obtained a disproportionate share of liens by arranging for related firms to bid on the petitioners' behalf, in violation of a "Single, Simultaneous Bidder" county rule. *Id.* at 644. The respondents further alleged that the petitioners mailed or caused to be mailed hundreds of mailings in furtherance of the scheme when they sent property owners various notices required by Illinois law. *Id.* at 644-45. The respondents claimed that, as a result, they lost the opportunity to acquire valuable liens. *Id.* at 648. The Supreme Court found proximate causation satisfied, reasoning as follows.

Respondents' alleged injury—the loss of valuable liens—is the direct result of petitioners' fraud. It was a foreseeable and natural consequence of petitioners' scheme to obtain more liens for themselves that other bidders would obtain fewer liens. And here, ... there are no independent factors that account for respondents' injury, there is no risk of duplicative recoveries by plaintiffs removed at different levels of injury from the violation, and no more immediate victim is better situated to sue. Indeed, both the District Court and the Court of Appeals concluded that respondents and other losing bidders were the *only* parties injured by petitioners' misrepresentations.

*Id.* at 658 (emphasis in original).

In this case, Allstate has alleged a direct relationship between Defendants' conduct, the mail fraud directed at Allstate, and the injury suffered—Allstate's payment to Defendants of thousands of dollars in No-Fault benefits that Allstate alleges were not reasonably necessary and therefore not compensable. Allstate's alleged injury is the direct result of Defendants' alleged fraud. Given that Michigan's No-Fault Act required Allstate to tender No-Fault benefit payments within thirty days, M.C.L. § 500.3142(2), the alleged injury was a foreseeable and natural consequence of Defendants' healthcare billing fraud scheme and acts of mailing fraudulent bills and records. According to the allegations in the Complaint, Bluth, Total Toxicology's Chief Medical Officer, falsely attested to the medical necessity of unnecessary urine drug testing. Defendants billed for tests that were not performed; were aware of the unnecessary nature of many referrals; added false diagnoses to insurance claims; created standardized protocols and forms that encouraged unnecessary testing and ignored medical necessity in individual cases; and used fraudulent billing practices and inappropriate billing codes. As Allstate notes in its Response, no referring doctor billed Allstate for Total Toxicology's urine drug testing. In light of the allegations, the Court finds that there are no independent factors that account for Allstate's injury. Defendants' fraudulent mailings were

Case 2:19-cv-13721-LVP-EAS ECF No. 39-3, PageID.1198 Filed 02/28/20 Page 9 of 10
Allstate Insurance Company v. Total Toxicology Labs, LLC, Not Reported in Fed. Supp....
2017 WL 3616476, RICO Bus.Disp.Guide 12,927

directed solely at Allstate, and there is no risk of duplicative recoveries by other plaintiffs, and no more immediate victim is better situated to sue. Allstate is the only party injured by Defendants' alleged misrepresentations at issue in this case. The Court concludes that Allstate has sufficiently alleged that Defendants proximately caused the alleged RICO injury.

### c. Distinctness

Defendants also argue that the Court should dismiss Allstate's RICO claims for failure to state a claim because Allstate fails to adequately allege that the RICO persons are distinct from the RICO enterprise. Allstate responds that it has properly alleged that Total Toxicology, a formal legal entity, constitutes the enterprise through which the natural person Defendants conducted their RICO-prohibited behavior. Allstate notes that it has not alleged an association-in-fact RICO enterprise.

**\*9** Liability under 18 U.S.C. § 1962(c) requires a plaintiff to "allege and prove the existence of two distinct entities: "(1) a 'person' and (2) an 'enterprise' that is not simply the same 'person' referred to by a different name." *Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 161 (2001). The distinctness requirement is easily satisfied where the enterprise has a separate legal existence, such as a corporation or partnership. *See id.* at 163. "[I]ndividual defendants are always distinct from corporate enterprises because they are legally distinct entities, even when those individuals own the corporations or act only on their behalf." *In re ClassicStar Mare Lease Litig.*, 727 F.3d 473, 492 (6th Cir. 2013).

In this case, Allstate has alleged a single corporate enterprise, Total Toxicology. Allstate's RICO claims, Count I and Count II, are against the individual natural person Defendants only: Bluth, Zack, and Mann. The Complaint adequately sets forth how Bluth, Zack, and Mann were the persons who conducted the affairs of Total Toxicology, the RICO enterprise, through their mail fraud, the RICO-prohibited behavior. The Court concludes that Allstate has satisfied the distinctness requirement.

For reasons set forth above, the Court denies Defendants' Motion to Dismiss Count I and Count II. At this stage of the litigation, Allstate sufficiently states substantive RICO claims.

