# EXHIBIT 5

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ALLSTATE INSURANCE COMPANY,
ALLSTATE INDEMNITY COMPANY,
ALLSTATE PROPERTY & CASUALTY
INSURANCE COMPANY,
ENCOMPASS INDEMNITY COMPANY,
and ENCOMPASS PROPERTY AND
CASUALTY COMPANY,

               Plaintiffs,              Civil Case No. 13-15108
                                         Honorable Linda V. Parker

v.

UNIVERSAL HEALTH GROUP, INC. d/b/a
SAGINAW SPINE AND PAIN, MICHIGAN
SPINE AND REHAB, ASSOCIATED
MEDICAL, INC., ASSOCIATED
CHIROPRACTIC & MEDICAL CENTER,
and REHAB, INC.; PROFESSIONAL
HEALTH SYSTEMS, LLC d/b/a
PROFESSIONAL MEDICAL BILLING, LLC;
HEALTH  SYSTEMS, INC.; UNITED WELLNESS
CENTERS, INC.; UNITED WELLNESS
CENTER OF DETROIT, PLLC; UNITED
WELLNESS CENTER OF FLINT, PLLC;
UNITED WELLNESS CENTER OF
LANSING, PLLC; CLEAR IMAGING LLC;
HORIZON IMAGING LLC; ASSOCIATED
SURGICAL CENTER, P.C.; AMERICAN
SURGICAL CENTERS I, INC.; AMERICAN
SURGICAL CENTERS II, LLC; WCIS
MEDIA, LLC; UHG MANAGEMENT, LLC;
UNITED WELLNESS CENTERS
MANAGEMENT, LLC; GREATER
MICHIGAN PROFESSIONAL SERVICES
LLC d/b/a MI PRO CONSULTANTS; SCOTT
P. ZACK, D.C.; DAVID M. KATZ, D.C.;

CORY J. MANN; YISROEL SIGLER; EVAN P.
SHAW; RON WALTZ; MAZIN K. YALDO,
M.D.; SILVIO J. COZZETTO, D.C.; VINCENT
L. CELENTANO; JOSEPH F. DESANTO;
NICOLE F. MARTINEZ; ANTHONY F.
SERENO; LOREN C. CHUDLER, D.O.;
JEFF S. PIERCE, D.O.; CHINTAN DESAI,
M.D.; and MICHAEL PALEY, M.D.,

                    Defendants.

_____/

## OPINION AND ORDER (1) DENYING MOTIONS TO DISMISS FILED BY DEFENDANTS [ECF NOS. 140-142 & 157]; (2) GRANTING PLAINTIFF'S MOTION TO STRIKE JOINDERS FILED BY DEFENDANTS WHO HAVE ANSWERED THE AMENDED COMPLAINT [ECF NO. 158]; AND (3) STRIKING JOINDERS FILED BY DEFENDANTS WHO HAVE ANSWERED THE AMENDED COMPLAINT [ECF NOS. 153 & 154]

Plaintiffs Allstate Insurance Company, Allstate Indemnity Company,

Allstate Property and Casualty Insurance Company, Encompass Indemnity

Company, and Encompass Property and Casualty Company (collectively

"Allstate") filed this lawsuit against Defendants on December 17, 2013.[1]  Allstate

alleges that Defendants devised and implemented a scheme to solicit motor vehicle

accident victims and defraud Allstate by submitting, or causing to be submitted,

---

[1] Pursuant to stipulated orders of dismissals or notices of voluntary dismissal, the following defendants no longer are parties to this lawsuit: American Surgical Centers I, Inc.; Ron Waltz; Jeff Pierce, D.O.; Chintan DeSai, M.D.; Michael Paley, M.D.; Associated Surgical Center, P.C.; Mazin K. Yaldo, M.D., Silvio J. Cozzetto, D.C.; United Wellness Center of Detroit, PLLC; United Wellness Center of Flint, PLLC; United Wellness Center of Lansing, PLLC; and United Wellness Centers Management, LLC.  (ECF Nos. 122, 123, 208, 211, 226 & 228.)

fraudulent medical records, bills, and invoices through the United States Mail which sought reimbursement under the Michigan No-Fault Act for medically unnecessary and/or unreasonable treatment and services.  On May 28, 2014, the Honorable Victoria A. Roberts reassigned the matter to the undersigned pursuant to Administrate Order 14-AO-030.  Allstate filed an Amended Complaint on May 30, 2014.  (ECF No. 128.)

Pending before the Court are the following motions:

•Renewed Motion to Dismiss filed by Defendants Loren C. Chudler, D.O. and Health Systems, Inc. (ECF No. 140);

•Motion to Dismiss Plaintiffs' Fist Amended Complaint filed by Defendants David M. Katz, D.C., Cory J. Mann, and Scott P. Zack, D.C. (ECF No. 141);

•Motion to Dismiss First Amended Complaint filed by Defendant Evan P. Shaw (ECF No. 142);

•Motion to Dismiss filed by Defendants Vincent L. Celentano, Joseph F. DeSanto, Greater Michigan Professional Services, LLC, Nicole F. Martinez, WCIS Media, LLC, and Ron Waltz (ECF No. 157); and

•Allstate's Motion to dismiss notices of joinder/concurrence filed by Defendants Yisroel Sigler, Silvio Cozzetto, D.C., Jeff Pierce, D.O., Anthony Sereno, United Wellness Center of Detroit, PLLC, United Wellness Center of Flint, PLLC, United Wellness Center of Lansing, PLLC, and United Wellness Centers Management, LLC (ECF No. 158).

The motions have been fully briefed.  On September 15, 2014, the Court notified the parties that it is dispensing with oral argument with respect to the motions pursuant to Eastern District of Michigan Local Rule 7.1(f)(2).  (ECF No. 90.)  The

Court finds the legal arguments adequately presented in the parties' papers such that the decision-making process would not be significantly aided by oral argument.

## I.    Factual and Procedural Background

In the Amended Complaint, Allstate alleges that Defendants are part of racketeering enterprises whose "singular purpose . . . was to exploit Michigan's unlimited No-Fault benefits" by fraudulently billing for unneeded medical services and treatment for individuals who were motor vehicle accident victims insured for Personal Injury Protection ("PIP") benefits under Allstate insurance policies. Allstate claims that this fraudulent billing scheme began in 2007.

In brief, the scheme first required access to a high volume of motor vehicle accident victims, who were obtained through different solicitation methods.  Those methods included: (1) Defendant WCIS Media, LLC ("WCIS"), a Florida "lawyer referral" entity with a web- and phone-based presence, which was controlled by Defendants Vincent L. Celentano ("Celentano"), Joseph DeSanto ("DeSanto"), Anthony F. Sereno ("Sereno"), and Nicole F. Martinez ("Martinez"); (2) the bulk purchase of police reports and the use of runners who Defendants paid based on the number of accident victims they were able to solicit to treat with the defendant medical facilities; (3) quid pro quo relationships with several Michigan personal injury attorneys; and (4) Greater Michigan Professional Services, LLC, doing

business as MI Pro Consultants ("MI Pro Consultants"), which is owned by

Celentano and operated by Sereno and Martinez. The Amended Complaint

describes several examples of how Allstate's insureds were solicited. (Am.

Compl. ¶¶ 389-491.)

Once solicited, Allstate claims the accident victims were set on a

predetermined course of excessive treatment through one of the medical facility

defendants and for legal representation with one of the personal injury attorneys

with whom Defendants closely worked. According to Allstate, runners were paid

for each appointment they had with accident victims and received additional sums

each time accident victims appeared for appointments with the medical facility

defendants. The runners also had to attend mandatory meetings, including some

with DeSanto and some held at Defendant Universal Health Group, Inc. ("UHG"),

which is owned by Defendant Scott P. Zack, D.C. ("Zack") and David M. Katz,

D.C. ("Katz"). The runners were told exactly which medical facility defendant a

victim should be referred to for treatment, even though the victim had not yet been

evaluated by a medical professional to determine what kind of treatment was

necessary or if treatment was needed at all.

The medical facility defendants to which accidents victims were referred

included UHG, Professional Health Systems, LLC ("PHS") (for which Zack and

Katz serve as Chief Executive Officer and Chief Operating Officer, respectively),

and several medical and chiropractic practices acquired by UHG or PHS. The victims also were referred for physical medicine and rehabilitation at UHG and Defendant Health Systems, Inc. ("Health Systems"), magnetic resonance imaging ("MRI") tests at Defendants Clear Imaging LLC ("Clear Imaging") and Horizon Imaging LLC ("Horizon Imaging"), and injections and surgical procedures at Defendants Associated Surgical Center, P.C. ("Associated Surgical"), American Surgical Centers I, Inc., and American Surgical Centers II, LLC (collectively "American Surgical"). Clear Imaging and Horizon Imaging are owned by Defendant Cory J. Mann and others. Defendant Loren C. Chudler, D.O. ("Chudler"), an osteopathic physician licensed in Michigan, is a director of Health Systems. He also is the Treasurer and a director of UHG and serves as its medical director. He referred patients to UHG-affiliated facilities and purportedly provided medical treatment at UHG and other defendant medical facilities which sought payment from Allstate.