### C. State Law Claims

Defendants argue that, because the civil RICO claims must be dismissed, the Court should decline to exercise supplemental jurisdiction over the state law claims. Because the Court finds that the civil RICO claims do not fail substantively at this pleading stage, the Court continues to exercise supplemental jurisdiction over the state law claims which are inextricably intertwined with the federal claims.

Defendants also argue that Allstate's state law fraud allegations are inadequate for the same reasons as their predicate mail fraud allegations. Defendants again argue that Allstate has failed to allege a false statement or intent to defraud. For the reasons discussed at length above, the Court finds that Allstate has sufficiently alleged false statements and fraudulent intent on the part of Defendants.

Defendants next argue that Allstate has failed to adequately plead an unjust enrichment claim because it relies on the same deficient factual predicate as the RICO claims. The civil RICO claims do not fail substantively at this pleading stage, and the Court rejects this argument.

For reasons set forth above, the Court denies Defendants' Motion to Dismiss Count III, Count IV, Count V, and Count VI.

### D. Declaratory Relief Claim

Defendants argue that the declaratory judgment claim fails because the underlying claims for substantive relief must fail. The Court concludes that the underlying claims do not fail substantively at this pleading stage, and the Court denies Defendants' Motion to Dismiss the declaratory judgment claim, Count VII.

### E. Allstate's Motion to Strike Reply and Defendants' Motion for Extension of Time to File Reply

Allstate has filed a Motion to Strike Defendants' Reply to Allstate's Response to Defendants' Motion to Dismiss. (Doc # 24) Allstate argues that Defendants' Reply was untimely and meritless. Defendants respond that the Court should deny Allstate's Motion to Strike because Defendants filed a Motion to Extend Time to File Reply.

In their Motion to Extend Time to File Reply, Defendants argue that the Court should extend the time to allow Defendants to reply, offering only that they did not file their Reply in a timely manner "[d]ue to the fact the undersigned had multiple briefs he was working on." Allstate responds that

Case 2:19-cv-13721-LVP-EAS ECF No. 39-3, PageID.1199 Filed 02/28/20 Page 10 of 10

Allstate Insurance Company v. Total Toxicology Labs, LLC, Not Reported in Fed. Supp....
2017 WL 3616476, RICO Bus.Disp.Guide 12,927

the Court should deny Defendants' Motion to Extend Time to File Reply because it is untimely, especially in light of the fact that Allstate went through the time and expense to properly file its Motion to Strike. Allstate also argues that Defendants offer no legitimate explanation for why they disregarded their obligation to follow this Court's rules.

***10** Local Rule 7.1 provides that "[i]f filed, a reply brief supporting a dispositive motion must be filed within 14 days after service of the response, but not less than 3 days before oral argument." E.D. Mich. LR 7.1(e)(1)(C). Local Rule 11.1 provides as follows.

> If, after notice and a reasonable opportunity to respond, the Court determines that a provision of these Local Rules has been knowingly violated, the Court may impose an appropriate sanction upon the attorneys, law firms, or parties that have violated the Local Rule or are responsible for the violation. The procedures for imposing sanctions and the nature of sanctions shall be as set out in Fed. R. Civ. P. 11(c).

E.D. Mich. LR 7.1. Rule 11(c) of the Federal Rules of Civil Procedure provides that "[a] sanction imposed under this rule must be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated." Fed. R. Civ. P. 11(c)(4).

Defendants filed their Reply on December 5, 2016, more than 14 days after the service of Allstate's Response, which had been filed on November 14, 2016. The Court finds that Defendants' Reply is untimely. Despite having the opportunity to do so, Defendants' did not file a Motion to Extend Time to File Reply *before* filing their untimely reply. Instead, Defendants waited to file their Motion until *after* filing their untimely reply and *after* Allstate filed its Motion to Strike. The only explanation for failing to file a timely reply and adhere to this Court's rules, as well as for failing to file a timely motion to extend, is that Defense Counsel was working on multiple briefs. Without more, the Court finds this explanation unsatisfactory. Accordingly, the Court grants Allstate's Motion to Strike, and denies Defendants' untimely Motion to Extend Time to File Reply.[1]

### III. CONCLUSION
For the reasons set forth above,

IT IS HEREBY ORDERED that Defendants' Motion to Dismiss (Doc # 18) is DENIED.

IT IS FURTHER ORDERED that Plaintiffs' Motion to Strike Reply (Doc # 24) is GRANTED.

IT IS FURTHER ORDERED that Defendants' Motion for Extension of Time to File Reply (Doc # 25) is DENIED.

**All Citations**

Not Reported in Fed. Supp., 2017 WL 3616476, RICO Bus.Disp.Guide 12,927

---

Footnotes

1     In any event, the Court notes that Defendants do not raise new arguments in their Reply (Doc # 23).