According to Allstate, Defendants relied on bogus diagnoses made by healthcare professionals under their control to justify the excessive and unnecessary treatment provided to Allstate's insureds. Allstate supports its allegations with several lists of what it claims are hundreds of fraudulent evaluations, assessments, treatments and tests. It also attaches to its Amended Complaint the deposition transcripts of two runners who solicited accident victims

as part of the scheme. The Amended Complaint includes many exemplar claims detailing why medical treatment was excessive, not necessary, not performed in accordance with established standards of care, and performed as a direct result of illicit solicitation. (Am. Compl. ¶¶ 389-491, 679-781, 815-998, 11066-1169, 1237-1341, 1382-1459.)

Allstate claims that Defendants also allowed attorneys, such as Defendant Evan P. Shaw ("Shaw"), to dictate the content of medical records and to demand that certain diagnoses be made and certain prescriptions be ordered, including for attendant care and replacement services. Shaw, a licensed Michigan attorney, serves as General Counsel for PHS. According to Allstate, the excessive treatment, adulterated medical records, bogus diagnoses, and orders for attendant care and replacement services were used by Defendants and the personal injury attorneys with whom they closely worked to justify and inflate the value of claims submitted to Allstate and the amount of payment demanded from Allstate as part of litigation and settlement proceedings.

Allstate claims Defendants profited from the scheme in various ways. The medical facility defendants and individual medical providers were paid for the unnecessary and excessive treatment they provided. Some defendants received salaries from entities and/or payment for "management" services. WCIS, MI Pro Consultants, Sereno, and Martinez were paid for their solicitation services from the

payments from Allstate.  Several defendants directly split the proceeds generated by payments from Allstate to the medical facility defendants.

In the Amended Complaint filed May 30, 2014, Allstate asserts ten counts of RICO violations under 18 U.S.C. § 1962(c), ten counts of RICO conspiracy under 18 U.S.C. § 1962(d), and one count each of common law fraud, civil conspiracy, payment under mistake of fact, unjust enrichment, and a request for declaratory relief pursuant to 28 U.S.C. § 2201.  For each RICO or RICO conspiracy count, Allstate names a different defendant as the "enterprise": UHG (Counts I and II), Health Systems (Counts III and IV), United Wellness Centers, Inc. (Counts V and VI), United Wellness Center of Detroit (Counts VII and VIII), United Wellness Centers of Flint (Counts IX and X), United Wellness Centers of Lansing (Counts XI and XII), Clear Imaging (Counts XIII and XIV), Horizon Imaging (Counts XV and XVI), Associated Surgical (Counts XVII and XVIII), and American Surgical (Counts XIX and XX).

In their motions, Zack, Katz, Mann, Shaw, Chudler, Health Systems, DeSanto, Celentano, Martinez, WCIS Media, and MI Pro Consultants (hereafter referred to for purposes of this decision as "Defendants") seek dismissal of Allstate's claims pursuant to Federal Rule of Civil Procedure 12(b)(6).

## II.     Standard for Rule 12(b)(6) Motion

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6)

tests the legal sufficiency of the complaint.  *RMI Titanium Co. v. Westinghouse*

*Elec. Corp.*, 78 F.3d 1125, 1134 (6th Cir. 1996).  Under Federal Rule of Civil

Procedure 8(a)(2), a pleading must contain a "short and plain statement of the

claim showing that the pleader is entitled to relief."  To survive a motion to

dismiss, a complaint need not contain "detailed factual allegations," but it must

contain more than "labels and conclusions" or "a formulaic recitation of the

elements of a cause of action . . .."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544,

555 (2007).  A complaint does not "suffice if it tenders 'naked assertions' devoid

of 'further factual enhancement.' "  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)

(quoting *Twombly*, 550 U.S. at 557).

As the Supreme Court provided in *Iqbal* and *Twombly*, "[t]o survive a

motion to dismiss, a complaint must contain sufficient factual matter, accepted as

true, to 'state a claim to relief that is plausible on its face.' "  *Id*. (quoting *Twombly*,

550 U.S. at 570).  "A claim has facial plausibility when the plaintiff pleads factual

content that allows the court to draw the reasonable inference that the defendant is

liable for the misconduct alleged."  *Id*. (citing *Twombly*, 550 U.S. at 556).  The

plausibility standard "does not impose a probability requirement at the pleading

stage; it simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of illegal [conduct]." *Twombly*, 550 U.S. at 556.

In deciding whether the plaintiff has set forth a "plausible" claim, the court must accept the factual allegations in the complaint as true. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). This presumption, however, is not applicable to legal conclusions. *Iqbal*, 556 U.S. at 668. Therefore, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555).

Claims of fraudulent conduct must adhere to the heightened pleading requirements of Federal Rule of Civil Procedure 9(b), which provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." To satisfy Rule 9(b), the plaintiff is required: "(1) to specify the allegedly fraudulent statements; (2) to identify the speaker; (3) to plead where and when the statements were made; and (4) to explain what made the statements fraudulent." *Republic Bank & Trust Co. v. Bear Stearns & Co.*, 683 F.3d 239, 247 (6th Cir. 2012) (citation omitted); *see also Sanderson v. HCA-The Healthcare Co.*, 447 F.3d 873, 877 (6th Cir. 2006) ("As a sister circuit has phrased it," Rule 9(b) requires a plaintiff to "specify the 'who, what, when, where, and how' of the alleged fraud.") (quoting *United States ex rel. Thompson v. Columbia/HCA Healthcare Corp.*, 125 F.3d 899, 903 (5th Cir. 1997)).

## III. Applicable Law and Analysis

In their four motions, Defendants assert multiple arguments for why the Court should dismiss Allstate's claims. The Court will address the motions as a single extended motion to dismiss due to the fact that Defendants raise many of the same arguments, although subsequent motions may expand on or raise new facets of an argument previously made.

### A. Preemption

Defendants urge the Court to abstain from hearing Allstate's claims based on several preemption doctrines.

#### 1. "Reverse Preemption"

Defendants contend that the McCarren-Ferguson Act, 15 U.S.C. §§ 1011-1015, "reverse-preempts" Allstate's RICO claims. The Act provides: "The business of insurance, and every person engaged therein, shall be subject to the laws of the several States which relate to the regulation or taxation of such business." 15 U.S.C. § 1012(a). It further provides: "No Act of Congress shall be construed to invalidate, impair, or supersede any law enacted by any State for the purpose of regulating the business of insurance, or which imposes a fee or tax upon such business, unless such Act specifically relates to the business of insurance[.]" 15 U.S.C. § 1012(b). The United States Supreme Court has interpreted the Act as precluding the "application of a federal statute in face of state law 'enacted . . . for

11

the purpose of regulating the business of insurance,' if the federal measure does not 'specifically relat[e] to the business of insurance,' and would 'invalidate, impair, or supersede' the State's law." *Humana, Inc. v. Forsyth*, 525 U.S. 299, 307 (1999) (alteration in original) (quoting 15 U.S.C. § 1012(b)).

The Sixth Circuit Court of Appeals has instructed that the following three inquiries must each be answered in the affirmative for reverse preemption under McCarran-Ferguson to apply: (1) "whether the federal statute at issue 'specifically relates to the business of insurance' "; (2) "whether the state statute at issue was enacted . . . for the purpose of regulating the business of insurance"; and (3) "whether the application of the federal statute would invalidate, impair, or supersede the state statute." *Riverview Health Inst. LLC v. Med. Mut. of Ohio*, 601 F.3d 505, 514 (6th Cir. 2010) (alteration in original) (internal quotation marks and citations omitted). The Court finds it unnecessary to address the first two inquiries, as it concludes that the application of RICO would not "invalidate, impair, or supersede" Michigan's Insurance Code. Several courts in this District have reached the same conclusion in factually similar cases. *See State Farm Mut. Auto. Ins. Co. v. Pointe Physical Therapy, LLC*, No. 14-11700, 2014 U.S. Dist. LEXIS 174523, at **13-24 (E.D. Mich. Dec. 18, 2014) (Borman, J.); *State Farm Mut. Auto. Ins. Co. v. Universal Health Grp., Inc.*, No. 14-cv-10266, 2014 U.S. Dist. LEXIS 151213, at **18-19 (E.D. Mich. Oct. 24, 2014) (Levy, J.); *State Farm Mut.*

12

*Auto. Ins. Co. v. Physiomatrix, Inc.*, No. 12-11500, 2013 U.S. Dist. LEXIS 18501,

at **9-12 (E.D. Mich. Feb. 12, 2013) (O'Meara, J.).

The Court therefore concludes that Allstate's RICO claims based on the

allegations of a fraudulent No-Fault billing scheme are not reverse preempted

under the McCarran-Ferguson Act.

### 2.   *Burford* Abstention

Defendants next argue that the Court should abstain from adjudicating

Allstate's claims under the doctrine set forth in *Burford v. Sun Oil Co.*, 319 U.S.

315 (1943). *Burford* abstention applies where

> (1) . . . there are "difficult questions of state law bearing on policy
> problems of substantial public import whose importance transcends
> the result in the case then at bar"; or (2) . . . the "exercise of federal
> review of the question in a case and in similar cases would be
> disruptive of state efforts to establish a coherent policy with respect to
> a matter of substantial public concern."

*New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*, 491 U.S. 350, 361

(1989) (quoting *Colorado River Water Conservation Dist. v. United States*, 424

U.S. 800, 814 (1976)). *Burford* abstention "is used to avoid conflict with a state's

administration of its own affairs." *Rouse v. DaimlerChrysler*, 300 F.3d 711, 716

(6th Cir. 2002). "It applies only if a federal court's decision on a state law issue is

likely to 'interfere with the proceedings or orders of state administrative

agencies.'" *Id.* (citing *New Orleans Pub. Serv. Inc.*, 491 U.S. at 361).

Defendants fail to demonstrate that *Burford* abstention applies here, as they do not identify any ongoing orders or proceedings of state administrative agencies with which Allstate's case would interfere. Moreover, this case does not present "difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case . . . at bar." *New Orleans Pub. Serv. Inc.*, 491 U.S. at 361. Rejecting the defendants' *Burford* abstention argument in a factually similar case-- notably against many of the same entities sued here-- the Honorable Judith E. Levy noted in *Universal Health Group*:

> Every owner or registrant of a motor vehicle in the state of Michigan is required to carry no-fault insurance on the vehicle in question. M.C.L. § 500.3101. Litigation will inevitably ensue on a variety of fronts as a result of automobile accidents. That there are a number of lawsuits in Michigan state courts under no-fault laws does not mean that any claim related to no-fault insurance is a matter of "substantial public import." It means that Michigan residents bring Michigan state law claims in Michigan courts. Moreover, this is not a no-fault case.

2014 U.S. Dist. LEXIS 151213, at **24-25. As Judge Levy further noted, " '[a]bstention is an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it.' " *Id*. at *25 (quoting *Answers in Genesis of Ky., Inc. v. Creation Ministries Int'l, Ltd.*, 556 F.3d 459, 467 (6th Cir. 2009)) (additional quotation marks and citation omitted).

Like Judge Levy, this Court is not persuaded that *Burford* abstention applies to Allstate's claims.

### 3. *Colorado River* Doctrine

Defendants also argue that abstention is appropriate pursuant to the abstention doctrine established in *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976). Under the *Colorado River* doctrine, a district court may abstain from hearing cases "in situations involving the contemporaneous exercise of jurisdiction by state and federal courts." *Romine v. Compuserve Corp.*, 160 F.3d 337, 339 (6th Cir. 1998) (citing *Colorado River Water Conservation Dist.*, 424 U.S. at 817). For the doctrine to apply, the Court must find that "the state and federal cases are parallel" and that "wise judicial administration justifies abstaining from hearing the federal case." *Colorado River Water Conservation Dist.*, 424 U.S. at 817.

Defendants fail to identify a single state court proceeding, much less one that is parallel to Allstate's federal lawsuit. At best, Zack, Katz, and Mann refer vaguely to lawsuits between Allstate and "various [unnamed] medical providers" regarding Allstate's "refus[al] to pay the premium paying policyholder and/or the medical service provider for services rendered to Allstate's insureds." (ECF No. 141 at Pg ID 5704.) But even if Allstate may assert fraud as a defense in those state court proceedings, that does not render those proceedings "parallel" to this federal action. The issue of whether Defendants in this action engaged in a conspiracy to defraud Allstate will not be litigated. Any state court proceeding

15

does not involve the majority of the defendants named by Allstate in its federal Amended Complaint. Further, Allstate's current request for reimbursements for claims already paid will not be adjudicated in the state court litigation.

In short, there is no parallel state court proceeding and thus there is no reason for this Court to abstain from hearing Allstate's federal action under the *Colorado River* doctrine.

### 4. *Younger* Abstention

Some Defendants (Zack, Katz, Mann, Chudler, and Health Systems) argue that the Court should abstain from hearing Allstate's claims pursuant to the abstention doctrine set forth in *Younger v. Harris*, 401 U.S. 37 (1971) and its progeny, including *Penzoil Oil Co. v. Texaco, Inc.*, 481 U.S. 1 (1987). Under *Younger*, a federal court must abstain from adjudicating federal proceedings where: "(1) state proceedings are pending; (2) the state proceedings involve an important state interest; and (3) the state proceedings will afford the plaintiff an adequate opportunity to raise his constitutional claims." *Kelm v. Hyatt*, 44 F.3d 415, 419 (6th Cir. 1995) (citing *Nilsson v. Ruppert, Bronson & Chicarelli Co.*, 888 F.2d 452, 454 (6th Cir. 1989)).

*Younger* does not instruct this Court to abstain from hearing Allstate's claims for the same reason abstention under the *Colorado River* doctrine does not apply. Defendants do not identify a single pending state court proceeding.

Moreover, any state court proceedings alluded to by Defendants involve claims for PIP benefits brought by medical providers against Allstate. Those proceedings do not "involve an important state interest." Thus the Court concludes that *Younger* abstention is inapplicable to Allstate's case.

## B. Fraud

Allstate's RICO claims are premised on mail fraud and Allstate additionally alleges a claim of common law fraud in its Amended Complaint.[2] As set forth earlier, Rule 9(b) imposes heightened pleading requirements for fraud claims.

---

[2]"Mail fraud requires proof of a defendant's '(1) devising or intending to devise a scheme to defraud (or to perform specified fraudulent acts); (2) involving a use of the mails; and (3) for the purpose of executing the scheme or attempting to do so.' " *United States v. Kennedy*, 714 F.3d 951, 958 (6th Cir. 2013) (quoting *United States v. Frost*, 125 F.3d 346, 354 (6th Cir. 1997)). "To establish a scheme to defraud, the [plaintiff] must prove that the defendant made a material false statement or omission, i.e., a statement or omission 'that would have affected a reasonable person's actions in the situation.' " *United States v. Lombardo*, 582 F. App'x 601, 622 (6th Cir. 2014) (quoting *United States v. Daniel*, 329 F.3d 480, 487 (6th Cir. 2003)). To state a claim of fraud under Michigan law, the plaintiff must allege:

> (1) the defendant made a material representation; (2) the representation was false; (3) when the defendant made the representation, the defendant knew that it was false, or made it recklessly, without knowledge of its truth as a positive assertion; (4) the defendant made the representation with the intention that the plaintiff would act upon it; (5) the plaintiff acted in reliance upon it; and (6) the plaintiff suffered damage.

*Howard v. Chase Home Fin., LLC*, 555 F. App'x 567, 572 (6th Cir. 2014) (quoting *M & D, Inc. v. W.B. McConkey*, 585 N.W.2d 33, 36 (Mich. Ct. App. 1998)).

Defendants argue that Allstate has not satisfied those requirements. Specifically, for example, Defendants contend that for each claim of mail fraud, Allstate fails to plead with particularity the time, place, and contents of the false statement(s), the identity of the sender and recipient, or the alleged misconduct of each defendant and the basis of each defendant's liability (i.e., which defendant caused what to be mailed and when).

Allstate's Amended Complaint contains hundreds of paragraphs describing how Defendants' alleged mail fraud worked: starting with the establishment of a network designed to bill PIP insurers for unnecessary services and treatment, the solicitation of patients to receive treatment and services, through the alleged fraudulent billing for the treatment and services via the U.S. mail. As summarized in its response brief, Allstate provides specific examples of each Defendant's activities related to the fraud. (ECF No. 159 at Pg ID 6298-6305.) Allstate also explains in detail how the bills and medical documentation submitted to it by and/or with the knowledge and consent of Defendants contained false representations, providing more than fifty exemplar claims. (*See, e.g.,* ECF No. 128 ¶¶ 389-491, 564-571, 679-781, 815-998, 1066-1169, 1237-1341, 1382-1459, 1523-1525, 1546-1556.) The Amended Complaint therefore provides sufficient notice to each defendant as to that defendant's role in the alleged fraud.

The suggestion raised by Defendants' arguments is that Allstate must proffer evidence to support every factual allegation in the Amended Complaint or else its allegations are merely conclusory and subject to dismissal under Rule 12(b)(6). This is not the law, however, and Defendants appear to misunderstand the difference between a factual and conclusory allegation. As the Sixth Circuit has provided, Rule 9(b) "requires only that the 'circumstances' of the fraud be pled with particularity, not the evidence of the case. While 'circumstances' may consist of evidence, the rule does not mandate the presentation of facts and evidence in a complaint." *Michaels Bldg. Co. v. Ameritrust Co., N.A.*, 848 F.2d 674, 680 n.9 (6th Cir. 1988). Moreover, "[a] party that causes a fraudulent bill to be submitted to an insurer may be as liable for fraud as the person whose name was on the fraudulent submission." *Universal Health Grp.*, 2014 U.S. Dist. LEXIS 151213, at *8 (citing *Allstate Ins. Co. v. Etienne*, No. 09-CV-3582, 2010 WL 433833, at *10 (E.D.N.Y. Oct. 6, 2010) and *Fremont Reorganizing Corp. v. Duke*, 811 F. Supp. 2d 1323, 1337 (E.D. Mich. 2011)). Further, a plaintiff does not have to allege facts indicating that each defendant personally used the postal system to establish each defendants' liability. *Aetna Cas. Sur. Co. v. P&B Autobody*, 43 F.3d 1546, 1560 (1st Cir. 1994) (quoting *United States v. Maze*, 414 U.S. 395, 399 (1974) (to be liable for mail fraud, "[t]he plaintiff does not need to prove that each defendant personally used the mails but only that the defendant acted 'with knowledge that

19

the use of the mails will follow in the ordinary course of business, or [acted in circumstances] where such use can be reasonably foreseen.' ")).

Accordingly, the Court concludes that Allstate has adequately pled facts to establish that Defendants engaged in mail fraud and common law fraud to survive Defendants' motions to dismiss.

### C.    RICO

Allstate claims that Defendants violated 18 U.S.C. § 1962(c) and (d).  Those provisions read:

> (c) It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

> (d) It shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section.

18 U.S.C. § 1962.  To establish liability under subsection (c), the plaintiff must establish: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985); *Brown v. Cassens Transp. Co.*, 546 F.3d 347, 354 (6th Cir. 2008).  The plaintiff also must show that "he has been injured in his business or property by the conduct constituting the violation." *Id*.  To establish a RICO conspiracy claim under subsection (d), the plaintiff "must successfully allege all the elements of a RICO violation, as well as alleging 'the existence of an illicit agreement to violate the

substantive RICO provision.' " *Heinrich v. Waiting Angels Adoption Servs., Inc.*,
668 F.3d 393, 411 (6th Cir. 2012) (quoting *United States v. Sinito*, 723 F.2d 1250,
1260 (6th Cir. 1983)).

Defendants raise numerous arguments for why they believe Allstate's RICO
and RICO conspiracy claims must be dismissed. Each argument will be addressed
in turn.

### 1.    Pattern of Racketeering Activity

Defendants contend that Allstate's Amended Complaint fails to allege the
existence of the necessary "racketeering activity", as defined under RICO. "To
withstand a motion to dismiss for failure to state a RICO claim, a plaintiff must
allege at least two predicate acts of racketeering." *Am. Chiropractic Ass'n, Inc. v.
Trigon Healthcare, Inc.*, 367 F.3d 212, 235 (4th Cir. 2004). "Racketeering
activity" is defined in 18 U.S.C. § 1961(1) and includes "mail fraud" in violation
of 18 U.S.C. § 1341.

Zack, Katz, and Mann assert that Allstate alleges only one "predicate act":
mail fraud. However the Sixth Circuit's decision in *Blue Cross & Blue Shield of
Michigan v. Kamin*, 876 F.2d 543 (6th Cir. 1989), instructs that where, as here,
numerous mailings were made, related to different Allstate insureds and to recover
PIP benefits for different treatments and services, more than one predicate act is
alleged. *Id.* at 545-46 ("Here the plaintiff was the victim of literally hundreds of

21

separate acts of mail fraud. As we read the statute, we do not believe that Congress

intended that one could insulate himself from the reach of RICO simply by

repeatedly bilking the same victim.").  In *Kamin* the Sixth Circuit explained the

difference between a single predicate act and the commission of several predicate

acts in the context of mail fraud:

> The "pattern" issue is exacerbated when mail fraud is the predicate offense. For example, if one devises a scheme to file a false insurance claim relating to an allegedly stolen automobile, and causes a letter to be mailed to the police and to the insurance company, each letter may be the basis for a separate count of mail fraud in a criminal prosecution. There is clearly only one scheme to defraud, however, and these facts should not support a civil RICO claim. However, if the same person owns ten automobiles and fraudulently tries on ten different occasions to collect from the insurance company on each car, there would be ten schemes, not one, notwithstanding that the insurance company was the victim in each case and the modus operandi of the wrongdoer was the same in each case. Such facts would support a civil RICO claim.

*Id*. at 545.

Shaw argues that Allstate's allegations are insufficient to establish that he

engaged in mail fraud because they do not meet the minimum requirements of

alleging time, place, and contents of the misrepresentations upon which Allstate

relied.  He contends that Allstate's Amended Complaint fails to differentiate which

defendants caused what to be mailed.  Shaw also argues that Allstate's Amended

Complaint fails to allege that he, as legal counsel for PHS, should have known

about the allegedly fraudulent mailings.  Shaw contends that none of the purported

22

fraudulent mailings are alleged to have emanated from either of his places of employment.

Courts have found the particularity described in Shaw's first argument unnecessary to satisfy Rule 9(b) in cases like this one:

> In complex civil RICO actions involving multiple defendants, Rule 9(b) does not to [sic] require that the "temporal or geographic particulars of each mailing made in furtherance of the fraudulent scheme be stated with particularity," but only that the "plaintiff delineate, with adequate particularity in the body of the complaint, the specific circumstances constituting the overall fraudulent scheme."

*Aiu Ins. Co. v. Olmecs Med. Supply, Inc.*, No. CV-04-2934, 2005 WL 3710370, at *11 (E.D.N.Y. Feb. 22, 2005) (citing *In re Sumitomo Copper*, 995 F. Supp. 451, 456 (S.D.N.Y. 1998) (internal citations omitted) and *Calabrese v. CSC Holdings, Inc.*, No. 02-CV-05171, 2003 WL 22052824, *6 (E.D.N.Y. Aug.13, 2003)); *see also Physiomatrix*, 2013 U.S. Dist. LEXIS 18501, at *16.  Allstate does allege, however, from where many of the fraudulent bills were mailed and provides many examples of the misrepresentations contained in those mailings.  (*See, .e.g.,* Am. Compl. ¶¶ 389-491, 564-571, 679-781, 815-990, 1523-1525, 1527, 1529, 1531, 1540, 1542, 1533 1546-1556.)

Turning to Shaw's second argument, as discussed above with respect to Allstate's fraud claim, Allstate alleges sufficient facts to establish his involvement in the fraud and his awareness that fraudulent billings would be sent via mail to Allstate.

## 2. Enterprise

Liability under § 1962(c) requires proof of the existence of two distinct entities: "(1) a 'person' and (2) an 'enterprise' that is not simply the same person referred to by a different name." *Cedric Kushner Promotions Ltd. v. King*, 533 U.S. 158, 161 (2001). The RICO statute defines an "enterprise" as "includ[ing] any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). The Supreme Court has defined an "enterprise" as "an entity, for present purposes a group of persons associated together for a common purpose of engaging in a course of conduct . . .." and provided that this element "is proved by evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit." *United States v. Turkette*, 452 U.S. 576, 583 (1981).

> A RICO enterprise has three characteristics:
>
> (1) an ongoing organization with some sort of framework or superstructure for making and carrying out decisions; (2) that the members of the enterprise functioned as a continuing unit with established duties; and (3) that the enterprise was separate and distinct from the pattern of racketeering activity in which it engaged.

*Ouwinga v. Benistar 419 Plan Services, Inc.*, 694 F.3d 783, 793 (6th Cir. 2012) (citations omitted). These requirements are easily met where, as in the present

case, the enterprise has a legal existence, such as a corporation or partnership.[3]  As

the Sixth Circuit has provided by identifying two principles emerging from the

decisions of the Supreme Court and Circuit courts with respect to RICO's

"separate and distinct" requirement:

> 1) individual defendants are always distinct from corporate enterprises
> because they are legally distinct entities, even when those individuals
> own the corporations or act only on their behalf; and 2) corporate
> defendants are distinct from RICO enterprises when they are
> functionally separate, as when they perform different roles within the
> enterprise or use their separate legal incorporation to facilitate
> racketeering activity.

*In re ClassicStar Mare Lease Litig.*, 727 F.3d 473, 492 (6th Cir. 2013).

Defendants contend that Allstate fails to plead an "enterprise", arguing that

Allstate's allegations concerning the existence of an enterprise are "generic."

More specifically, Defendants contend:

> Allstate's Complaint lists a string of random entities and persons,
> including the individual Defendants, health care providers, and other
> business entities. The Complaint is bereft of any factual allegations,
> however, showing an organizational structure through which those
> same entities purposely coordinated and functioned as a continuing
> unit to achieve a "mutual business purpose."

(ECF No. 141 at Pg ID 5711.)  In fact, however, the allegations in Allstate's

Amended Complaint do not list a string of random entities and persons.  Instead, it

---

[3] Allstate in fact makes clear in its response brief that it "does not allege any
association-in-fact enterprises, but rather ten (10) distinct enterprises comprised of
each of the ten medical facility defendants (each of which is a distinct legal entity
organized under Michigan law)."  (ECF No. 159 at Pg ID at 6311-6312.)

describes in detail how the individuals and entities-- each existing separately and distinctly-- are connected and organized to carry out the alleged fraudulent scheme.

### 3. "Conducting the Affairs" of the Enterprise

RICO prohibits parties from "conduct[ing] or participat[ing], directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity." 18 U.S.C. § 1962(c). Defendants argue that Allstate fails to allege that all defendants conducted the "affairs of the enterprise."

In order to conduct the affairs of the enterprise, "one must have some part in directing those affairs." *Reves v. Ernst & Young*, 507 U.S. 170, 179 (1993). The *Reeves* Court held that one is not liable [under § 1962(c)] unless one has participated in the operation or management of the enterprise itself." *Id*. at 183. The Court made clear that the "operation or management" test does not limit liability to upper management; rather, liability "may extend to any person employed by or associated with [the] enterprise." *Id*. at 184 (additional quotation marks and citation omitted) ("an enterprise is operated not just by upper management but also by lower-rung participants in the enterprise who are under the direction of upper management.").

In its Amended Complaint, Allstate identifies in detail the course of conduct each defendant engaged in with regard to the asserted enterprises. Those allegations do not suggest that Defendants were simply taking directions and

26

performing tasks necessary or helpful to the enterprises. Instead, the facts alleged indicate that Defendants operated and/or managed the enterprises' affairs. And while not necessary, the allegations suggest that Defendants exercised significant control over the enterprises' affairs.

This is true of Shaw, who argues that Allstate does not indicate how he fit into each enterprise or participated in the commission of the predicate violations. According to Shaw, he simply served as General Counsel for PHS, providing only lawful legal advice and services to a facially lawful enterprise. Allstate alleges, however, that Shaw (not a licensed healthcare professional) ordered that certain prescriptions be written and diagnoses be made, including orders for lucrative attendant care and replacement services. (Am. Compl. at ¶¶ 227, 243, 244, 499, 508, 1534.) Allstate further alleges that Shaw pressured physicians to postdate medical records and enter certain narratives in the medical records to assist lawyers in litigation against insurers like Allstate. (*Id*. at ¶¶ 244, 510.) Allstate claims that Shaw was a key participant in the operation of UHG/PHS, including facilitating the use of runners and other solicitation tactics. (*Id*. at ¶ 63.) Shaw may deny these allegations; but the Court must accept them to be true for purposes of deciding his Rule 12(b)(6) motion. Thus while Shaw may have only joined PHS as its legal counsel in June 2012, Allstate alleges sufficient facts to suggest that he conducted the affairs of the enterprises.

27

The same can be said of Chudler, who Allstate alleges was the Medical Director and a member of the Board of Directors of both UHG and Health Systems. (Am. Compl. ¶¶ 38, 52, 164-171.) Allstate asserts that Chudler personally treated approximately half of the patients at issue in its Amended Complaint and consistently misrepresented the fact and findings of his "examinations" and the need for the referrals he automatically made to other providers in the UHG/PHS network. (*Id.* ¶¶ 168-171, 252.) Moreover, Allstate claims that Chudler carried out the predetermined treatment protocols imposed on all patients who presented at one of the defendant medical facilities, irrespective of need, and often wrote the prescriptions that set patients on endless courses of physical therapy and unnecessary MRIs and electrodiagnostic testing. (*Id.* ¶¶ 576, 577-579, 592.)

Thus the Court finds that Allstate sufficiently pleads facts to establish that each Defendant conducted the affairs of the enterprises.

28

### 4.      Reliance/Causation

Defendants argue that Allstate fails to plead the requisite reliance to

establish its RICO claims (as well as any of its fraud-related claims). Specifically,

Defendants contend that Allstate

> ha[s] asserted no allegations specifically detailing how [it] purportedly
> relied upon the alleged fraudulent mailings reportedly sent by the
> Individual Defendants. Indeed, Allstate has refused to pay for services
> rendered to its insureds in hundreds of cases in Michigan, resulting in
> state court actions across Michigan. Because of its deficient pleading
> here, Defendants have no way in which to confirm or deny that
> Allstate has actually experienced some harm caused purportedly as a
> result of Defendants' fraud.

(ECF No. 141 at Pg ID 5729-5730.)

The Supreme Court explained RICO's direct injury requirement in *Holmes*

*v. Securities Investor Protection Corp.*, 503 U.S. 258, 268 (1992). The Court held

that RICO contains a proximate cause requirement which forces the plaintiff to

demonstrate "a direct relation between the injury suffered and the injurious

conduct alleged." *Id*. In *Firestone v. Galbreath*, 976 F.2d 279 (6th Cir. 1992), the

court found a direct relationship missing where the plaintiffs alleged that the

defendants' actions decreased the size of the estate of the plaintiffs' grandmother

and consequently the size of the plaintiffs' inheritance. *Id*. at 285. The court held

that the plaintiffs alleged "only an indirect injury because any harm to the

[g]randchildren flows merely from the misfortunes allegedly visited upon [their

grandmother] by the defendants." *Id*. The court equated the plaintiffs' injury to

that of a corporate shareholder "where the alleged injury is diminution or destruction of the value of the stock due to acts aimed at [the] corporation." *Id.* (citing *Gaff v. FDIC*, 814 F.2d 311 (6th Cir. 1987) and *Warren v. Manufacturer's Nat'l Bank*, 759 F.2d 542 (6th Cir. 1985)).

Here, in contrast, Allstate has alleged a direct relationship between Defendants' conduct and the injury suffered-- Allstate's payment to Defendants of millions in No-Fault benefits that Allstate claims were not compensable. Unlike the grandchildren in *Firestone* and the shareholders in *Gaff* and *Warren*, Allstate alleges that Defendants' fraudulent conduct was directed at Allstate and other No-Fault insurance providers. Thus the Court finds that Allstate sufficiently pleads this element of its RICO and other fraud-related claims.

## 5. Continuity

A party asserting a civil RICO violation must show "that the racketeering predicate acts are related, and that they amount to or pose a threat of continued criminal activity." *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 239 (1989). Known as the "relationship plus continuity" test, the plaintiff must show that the predicate acts " 'have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events.' " *Id.* at 240 (quoting 18 U.S.C. § 1961(5). As the Supreme Court explained in *H.J. Inc.*: " 'Continuity' is both a

closed- and open-ended concept, referring either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition." *Id*. Defendants assert that the facts set forth in Allstate's Amended Complaint fail to satisfy the "continuity" requirement.

Specifically, Defendants claim first that "nothing in the Amended Complaint even remotely suggests that each of the alleged enterprises are ongoing organizations that maintain operations that are separate and apart from the alleged predicate acts." (ECF No. 141 at Pg ID 5731.) Next they argue "that there are no facts in the [Amended] Complaint suggesting any of the enterprises are ongoing organizations, or that the various enterprises' members function as units." (*Id*.) Finally, Defendants maintain that "there are no allegations of any hierarchical or consensual decision making structure." (*Id*.) The Court disagrees.

In the Amended Complaint, Allstate alleges a multitude of predicate acts of mail fraud from 2007 up to the filing of its lawsuit. Allstate further alleges that the acts were related in that they shared the same purpose (to induce Allstate to make PIP benefits payments), result (obtaining payments from Allstate), participants (the defendants named in each RICO count), victim (Allstate), and method of commission (submission through the U.S. mail of medical records and invoices seeking reimbursement for medical treatment that Allstate claims was not compensable under the Michigan No-Fault Act). Allstate also sets forth in detail

31

how each participants' activities were coordinated to contribute to the enterprises' purpose and how the "owner/manager" defendants (i.e., Zack, Katz, Mann, Celentano, DeSanto, Shaw, and others) controlled the scheme.

### 6.    Statute of Limitations

The Supreme Court has held that a four-year limitations period applies to RICO claims. *Agency Holding Corp. v. Mally-Duff & Assoc., Inc.*, 483 U.S. 143, 156 (1987); *Rotella v. Wood*, 528 U.S. 549, 555-57 (2000). Defendants argue that this limitation period precludes Allstate from recovering damages based on alleged RICO violations arising more than four years before this lawsuit was filed, that is before December 17, 2009. The limitations period did not begin to run, however, until Allstate knew or should have known of its injuries arising from Defendants' RICO violations. *See Hofstetter v. Fletcher*, 905 F.2d 897, 904 (6th Cir. 1988). Allstate asserts that due to Defendants' fraudulent concealment, it did not discover the misconduct that forms the basis of their claims until shortly before it filed this lawsuit.

A statute of limitations period will be tolled under the doctrine of fraudulent concealment where the plaintiff alleges and establishes that: " '1) [the] defendants concealed the conduct that constitutes the cause of action; 2) [the] defendants' concealment prevented [the] plaintiff[] from discovering the cause of action within the limitations period; and 3) until discovery, [the] plaintiff[] exercised due

32

diligence in trying to find out about the cause of action.' " *Egerer v. Woodland Realty, Inc.*, 556 F.3d 415, 422 (6th Cir. 2009) (quoting *Pinney Dock & Transp. Co. v. Penn Cent. Corp.*, 838 F.2d 1445, 1465 (6th Cir. 1988)). Pursuant to Sixth Circuit precedent, the doctrine of fraudulent concealment requires proof of affirmative acts of concealment. "Mere silence, or one's unwillingness to divulge one's allegedly wrongful activities, is not sufficient." *Pinney*, 838 F.2d at 1472.

Allstate pleads sufficient facts in its Amended Complaint to toll the statute of limitations pursuant to the doctrine of fraudulent concealment. (*See* Am. Compl. ¶¶ 1557-1560, 1603-1613.) Thus the Court cannot conclude at this stage of the pleadings that the applicable statute of limitations bars Allstate from recovering any of the damages it seeks under RICO.

### 7.  Actionable Injuries

Citing *Jackson v. Sedgwick Claims Management Services, Inc.*, 731 F.3d 556 (6th Cir. 2013) (en banc), Defendants argue that Allstate's RICO claims must be dismissed because its injuries are derivative of personal injuries and thus are not actionable.

In *Jackson*, the Sixth Circuit held that the plaintiffs could not assert RICO claims against their employer, its third-party benefit claims administrator, and the doctor who reported that the plaintiffs did not have a work-related disability entitling them to workers' compensation benefits. 731 F.3d at 558. The court

reasoned that the benefits for which the plaintiffs were seeking recovery were for personal injuries, rather than injuries to their business or property as required to state a RICO claim under 18 U.S.C. § 1964(c). *Id.* at 566. As several courts in the Sixth Circuit and elsewhere have recognized, however, the type of injury claimed by Allstate in the present action is compensable under RICO. *See, e.g., Allstate Ins. Co. v. Med. Evaluations, P.C.*, No. 13-14682, 2014 U.S. Dist. LEXIS 76969, at *4-9 (E.D. Mich. June 6, 2014) (Leitman, J.) (citing *Allstate Ins. Co. v. Lyons*, 843 F. Supp. 2d 358, 373-74 (E.D.N.Y. 2012); *Allstate Ins. Co. v. Linea Latina de Accidentes*, 781 F. Supp. 2d 837, 845 (D. Minn. 2011); and *State Farm Mut. Auto. Ins. Co. v. Physiomatrix, Inc.*, No. 12-11500, 2014 WL 555199, at *2 (E.D. Mich. Feb. 12, 2014)); *see also Universal Health Grp.*, 2014 U.S. Dist. LEXIS 151213, at **19-20. Moreover, as a corporate entity, Allstate by definition is incapable of suffering a personal injury and can incur only injuries to its business or property. *In re Lost Peninsula Marina Dev. Co.*, Nos. 10-10264, 10-10395, 2010 WL 3070134, at *2 (E.D. Mich. Aug. 4, 2010) (Zatkoff, J.) (citing *Roemer v. C.I.R.*, 716 F.2d 693, 699 n. 4 (9th Cir. 1983) ("A corporation by its very nature cannot suffer a personal injury. A corporation is a business entity and not a human being[.]"); *P & X Mkts., Inc. v. C.I.R.*, 106 T.C. 441, 445, 1996 WL 323680 (U.S. Tax Ct. 1996); and *Boyett Coffee Co. v. United States*, 775 F. Supp. 1001, 1003-04 (W.D. Tex. 1991)).

34

The Court therefore rejects Defendants' *Jackson* argument.

### 8. Standing

A plaintiff has standing to assert a RICO claim "and can only recover to the extent that, he has been injured in his business or property by the conduct constituting the violation." *Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 496 (1985). There must be "some direct relation between the injury asserted and the injurious conduct alleged." *Holmes v. Sec. Investor Prot. Corp.*, 503 U.S. 258, 268 (1992). The direct injury requirement is integral to a court's RICO standing analysis: "When a court evaluates a RICO claim for proximate causation, the central question it must ask is whether the alleged violation led directly to the plaintiff's injuries." *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 461 (2006).

Celentano, Martinez, WCIS, and MI Pro Consultants argue that Allstate lacks standing to pursue its RICO claims against them. Specifically, these defendants contend that Allstate cannot show the necessary causal relationship between their alleged misconduct as solicitors of patients and Allstate's alleged injury. They liken their role to the defendant in *Allstate New Jersey Insurance Co. v. Summit Pharmacy*, No. 13-5809, 2014 WL 1767528, at *8 (D.N.J. May 2, 2014), who unlawfully steered insureds from the insureds' usual pharmacies of choice to itself and who the court held the plaintiff lacked standing to sue under RICO.

35

Unlike *Summit Pharmacy*, however, Allstate alleges that many of its insureds would not have sought and therefore received treatment and services *but for* the solicitation of these defendants.  (Am. Compl. ¶¶ 557, 569, Ex. 12.)  In other words, these defendants were not simply directing Allstate's insureds from another medical facility to the medical facilities and providers named as defendants here.  Moreover, Allstate claims that these defendants were part of the overall scheme to charge Allstate for unreasonable and unnecessary treatment and services and that they split the proceeds of the payments received.  According to Allstate, they also were aware that they were setting the solicited accident victims on a predetermined course of excessive treatment through the UHG/PHS network.  Therefore, it cannot be said that Allstate necessarily would have made the same payments if Celentano. Martinez, WCIS, and MI Pro Consultants had not engaged in the misconduct alleged and Allstate's insureds had gone elsewhere for treatment.

Allstate alleges a direct injury resulting from the solicitation of its insureds by these defendants and facts indicating that this injury was a foreseeable, logical, and not speculative result of this solicitation.  *See Trollinger v. Tyson Foods, Inc.*, 370 F.3d 602, 614-615 (6th Cir. 2004) (explaining that standing under RICO

requires a direct injury and traditional proximate-cause limitations).[4]  The Court

therefore concludes that Allstate has standing to sue these defendants.

### D. RICO Conspiracy and Civil Conspiracy

Defendants seek dismissal of Allstate's RICO conspiracy claims, contending

that the claims fail because Allstate does not adequately plead the underlying

RICO claims as to each individual defendant.  Defendants maintain that Allstate's

civil conspiracy claims fail for a similar reason: Allstate fails to plead the elements

to state the underlying fraud claims against each defendant.  Shaw additionally

argues that Allstate's civil conspiracy claim fails under the intra-corporate

conspiracy doctrine.  The Court has found that Allstate alleges sufficient facts to

---

[4] The Sixth Circuit noted in *Trollinger*:

> From a procedural standpoint, a RICO case with a derivative-injury problem is better suited to dismissal on the pleadings than a RICO case with a traditional proximate-cause problem ( e.g., a weak or insubstantial causal link, a lack of foreseeability, or a speculative or illogical theory of damages). Under the familiar rules of notice pleading in federal courts . . . a court often finds no need to look beyond the face of the complaint in order to determine that the plaintiff lacks standing because the injury was passed on by another party that had a more direct relationship with the defendant. But since "we presume that general allegations embrace those specific facts ... necessary to support the claim," other causal weaknesses will more often be fodder for a summary-judgment motion under Rule 56 than a motion to dismiss under Rule 12(b)(6). *NOW v. Scheidler*, 510 U.S. 249, 256, 114 S. Ct. 798, 127 L.Ed.2d 99 (1994) (quotation omitted).

*Trollinger*, 370 F.3d at 615.

state the underlying RICO and fraud claims.  Thus it will address only Shaw's
intra-corporate conspiracy doctrine argument.

The intra-corporate conspiracy doctrine "holds that a cause of action does
not exist for civil conspiracy between a corporation and its agents acting within the
scope of their employment."  *Upton v. City of Royal Oak*, 492 F. App'x 492, 504
(6th Cir. 2012).  Contending that his role in the alleged conspiracy is based upon
his position as General Counsel for PHS, Shaw contends that he is an agent of PHS
and therefore cannot be part of a conspiracy with PHS under the intra-conspiracy
doctrine.  But Shaw ignores that Allstate claims he conspired with a total of
twenty-five defendants other than PHS.

Furthermore, at least with respect to Allstate's civil conspiracy claim,
Michigan has recognized an exception to the intra-conspiracy doctrine where the
employee has an independent personal stake in achieving the object of the
conspiracy.  *See Blair v. Checker Cab Co.*, 558 N.W.2d 439, 442 (Mich. Ct. App.
1996).  Several federal courts have adopted this exception.  *See, e.g., H & B Equip.
Co. v. Int'l Harvester Co.,* 577 F.2d 239, 244 (5th Cir. 1978); *Greenville Publ'g
Co. v. Daily Reflector, Inc.*, 496 F.2d 391, 399-400 (4th Cir. 1974).  The Sixth
Circuit has declined to adopt the exception, however, even expressing that "[t]here
are rather substantial policy reasons for not [doing so]."  *Nurse Midwifery Assoc. v.
Hibbett*, 918 F.2d 605, 613 (6th Cir. 1990) (quoting *Potters Med. Ctr. v. City Hosp.*

38

*Ass'n*, 800 F.2d 568, 573 (6th Cir. 1986) and *Smith v. N. Mich. Hosps.*, 703 F.2d 942, 950 n.15 (6th Cir. 1983)).

Nevertheless, Allstate alleges that Shaw conspired with many more defendants than his employer. Thus the intra-corporate conspiracy doctrine does not bar Allstate's conspiracy claims against him.

### E.    Payment Under Mistake of Fact

Allstate brings a Michigan common law mistaken payment claim against Defendants. The Michigan Supreme Court has explained this claim:

> " 'The rule is general that money paid under a mistake of material facts may be recovered back, although there was negligence on the part of the person making the payment; but this rule is subject to the qualification that the payment cannot be recalled when the situation of the party receiving the money has been changed in consequence of the payment, and it would be inequitable to allow a recovery.' "

*Johnson Controls, Inc. v. Jay Indus., Inc.*, 459 F.3d 717, 729 n.15 (6th Cir. 2006) (quoting *Gen. Motors Corp. v. Enter. Heat & Power Co.*, 86 N.W.2d 257, 260 (Mich. 1957) (additional quotation marks and citation omitted)). Defendants argue that this claim fails under the "voluntary payment" doctrine and because Defendants relied to their detriment on Allstate's payments.

Under the doctrine of voluntary payment, " '[w]here money has been voluntarily paid with full knowledge of the facts, it cannot be recovered on the ground that the payment was made under a misapprehension of the legal rights and obligations of the person paying.' " *Progressive Mich. Ins. Co. v. United Wis. Life*

*Ins. Co.*, 84 F. Supp. 2d 848, 854 (E.D. Mich. 2000) (quoting *Montgomery Ward & Co. v. Williams*, 47 N.W.2d 607, 612 (Mich. 1951)). "[A] voluntary payment is one made with a full knowledge of all the circumstances upon which it is demanded, and without artifice, fraud, or deception on the part of the payer, or duress of the person, or goods of the person making the payment." *Pingree v. Mut. Gas Co.*, 65 NW 6, 7 (Mich. 1895). Therefore, where the allegedly-voluntary payment was made under a mistake of fact, the doctrine generally does not apply. *Progressive Mich. Ins. Co.*, 84 F. Supp. 2d at 854 (citing *Kern v. City of Flint*, 335 N.W.2d 708 (Mich. Ct. App. 1983)). Here, where Allstate alleges that it paid PIP benefits under a mistake of fact (i.e., that the services and treatments billed were reasonable and necessary), the doctrine of voluntary payment does not apply.

The Michigan Supreme Court has qualified the right to recover for a payment under mistake of fact where " 'the party receiving the money has been changed in consequence of the payment, and it would be inequitable to allow a recovery.' " *Wilson v. Newman*, 617 N.W.2d 318, 321 (Mich. 2000) (quoting *Walker v. Conant*, 31 N.W. 786, 787 (Mich. 1887)). Defendants contend that Allstate's payment of PIP benefits caused a change in the position of Defendants such that it would be unjust to require a refund. Specifically, Defendants claim that from the revenue they received from Allstate, they paid costs, expenses, their employees, etc... Essentially what Defendants are arguing is that, because they

40

spent the money paid by Allstate, Allstate is precluded from recovering the

payments under a mistake of fact claim.  Equity does not bar repayment under

these circumstances and Defendants fail to cite a single case suggesting that the

Michigan courts would bar the claim under the circumstances presented.

### F.    Unjust Enrichment Claim

In its unjust enrichment claim, Allstate seeks to recoup the payments it made

to Defendants.  Under Michigan law, "[t]o establish a claim of unjust enrichment,

the plaintiff must show: 1) 'receipt of a benefit by the defendant from the plaintiff'

and 2) that 'it is inequitable that the defendant retain' the benefit."  *C.T. Charlton*

*& Assoc., Inc. v. Thule*, 541 F. App'x 549, 555 (6th Cir. 2013) (quoting *Dumas v.*

*Auto Club Ins. Ass'n*, 473 N.W.2d 652, 663 (Mich. 1991)).  "When these elements

are met, 'the law operates to imply a contract in order to prevent unjust

enrichment.' " *Id.* (quoting *Barber v. SMH (US), Inc.*, 509 N.W.2d 791, 796 (Mich.

Ct. App. 1993)).

Defendants argue that Allstate's unjust enrichment claim fails because all of

the alleged payments to them by Allstate are subject to or governed by express

insurance contracts between Allstate and its insureds for whom the payments were

made.  (*See* ECF No. 141 at Pg ID 5739, citing *Williams v. Pledged Prop. II, LLC*,

508 F. App'x 465, 469 (6th Cir. 2012) and *Oak Str. Funding, LLC v. Ingram*, 749

F. Supp. 2d 568, 580 (E.D. Mich. 2010) .)  Alternatively, Defendants argue that

41

Allstate fails to plead sufficient facts to support bare and conclusory allegations of unjust enrichment.

Defendants' first argument fails because there is no express contract between *the parties*. Allstate's contract is with its insureds, as alleged in its Amended Complaint. (Am. Compl. ¶ 27.) Defendants' second arguments fails because, like its other claims, Allstate pleads sufficient facts to support its unjust enrichment claim.

### G.    Declaratory Relief

Allstate seeks declaratory relief pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201. Specifically, Allstate asks the Court to declare that: (1) it "has no obligation to pay pending and previously denied No-Fault insurance claims submitted by [Defendants]"; (2) "the charges for MRIs submitted by Horizon Imaging LLC and Clear Imaging LLC are not and were not reasonable and that Allstate has no obligation to pay any claim related to the same"; and (3) Allstate has no obligation to pay those portions of the MRI claims submitted by Horizon Imaging LLC and Clear Imaging LLC that constitute unreasonable charges." (Am. Compl. at 284.) Defendants urge the Court to decline to exercise jurisdiction over Allstate's declaratory judgment claim, arguing that "Allstate does not make a demand for a purely legal ruling" but instead "demands a ruling that is entirely dependent on the resolution of countless factual issues." (ECF No. 141 at Pg ID

42

5742.)  Defendants characterize Allstate's declaratory judgment claim as "an

invitation for gratuitous interference with the orderly and comprehensive

disposition of pending and future state court litigation" which it argues, "should be

avoided."  (*Id.*)  Defendants cite the following cases in support of their argument:

*Guar. Nat'l Ins. Co. v. Cain*, Nos. 94-5904 & 94-5905, 1996 U.S. App. LEXIS

5495, at *4 (6th Cir. Feb. 8, 1996); *Allstate Ins. Co. v. Mercer*, 913 F.2d 273, 277-

79 (6th Cir. 1990); and *Wilton v. Seven Falls Co*., 515 U.S. 277 (1995).

Numerous courts have rejected Defendants' arguments in cases where, as

here, the complaint seeks declaratory relief as well as money damages and other

relief.  *See Pointe Physical Therapy, LLC*, 2014 U.S. Dist. LEXIS 174523, at *11

(citing cases).  As the Sixth Circuit stated in *Adrian Energy Associates v. Michigan

Public Service Commission*, 481 F.3d 414 (6th Cir. 2007):

> When a plaintiff seeks relief in addition to a declaratory judgment,
> such as damages or injunctive relief, both of which a court *must
> address*, then the entire benefit derived from exercising discretion not
> to grant declaratory relief is frustrated, and a stay or dismissal would
> not save any judicial resources. The claims in this case for which
> declaratory relief is requested and those for which injunctive relief is
> requested are so closely intertwined that judicial economy counsels
> against dismissing the claims for declaratory judgment relief while
> adjudicating the claims for injunctive relief.

*Id*. at 422 (emphasis in original).  In fact, the Supreme Court in *Wilton* expressly

advised that it was not deciding whether the discretion to exercise jurisdiction over

a declaratory judgment claim extends to cases in which issues of federal law are

raised, or where there are no parallel state court proceedings. *Wilton*, 515 U.S. at 290.

In any event, even if the Court considered the five factors the Sixth Circuit has identified to guide district courts in exercising their discretion to adjudicate declaratory judgment claims, *see, e.g., Western World Ins. Co. v. Hoey*, 773 F.3d 755, 759 (2014), it would conclude for the reasons stated by the Honorable Paul Borman in a factually similar case that it should resolve Allstate's claim.[5] *Pointe*

---

[5] The relevant factors are:

> (1) Whether the declaratory action would settle the controversy;
> (2) whether the declaratory action would serve a useful purpose in clarifying the legal relations in issue;
> (3) whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for res judicata;"
> (4) whether the use of a declaratory action would increase the friction between our federal and state courts and improperly encroach upon state jurisdiction; [which is determined by asking]
> a. whether the underlying factual issues are important to an informed resolution of the case;
> b. whether the state trial court is in a better position to evaluate those factual issues than is the federal court; and
> c. whether there is a close nexus between underlying factual and legal issues and state law and/or public policy, or whether federal common or statutory law dictates a resolution of the declaratory judgment action; and
> (5) whether there is an alternative remedy which is better or more effective.

*Western World Ins. Co.*, 773 F.3d at 759 (citations omitted).

*Physical Therapy*, 2014 U.S. Dist. LEXIS 174523, at *37-38. Thus the Court declines to dismiss Allstate's declaratory judgment claim based on Defendants' abstention argument.

### H. Collateral Estoppel

Contending that Allstate is seeking to recover all the benefits it has paid Defendants and a declaratory judgment that it need not pay any future requests for reimbursement, Defendants maintain that Allstate is asking the Court to "set aside any and all settlements and state court judgments previously entered on those claims because they are part of the same claims on which it seeks judgment on in this litigation." (ECF No. 141 at Pg ID 5745-46.) Defendants contend that Allstate is collaterally estopped from seeking its requested relief here.

Under Michigan law, collateral estoppel generally prevents a party from relitigating an issue where the following requirements are met: "(1) a question of fact essential to the judgment was actually litigated and determined by a valid and final judgment; (2) the same parties must have had a full and fair opportunity to litigate the issue; and (3) there must be mutuality of estoppel." *McCormick v. Braverman*, 451 F.3d 382, 397 (6th Cir. 2006) (citing *Monat v. State Farm Ins. Co.*, 677 N.W.2d 843, 845-46 (Mich. 2004)) (internal quotation marks and brackets omitted). "Mutuality of estoppel requires that in order for a party to estop an adversary from relitigating an issue that party must have been a party, or in privy

45

to a party, in the previous action. In other words, the estoppel is mutual if the one

taking advantage of the earlier adjudication would have been bound by it, had it

gone against him." *Monat*, 677 N.W.2d at 846 (internal quotation marks, brackets,

and citations omitted). The party asserting collateral estoppel bears the burden of

proving its applicability. *City of Detroit v. Qualls*, 454 N.W.2d 374, 383 (Mich.

1990).

Defendants fail to satisfy their burden. They do not identify previous

litigation that resulted in a final judgment that bars Allstate's claims here. Allstate

argues that even if Defendants are referring to state court proceedings where the

medical facility defendants sued Allstate for benefits under the No-Fault Act, they

do not show that Allstate raised fraud or that it had a "fair and full opportunity" to

litigate its claims of fraud there. In short, Defendants fail to demonstrate that

collateral estoppel applies to bar Allstate's claims.

## I.     Waiver

Defendants argue that Allstate waived its right to challenge the propriety of

the claims it has paid because it failed to seek reasonable proof or investigate the

amount charged during the thirty day window set forth in Michigan Compiled

Laws Section § 500.3142(2).[6] (ECF No. 141 at Pg ID 5749-5750.) Defendants

---

[6] Section 500.3142(2) provides in pertinent part:

(Cont'd . . .)

cite no authority to support their waiver argument. The same argument based on New York's No-Fault statute was rejected by the District Court for the Eastern District of New York in *Allstate Insurance Company v. Halima*, No. 06-CV-1316, 2009 WL 750199, at *4 (Mar. 19, 2009). The *Halima* court reasoned: "The policy of encouraging quick payments would be harmed if an insurer were unable to recover payments made on fraudulent claims merely because they could not detect the fraud within the statutory thirty-day window." *Id*. Several other courts have held that the time limitations for making payments do not preclude an insurer from subsequently pursuing causes of action for payment under mistake of fact, unjust enrichment, fraud, and/or RICO. *See State Farm Auto. Ins. Co. v. CPT Med. Servs., P.C.*, No. 04-CV-5045, 2008 WL 4146190, at **6-7 (E.D.N.Y. Sept. 5, 2008) (citing cases holding that the time limitation imposed in New York's No-Fault laws "was not intended to prevent later actions based on a scheme to defraud" and holding that the insurance company-plaintiff in the case before it

---

> Personal protection insurance benefits are overdue if not paid within 30 days after an insurer receives reasonable proof of the fact and of the amount of loss sustained. If reasonable proof is not supplied as to the entire claim, the amount supported by reasonable proof is overdue if not paid within 30 days after the proof is received by the insurer. Any part of the remainder of the claim that is later supported by reasonable proof is overdue if not paid within 30 days after the proof is received by the insurer.

Mich. Comp. Laws § 500.3142(2).

47

similarly "is not precluded from bringing an action alleging fraud and unjust enrichment merely because it did not discover the defendants' alleged fraud within the thirty day claim period."); *Universal Health Grp.*, 2014 U.S. Dist. LEXIS 151213, at ** 26-27 (rejecting same argument raised in a factually similar case and noting that the "defendants' interpretation of the law would only punish those who were incompetent fraudsters, letting their more intelligent or devious colleagues off the hook"); *see also Adams v. Auto Club Ass'n* 397 N.W.2d 262, 265-66 (Mich. Ct. App. 1986) (finding "nothing in the language of the no-fault act or its legislative purpose that requires a construction abolishing the common-law right of reimbursement for payments made under a mistake of fact").

This Court similarly rejects Defendants' waiver argument.

## J.  Supplemental Jurisdiction

Finally, Defendants argue that the Court should decline to exercise supplemental jurisdiction over Allstate's state law claims because its federal claims should be dismissed.  As the Court is rejecting Defendants' arguments for dismissing Allstate's federal claims, it rejects their argument for dismissing Allstate's state law claims as well.

## IV. Motion to Strike Joinder

The following Defendants filed notices of joinder in the motions to dismiss filed by Chudler and Health Systems (ECF No. 140) and Zack, Katz, and Mann (ECF No. 141):

> •Defendant Yisroel Sigler ("Sigler") (ECF No. 153); and,

> •Defendants Silvio Cozzetto, D.C., Jeff Pierce, D.O., Anthony Sereno, United Wellness Center of Detroit, PLLC, United Wellness Center of Flint, PLLC, United Wellness Center of Lansing, PLLC, and United Wellness Centers Management, LLC (collectively "UWC Defendants") (ECF No. 154).

The motions to dismiss were filed pursuant to Federal Rule of Civil Procedure 12(b)(6). Allstate filed its motion to strike the joinder notices (ECF No. 158) because the UWC Defendants and Sigler already filed answers to the Amended Complaint. (ECF Nos. 138, 139.)

Pursuant to Rule 12, a motion asserting any of the defenses set forth in subsection (b) "must be made before pleading if a responsive pleading is allowed." Fed. R. Civ. P. 12(b). Therefore, as Allstate argues, the attempt by Sigler and the UWC Defendants to seek dismissal under Rule 12(b)(6) is untimely. *See Williams v. State Farm Ins. Co.*, 781 F. Supp. 2d 519, 522 (E.D. Mich. 2011) (citing 5B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1357 (3d ed. 2004) ("[A] post-answer Rule 12(b)(6) motion is untimely . . ..").

Nevertheless, courts generally convert an untimely Rule 12(b)(6) motion to one filed under Rule 12(c).  *See, e.g., Satkowiak v. Bay Cnty. Sheriff's Dep't*, 47 F. App'x 376, 377 n. 1 (6th Cir. 2002); *Scheid v. Fanny Farmer Candy Shops, Inc.*, 859 F.2d 434, 436, n. 1 (6th Cir. 1988); *Williams*, 781 F. Supp. 2d at 522.  A motion is appropriate under Rule 12(c), however, only "[a]fter the pleadings are closed . . .."  Fed. R. Civ. P. 12(c).  The pleadings are not "closed" until every defendant has filed an answer.  *See, e.g., Horen v. Bd. of Educ. of Toledo City Sch. Dist.*, 594 F.Supp.2d 833, 840 (N.D. Ohio 2009) ("If a case has multiple defendants, all defendants must file an answer before a Rule 12(c) motion can be filed.") (citing *Habeeba's Dance of the Arts., Ltd. v. Knoblauch*, No. 2:05-cv-926, 2006 WL 968642, at *2 (S.D. Ohio Apr.10, 2006)); *Nationwide Children's Hosp., Inc. v. D.W. Dickey & Sons, Inc. Emp. Health & Welfare Plan*, No. 2:08-cv-1140, 2009 WL 5247486, at *1 (S.D. Ohio Dec. 31.2009) ("Thus, the pleadings are not closed until all defendants have filed an answer, even when one defendant has filed a motion to dismiss instead of answering."); *see also Kowall v. GMAC Mortg., LLC*, No. 11-15454, 2012 WL 884851, at *1 (E.D. Mich. Mar.15, 2012) (pleadings do not close for purposes of a Rule 12(c) motion until defendants have filed an answer to the complaint); *Nagy v. De Wese*, 705 F. Supp. 2d 456, 460 n. 4 (E.D. Pa. 2010) (collecting cases).

The pleadings in this matter are not closed, as the only defendants that have filed an answer to Allstate's Amended Complaint thus far are Sigler and the UWC Defendants. Moreover, it would be improper to convert the motions, filed under Rule 12(b)(6) by Defendants who have not answered the Amended Complaint, to a Rule 12(c) motion.

For these reasons, it was improper for Sigler and the UWC Defendants to join the pending motions to dismiss and the Court is granting Allstate's request to strike their notices of joinder.

## V. Conclusion

For the reasons stated, the Court holds that Allstate has sufficiently pled the claims in its Amended Complaint against each defendant to survive their Rule 12(b)(6) attack. The Court holds that Sigler's and the UWC Defendants' notices of joinder were untimely filed and thus is striking those notices.

Accordingly,

**IT IS ORDERED**, that the Renewed Motion to Dismiss filed by Defendants Loren C Chudler, D.O. and Health Systems, Inc. (ECF No. 140) is **DENIED**;

**IT IS FURTHER ORDERED**, that the Motion to Dismiss Plaintiffs' Fist Amended Complaint filed by Defendants David M Katz, D.C., Cory J Mann, and Scott P Zack, D.C. (ECF No. 141) is **DENIED**;

**IT IS FURTHER ORDERED**, that the Motion to Dismiss First Amended Complaint filed by Defendant Evan P Shaw (ECF No. 142) is **DENIED**;

**IT IS FURTHER ORDERED**, that the Motion to Dismiss filed by Defendants Vincent L Celentano, Joseph F DeSanto, Greater Michigan Professional Services, LLC, Nicole F Martinez, WCIS Media, LLC, and Ron Waltz (ECF No. 157) is **DENIED**; and

**IT IS FURTHER ORDERED**, that the Motion to dismiss notices of joinder/concurrence filed by Defendants Yisroel Sigler; Silvio Cozzetto, D.C.; Jeff Pierce, D.O.; Anthony Sereno; United Wellness Center of Detroit, PLLC; United Wellness Center of Flint, PLLC; United Wellness Center of Lansing, PLLC; and United Wellness Centers Management, LLC (ECF No. 158) is **GRANTED** and the notices of joinder (ECF Nos. 153, 154) are **STRICKEN**.

s/ Linda V. Parker
LINDA V. PARKER
U.S. DISTRICT JUDGE

Dated: March 26, 2015

I hereby certify that a copy of the foregoing document was mailed to counsel of record and/or pro se parties on this date, March 26, 2015, by electronic and/or U.S. First Class mail.

s/ Richard Loury
Case Manager

52