UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| ALLSTATE INSURANCE COMPANY; ALLSTATE PROPERTY AND CASUALTY INSURANCE COMPANY; ALLSTATE FIRE AND CASUALTY INSURANCE COMPANY; ESURANCE INSURANCE COMPANY; and ESURANCE PROPERTY AND CASUALTY INSURANCE COMPANY, | C.A. No. 19-CV-13721-LVP-EAS |
| Plaintiffs, | |
| v. | |
| INSCRIBED PLLC; INTEGRATIVE NEUROLOGY PLLC; DIAGNOSTIC SOLUTIONS LLC; WOOK KIM, M.D., P.C. d/b/a FARMBROOK INTERVENTIONAL PAIN & EMG; DETROIT INSTITUTE OF PAIN MUSCULOSKELETAL MEDICINE PLLC; MICHIGAN INSTITUTE OF MUSCULOSKELETAL MEDICINE PLLC; ZMC PHARMACY, L.L.C.; INTEGRA LAB MANAGEMENT LLC; GIREESH VELUGUBANTI, M.D.; ARVINDER DHILLON, M.D.; BACHU ABRAHAM, M.D.; and JALAL ZAWAIDEH, R.PH., | |
| Defendants. | |

**PLAINTIFFS' BRIEF IN OPPOSITION TO DEFENDANTS
ZMC PHARMACY, L.L.C. AND JALAL ZAWAIDEH'S
MOTION TO DISMISS**

# **TABLE OF CONTENTS**

Table of Contents ..................................................................................... i

Issues Presented ...................................................................................... ii

Statement of Controlling/Most Appropriate Authorities ......................... iii

Brief in Opposition .................................................................................. 1

   I.    Introduction ................................................................................... 1

   II.   Relevant Background ..................................................................... 3

   III.  Discussion .................................................................................... 6

        A.   Standard of Review .............................................................. 6

        B.   Numerous Courts Have Upheld Nearly Identical Complaints ......... 7

        C.   Allstate Has Properly Alleged Substantive RICO Counts ............. 9

            1.   18 U.S.C. § 1962(c) .......................................................... 9

            2.   18 U.S.C. § 1962(d) ......................................................... 15

        D.   Allstate Has Properly Pleaded in Accordance with Fed. R. Civ. P. 9(b) ........................................................ 17

        E.   *Res Judicata* Does Not Bar Any of Allstate's Counts ................. 23

        F.   Allstate Has Sufficiently Alleged Unjust Enrichment ................... 25

        G.   The Moving Defendants' "Miscellaneous Reasons" Are Each Without Merit ........................................................ 27

   IV.  Conclusion .................................................................................. 30

## ISSUES PRESENTED

1.      Does Allstate's Complaint properly plead all causes of action?

        Allstate answers: Yes

        Defendants answer: No

2.      Does Allstate's Complaint properly assert RICO counts?

        Allstate answers: Yes

        Defendants answer: No

3.      Does *res judicata* bar any of Allstate's counts?

        Allstate answers:  No

        Defendants answer: Yes

4.      Does Allstate's Complaint sufficiently allege unjust enrichment?

        Allstate answers:  Yes

        Defendants answer:  No

5.      Are each of the Moving Defendants' "Miscellaneous Reasons" without merit?

        Allstate answers:  Yes

        Defendants answer:  No

## STATEMENT OF CONTROLLING/MOST APPROPRIATE AUTHORITIES

### CASES

Allen v. Andersen Windows, Inc.
>   2012 U.S. Dist. LEXIS 180320 (S.D. Ohio Dec. 20, 2012)

Allstate Ins. Co. v. Lyons
>   843 F. Supp. 2d 358 (E.D. N.Y. 2012)

Allstate Ins. Co. v. Total Toxicology Labs, LLC
>   2017 U.S. Dist. LEXIS 134517 (E.D. Mich. Aug. 23, 2017)

Allstate Ins. Co. v. Universal Health Group, Inc.
>   13-cv-15108-LVP-EAS, Docket No. 229 (E.D. Mich., March 26, 2015)

Ashcroft v. Iqbal
>   556 U.S. 662 (2009)

Bell Atl. Corp. v. Twombly
>   550 U.S. 544 (2007)

Bridge v. Ocwen Fed. Bank, FSB
>   681 F.3d 355 (6th Cir. 2012)

Cedric Kushner Promotions, Ltd. v. King
>   533 U.S. 158 (2001)

Chrysler Realty Co., LLC v. Design Forum Architects, Inc.
>   544 F. Supp. 2d 609 (E.D. Mich. 2008)

Cooper v. Auto Club Ins. Ass'n
>   481 Mich. 399 (2008)

First Capital Asset Mgmt. v. Satinwood, Inc.
>   385 F.3d 159 (2d Cir. 2004).

Heinrich v. Waiting Angels Adoption Servs.
>   668 F.3d 393 (6th Cir. 2012)

In re McCallum Estate
    153 Mich. App. 328 (1986)

JAC Holding Enters., Inc. v. Atrium Capital Partners, LLC
    997 F. Supp. 2d 710 (E.D. Mich. 2014)

Louisville/Jefferson County Metro Gov't v. Hotels.com, L.P.
    590 F.3d 381 (6th Cir. 2009)

McClain v. Coverdell & Co.
    272 F. Supp. 2d 631 (E.D. Mich. 2003)

Miller v. Currie
    50 F.3d 373 (6th Cir. 1995)

Ouwinga v. Benistar 419 Plan Servs.
    694 F.3d 783 (6th Cir. 2012)

Reves v. Ernst & Young
    507 U.S. 170 (1993)

Rouse v. Daimler Chrysler Corp. v. UAW Non-Contributory Plan
    300 F.3d 711 (6th Cir. 2002)

Sedima, S.P.R.L. v. Imrex Co.
    473 U.S. 479 (1985)

State Farm Mut. Auto. Ins. Co. v. CPT Med. Servs., P.C.
    2008 U.S. Dist. LEXIS 71156 (E.D.N.Y. Sept. 3, 2008)

State Farm Mut. Auto. Ins. Co. v. Physiomatrix, Inc.
    2013 U.S. Dist. LEXIS 18501 (E.D. Mich., Feb. 12, 2013)

State Farm Mut. Auto. Ins. Co. v. Radden
    2017 U.S. Dist. LEXIS 54093 (E.D. Mich., Apr. 10, 2017)

State Farm Mut. Auto. Ins. Co. v. Vital Community Care, P.C.
    2018 U.S. Dist. LEXIS 80361 (E.D. Mich., May 14, 2018)

State Farm Mut. Auto. Ins. Co. v. Warren Chiropractic & Rehab Clinic, P.C.
      2015 U.S. Dist. LEXIS 104332 (E.D. Mich. Aug. 10, 2015)

Toyz, Inc. v. Wireless Toyz, Inc.
      799 F. Supp. 2d 737 (E.D. Mich. 2011)

West Hills Farms, LLC v. ClassicStar Farms, Inc.
      727 F.3d 473 (6th Cir. 2013)

**S**TATUTES

18 U.S.C § 1962(c)

18 U.S.C. § 1962(d)

**R**ULES

Fed. R. Civ. P. 9(b)

Fed. R. Civ. P. 11(b)(2)

Fed. R. Civ. P. 12(b)(6)

Plaintiffs Allstate Insurance Company, Allstate Property and Casualty Insurance Company, Allstate Fire and Casualty Insurance Company, Esurance Insurance Company, and Esurance Property and Casualty Insurance Company (hereinafter, "Allstate" and/or "plaintiffs") hereby submit the within opposition to the motion to dismiss filed by defendants ZMC Pharmacy, L.L.C. ("ZMC Pharmacy") and Jalal Zawaideh ("Zawaideh") (hereinafter collectively referred to as the "Moving Defendants"). *See* Docket No. 38.

## I.   <u>INTRODUCTION</u>

- "Michigan's No-Fault Act has created a system where certain lawyers and doctors prosper from enormous, unwarranted fees. A small number of lawyers and medical providers aggressively solicit accident victims and encourage them to seek unnecessary treatment."

- "Some attorneys work with their clients and certain doctors or chiropractors to maximize the amount of treatment provided, seeking to make injuries appear more significant for third party claims, while increasing the potential PIP benefit recovery."

- "Some medical providers will 'treat' people who were not injured, will over-treat others, and will provide unnecessary treatments . . . ."

- "Michigan's No-Fault Act lacks measures to protect against fraud . . . ."

<u>Duggan, et al. v. McPharlin</u>, 18-cv-12639-GCS-SDD (E.D. Mich. Aug., 23, 2018), Docket No. 1 at ¶¶ 85, 86, 87, and 97. The above quotes are not from Allstate's Complaint, although they could be. Instead, these are the statements of the Moving Defendants' counsel, who agrees with Allstate that the abuse of Michigan's No-Fault system is rampant and must be affirmatively fought. This is exactly what Allstate is

doing via its Complaint, one in a long line of insurance fraud cases that this District has upheld in the past decade.  This Court alone has issued several comprehensive decisions in RICO/fraud cases brought by insurers denying every argument made by the Moving Defendants.  *See, e.g.,* Allstate Ins. Co. v. Universal Health Group, Inc., 13-cv-15108-LVP-EAS, Docket No. 229 (E.D. Mich. March 26, 2015) ("Universal Health Group") and State Farm Mut. Auto. Ins. Co. v. Vital Community Care, P.C., 2018 U.S. Dist. LEXIS 80361 (E.D. Mich. May 14, 2018) ("Vital").

Allstate's well-pleaded Complaint diligently sets forth the details of the defendants' fraudulent scheme with comprehensive detail, including dozens of representative patient-specific examples and exhibits documenting each patient used by the defendants in their scheme.  The Moving Defendants' motion to dismiss ignores wide swaths of Allstate's Complaint and the exhibits thereto and also relies on a highly selective reading of the Complaint that ignores all of its most damning allegations.  Most egregiously, the Moving Defendants premise their entire motion on the false argument that Allstate's Complaint only alleges unreasonable charges by them.  This evidences a failure to read the Complaint.  In fact, Allstate has alleged far more than that, including that the Moving Defendants participated in the illegal solicitation that brought them patients who would otherwise not have treated with them (*see, e.g.,* Docket No. 1 at ¶¶ 322-327, 329) and that they billed for unnecessary medications well outside of the standard of care in furtherance of their *quid pro quo*

arrangement with their co-defendants (*see, e.g.,* id. at ¶¶ 329-335, 342-343, 460-470). Federal courts have condemned the practice of RICO defendants ignoring the entire slate of allegations against them in order to propound dubious dismissal arguments: "The Defendants are characterizing Plaintiff's claim too narrowly by quoting one or two phrases from the Complaint and then concluding that those small portions are Plaintiffs' entire case." McClain v. Coverdell & Co., 272 F. Supp. 2d 631, 638 (E.D. Mich. 2003) (denying defendants' motion to dismiss RICO claims). The Moving Defendants here are guilty of the same transgression as their motion to dismiss relies exclusively on the flawed argument that the factual allegations of the Complaint are merely "conclusory." For all of the reasons stated herein, the Moving Defendants' motion to dismiss must be denied.

## II.  **RELEVANT BACKGROUND**

The Moving Defendants engaged in a comprehensive scheme to defraud Allstate. The full extent of this scheme is detailed in the Complaint and the exhibits thereto, but Allstate briefly summarizes here. Allstate's Complaint sets out in exacting detail over more than 200 pages (plus an additional 500 pages of exhibits) the defendants' comprehensive scheme to defraud Allstate by submitting bills for treatment that was never actually provided, engaging in *quid pro quo* arrangements with personal injury attorneys and other healthcare providers, fabricating patient diagnoses and fraudulently altering records, billing for treatment by unlicensed

individuals (if provided at all), billing for medically unnecessary treatment (if provided at all), submitting fraudulent bills, and charging exorbitant and unreasonable amounts. An integral component of this scheme to defraud Allstate was that the treatment and medications, when actually provided, were part of a fraudulent predetermined treatment protocol. This protocol was applied uniformly to the defendants' patients and consisted of ordering unreasonable and unnecessary diagnostic testing, employing a variety of treatments and procedures that were not medically necessary, and prescribing addictive medications that were not medically necessary. *See* Docket No. 1 at ¶¶ 336-665, and 824. ZMC Pharmacy and Zawaideh developed improper *quid pro quo* arrangements with their defendant co-conspirators whom they were aware employed a predetermined treatment protocol that included prescribing the same medications to nearly every patient, regardless of the actual medical needs of each patient. Id. at ¶¶ 5, 322-327, 460-462, and 824.

The Moving Defendants played a pivotal role in the scheme by submitting bills for dispensing medically unnecessary and excessive medications to patients to induce patients to undergo unnecessary procedures and excessive treatment billed by their co-conspirators. Id. at ¶¶ 6, 127, 331-335, 342, 343, 460-462, and 824. The Moving Defendants also billed for these dangerous medications to give the appearance that patients were injured when they were not. Id. at ¶¶ 342, 462, 824, 897, 928, and 987. ZMC Pharmacy and Zawaideh knowingly dispensed controlled

4

substances without regard for medical necessity or the potential for abuse, which contributed to the ongoing public health crisis in Michigan.  Id. at ¶¶ 460-470 and 824.  Allstate's Complaint also details how ZMC Pharmacy and Zawaideh submitted excessive charges that far exceeded the reasonable and customary amounts for the medications that ZMC Pharmacy allegedly dispensed to patients, in violation of Michigan's No-Fault Act.  Id. at ¶¶ 8, 799-812, and 824.

Although factual disputes are not appropriately raised or addressed in a motion to dismiss, Allstate must call to attention the blatantly false representations made by the Moving Defendants in their motion.  ZMC Pharmacy and Zawaideh understate by tens of thousands of dollars how much Allstate paid to ZMC Pharmacy relating to patients who also treated with the other defendants named in Allstate's Complaint.  Id. at Exhibit 21.  In other words, the Moving Defendants are flatly wrong when they represent to this Court that "at most, only *$82,000 - less than 7% - relates to patients treated by one of the Defendant physicians.*"  *See* Docket No. 38, PageID 979 (emphasis original).  Even a cursory reading of the Complaint and its exhibits confirms that there is far more than 7% overlap between ZMC Pharmacy and the other defendants.  Furthermore, the Moving Defendants misrepresent to this Court that ZMC Pharmacy "fill[ed] a vanishingly small number of prescriptions from the other Defendants" (id., PageID 986) when in fact nearly half of the patients for whom ZMC Pharmacy submitted a bill to Allstate also allegedly treated with at

5

least one of the RICO enterprises for which ZMC Pharmacy and Zawaideh are each named as defendants. *See* Docket No. 1 at Exhibits 1, 2, 4, and 7. Allstate recognizes that this is not the time to refute the incorrect factual arguments made by the Moving Defendants, but these factual misrepresentations are representative of the frivolous nature of the entire motion to dismiss so Allstate is constrained to point out these numerous issues.

## III.   DISCUSSION

### A.   STANDARD OF REVIEW

In considering a motion to dismiss under Fed. R. Civ. P. 12(b)(6), this Court must proceed "on the assumption that all the allegations in the complaint are true." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007); *see also* Louisville/Jefferson County Metro Gov't v. Hotels.com, L.P., 590 F.3d 381, 384 (6th Cir. 2009) ("The Court must . . . construe the complaint in the light most favorable to the Plaintiff . . ."), quoting Gunasekera v. Irwin, 551 F.3d 461, 466 (6th Cir. 2009). "In determining whether a complaint states a claim, a court must accept as true all the factual allegations in the complaint and determine whether the complaint contains 'enough facts to state a claim to relief that is plausible on its face.'" Bridge v. Ocwen Fed. Bank, FSB, 681 F.3d 355, 358 (6th Cir. 2012), quoting Twombly, 550 U.S. at 570. Further, "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations." Twombly, 550 U.S. at 555. Rather, a plaintiff's

obligation is simply to provide "more than labels and conclusions" that go beyond "a formulaic recitation of the elements of a cause of action."  Id.

**B.**   **NUMEROUS COURTS HAVE UPHELD NEARLY IDENTICAL COMPLAINTS**

Courts across the country have upheld complaints and counts nearly identical to those alleged by Allstate in this case.  The Eastern District of Michigan in particular has repeatedly and resoundingly rejected all of the arguments advanced by the Moving Defendants in numerous decisions issued in factually analogous cases (namely, auto insurers suing healthcare providers to recoup No-Fault insurance benefits paid for unnecessary and unlawful treatment).  The chart annexed hereto at Exhibit A details several cases in this District wherein auto insurers prevailed in motions to dismiss against healthcare providers and their co-conspirators who wrongly sought and received payment for unlawful and unnecessary medical treatment, treatment that was billed at excessive amounts, and unnecessary treatment that resulted from close referral relationships, all of which are alleged by Allstate in the instant case specific to the Moving Defendants.  Allstate incorporates the entirety of these decisions into its opposition, but it is enough to highlight the two decisions of this Court to demonstrate the wholly meritless arguments advanced by the Moving Defendants.

In Universal Health Group, this Court issued a 52-page decision denying every argument made by the RICO/fraud defendants, including rejecting arguments

about abstention, Rule 9(b), RICO sufficiency, and unjust enrichment (in sum, every argument made by the Moving Defendants here[1]).  The Court held that Allstate's complaint in that case "contains hundreds of paragraphs describing" the fraud that "provides sufficient notice to each defendant as to that defendant's role in the alleged fraud."  13-cv-15108-LVP-EAS, Docket No. 229, p. 18.  This Court also rejected every dismissal argument proffered by the RICO/fraud defendants in its <u>Vital</u> decision, including extensive discussion and incorporation of the numerous other decisions in this District rejecting the same arguments made here.  *See, e.g.,* 2018 U.S. Dist. LEXIS 80361, *8, *9, *15-*16, *19.  In fact, this single quote from the <u>Vital</u> decision provides a one-sentence summation of why the instant motion to dismiss must be denied: "This Court finds no reason to spend much time analyzing Defendants' arguments for why [the insurer's] pleading is insufficient, as these are challenges other defendants have raised unsuccessfully in several similar cases brought by [the insurer] in much the same way as it does here." <u>Id</u>. at *19.  Notably, the Moving Defendants do not discuss the Court's <u>Vital</u> decision at all.

As this Court's previous decisions and the cases set out in Exhibit A confirm, the counts asserted by Allstate here fit squarely within a long line of cases from this District where auto insurers have been permitted to seek recovery for fraud

---

[1] Counsel for the Moving Defendants was also counsel for certain of the unsuccessful moving defendants in <u>Universal Health Group</u> so the frivolity of the instant arguments in light of actual knowledge of the caselaw is particularly egregious.

perpetrated by healthcare providers and their co-conspirators.  Moreover, "RICO is to be read broadly."  <u>Sedima, S.P.R.L. v. Imrex Co.</u>, 473 U.S. 479, 497 (1985). Congress wrote the RICO statute with "self-consciously expansive language and overall approach."  <u>Id</u>. at 498, citing <u>United States v. Turkette</u>, 452 U.S. 576, 586-587 (1981).  Furthermore, Congress "express[ly] admoni[shed] that RICO is to be 'liberally construed to effectuate its remedial purposes.'"  <u>Id</u>., quoting Pub. L. No. 91-452, § 904(a), 84 Stat. 947.  The remedial purpose of RICO is "nowhere more evident than in the provision of a private action for those injured by racketeering activity."  <u>Id</u>.  Accordingly, the relief sought by Allstate is in keeping with the express purpose of the RICO Act and the multitude of cases where insurers have been allowed to seek recovery thereunder.

### C.   <u>Allstate Has Properly Alleged Substantive RICO Counts</u>

#### 1.   <u>18 U.S.C. § 1962(c)</u>

The Moving Defendants' arguments regarding Allstate's substantive RICO counts (18 U.S.C. § 1962(c)) is so irredeemably incorrect about the type and nature of the enterprises at issue and Allstate's actual allegations that none of their arguments make sense and they must be disregarded in their entirety.  Allstate alleges that both Moving Defendants participated in three RICO enterprises: Inscribed PLLC ("Inscribed") (Count I), Integrative Neurology PLLC ("Integrative Neurology") (Count III), and Wook Kim, M.D., P.C. d/b/a Farmbrook Interventional

Pain & EMG ("Farmbrook") (Count VII).  Allstate amply alleges how ZMC

Pharmacy and its owner Zawaideh participated in these three (3) enterprises, namely,

by developing a *quid pro quo* arrangement with Inscribed, Integrative Neurology,

and Farmbrook whereby these three clinics wrote unnecessary and excessive

prescriptions for dangerously addictive medications and then directed their patients

to ZMC Pharmacy to fill the prescriptions.  ZMC Pharmacy and Zawaideh dispensed

the addictive medications that they knew were not necessary in furtherance of the

scheme in order to entice patients to return to Inscribed, Integrative Neurology, and

Farmbrook, which allowed these three clinics to continue billing Allstate for

treatment that patients otherwise would not have sought out.   The dispensing of

extensive and powerful medications also gave the false appearance of legitimacy of

the treatment billed by Inscribed, Integrative Neurology, and Farmbrook.  As just a

few examples, Allstate alleges in its Complaint:

- The Moving Defendants developed improper *quid pro quo* arrangements with Inscribed, Integrative Neurology, and Farmbrook whom they were aware employed a predetermined treatment protocol that included prescribing the same medications to nearly every patient, regardless of the particular needs of each patient (*see* Docket No. 1 at ¶¶ 5, 322-327, 460-462, and 824);
- The Moving Defendants dispensed medically unnecessary and excessive medications, including controlled substances, to induce patients to return to Inscribed, Integrative Neurology, and Farmbrook for unnecessary procedures and excessive treatment that the patients otherwise would not have sought out (id. at ¶¶ 6, 127, 331-335, 342, 343, 460-462, and 824);
- "ZMC Pharmacy and its owner Zawaideh submitted bills for extensive (and unnecessary) prescription medications that gave the appearance patients suffered serious injury as a result of the alleged motor vehicle accident,

10

thereby allowing Inscribed to continue billing for unlawful and medically unnecessary evaluations, injections, and diagnostic testing, if performed at all, relating to each patient's alleged injury" (id. at ¶ 897);

- "ZMC Pharmacy and its owner Zawaideh submitted bills for extensive (and unnecessary) prescription medications that gave the appearance patients suffered serious injury as a result of the alleged motor vehicle accident, thereby allowing Integrative Neurology to continue billing for unlawful and medically unnecessary evaluations, injections, and diagnostic testing, if performed at all, relating to each patient's alleged injury" (id. at ¶ 928); and

- "ZMC Pharmacy and its owner Zawaideh submitted bills for extensive (and unnecessary) prescription medications that gave the appearance patients suffered serious injury as a result of the alleged motor vehicle accident, thereby allowing Farmbrook to continue billing for unlawful and medically unnecessary evaluations, urine drug screens, EMGs, and injections, if performed at all, relating to each patient's alleged injury" (id. at ¶ 987).

These factual allegations far exceed the RICO conduct required by the Sixth Circuit, which has held that a defendant's "continued endorsement of a fraudulent scheme" is alone sufficient to establish liability.  Ouwinga v. Benistar 419 Plan Servs., 694 F.3d 783, 793 (6th Cir. 2012); see also Davis v. Mutual Life Ins. Co., 6 F.3d 367, 380 (6th Cir. 1993).  Indeed, courts in this District routinely find RICO "conduct" in the schemes to defraud alleged by auto insurers like Allstate here:

> Plaintiff also asserts that the Priority Defendants' participation in the enterprise is important, because it ensures that patients continue treating at Warren – with its predetermined protocol – by providing a convenient method of getting to the facility.  Plaintiff claims the actions by the Defendants – including the provision and use of false disability certificates – were undertaken as part of a large scheme to defraud Plaintiff of insurance payments.  Accepting all of Plaintiff's allegations as true, the Court finds that Plaintiff sufficiently explains how each Defendant made or carried out decisions on behalf of the enterprise, and, thus, how each Defendant had some part in conducting and/or participating in the enterprise's affairs.  Plaintiff has, therefore, satisfied this requirement of the RICO inquiry.

State Farm Mut. Auto. Ins. Co. v. Warren Chiropractic & Rehab Clinic, P.C., 2015 U.S. Dist. LEXIS 104332, *16-*18 (E.D. Mich. Aug. 10, 2015).

The Moving Defendants argue that "Allstate was required to (but failed to) allege facts plausibly showing that ZMC's activities were intertwined with the other defendants to such an extent that ZMC was operating or managing the other defendants." See Docket No. 38, PageID 988. This argument is wrong. "RICO liability is not limited to those with primary responsibility for the enterprise's affairs; only 'some part' in directing the enterprise's affairs is required." Ouwinga, 694 F.3d at 792, quoting Reves v. Ernst & Young, 507 U.S. 170, 179 (1993). See also Vital, 2018 U.S. Dist. LEXIS 80361 at *21. The Sixth Circuit has held that the "operation or management" required under § 1962(c) "can be accomplished either by making decisions on behalf of the enterprise or by knowingly carrying them out." Id., quoting United States v. Fowler, 535 F.3d 408, 418 (6th Cir. 2008) (emphasis added). The Ouwinga court reiterated: "knowingly carrying out the orders of the enterprise satisfies the 'operation or management' test." Id. at 793. This is precisely what Allstate alleges: that ZMC Pharmacy and its owner Zawaideh carried out the orders (i.e., the prescriptions for dangerous medications) of the three enterprises in furtherance of the quid pro quo agreement between ZMC Pharmacy, Zawaideh, Inscribed, Integrative Neurology, and Farmbrook. See Docket No. 1 and specific allegations bulleted above. These medications were critical to the operation of these

three RICO enterprises (and to their ability to continue billing Allstate for unnecessary and unlawful treatment), as the medications were used (1) to entice patients to return to Inscribed, Integrative Neurology, and Farmbrook who otherwise would not have sought treatment and (2) to give the false appearance of more serious injury that allowed Inscribed, Integrative Neurology, and Farmbrook to continue billing Allstate for No-Fault benefits. Id.

The Moving Defendants would have the Court believe that they had no relationship or connection to Inscribed, Integrative Neurology, and Farmbrook and that they are merely a small pharmacy that just filled some prescriptions. *See* Docket No. 38, PageID 986-987. However, these bare assertions run headlong into the facts alleged by Allstate, which the Court must accept as true at this time. Ocwen Fed. Bank, FSB, 681 F.3d 358 (6th Cir. 2012) ("a court must accept as true all the factual allegations in the complaint"). The extent of the relationship between the defendants is a matter of fact, which cannot be decided at this stage in the proceeding. Allstate has sufficiently alleged that the Moving Defendants actively facilitated and were aware of the lack of medical necessity and unlawfulness of the prescriptions received yet filled them anyway. This exact argument made by the Moving Defendants has been rejected by the federal courts: "[d]efendants' argument that the Complaint fails to state a claim because Total Toxicology was bound by the orders of referring physicians to perform all of the urine drug testing at issue, the Court finds that this

13

is not an issue appropriate for resolution at the motion to dismiss stage." <u>Allstate Ins. Co. v. Total Toxicology Labs, LLC</u>, 2017 U.S. Dist. LEXIS 134517, *20 (E.D. Mich. Aug. 23, 2017), citing <u>State Farm Mut. Auto. Ins. Co. v. Kalika</u>, 2006 U.S. Dist. LEXIS 97454, *34 (E.D.N.Y. Mar. 16, 2006).   While Allstate has already satisfied the RICO pleading standards by its well-pleaded Complaint, any question as to the same invokes factual determinations that cannot be decided at this stage of the proceedings.

Zawaideh is named as a defendant with respect to a fourth RICO enterprise: ZMC Pharmacy (Count XIII).[2]  The analysis regarding this RICO count requires even less discussion than the RICO counts involving the Inscribed, Integrative Neurology, and Farmbrook enterprises.  Indeed, Allstate alleges that "Zawaideh is the owner of ZMC Pharmacy and is responsible for all actions taken by ZMC Pharmacy and its representatives." *See* Docket No. 1 at ¶¶ 55, 74, 75, and 1075.  As the owner of ZMC Pharmacy, it cannot be seriously argued that Zawaideh did not operate and manage ZMC Pharmacy.  In a hopelessly mangled understanding of the law, the Moving Defendants try to argue that Zawaideh (as the owner of ZMC Pharmacy) is the same as ZMC Pharmacy.  The Sixth Circuit has clearly held that

---

[2] ZMC Pharmacy is not named as a defendant on the count where it is also the RICO enterprise in accordance with the law.  Allstate does not allege any association-in-fact enterprises in its Complaint, but rather eight (8) distinct RICO enterprises comprised of each of the eight (8) medical facility defendants (each of which is a distinct legal entity organized under Michigan or Florida law).  "RICO requirements are most easily satisfied when the enterprise is a formal legal entity."  <u>First Capital Asset Mgmt. v. Satinwood, Inc.</u>, 385 F.3d 159, 173 (2d Cir. 2004).

"<u>individual defendants are always distinct from corporate enterprises</u> because they are legally distinct entities, even when those individuals own the corporations or act only on their behalf." <u>West Hills Farms, LLC v. ClassicStar Farms, Inc.</u>, 727 F.3d 473, 492 (6th Cir. 2013) (emphasis added). Moreover, where a corporate employee "acting within the scope of his authority . . . conducts the corporation's affairs in a RICO-forbidden way," the "separateness" requirement is satisfied if the corporate owner/employee is a natural person and, as such, is legally distinct from the corporation itself. <u>Cedric Kushner Promotions, Ltd. v. King</u>, 533 U.S. 158, 163 (2001). There is "nothing in [the RICO Act] that requires more 'separateness' than that." <u>Id</u>.

### 2. <u>18 U.S.C. § 1962(d)</u>

The Moving Defendants argue that Allstate's Complaint "does not plausibly allege a violation of § 1962(c) as to ZMC. Therefore, the § 1962(d) allegations must be dismissed." *See* Docket No. 38, PageID 989. As set out in the preceding section, Allstate has fully alleged violations of § 1962(c) related to each of the RICO enterprises for which ZMC Pharmacy and Zawaidah are named defendants. Allstate has also sufficiently alleged that ZMC Pharmacy and Zawaideh agreed with their co-defendants to commit substantive RICO violations relative to each enterprise for which they are named as defendants. "An agreement can be shown if the defendant objectively manifested an agreement to participate directly or indirectly in the affairs

of an enterprise through the commission of two or more predicate acts." Heinrich v. Waiting Angels Adoption Servs., 668 F.3d 393, 411 (6th Cir. 2012), quoting United States v. Sinito, 723 F.2d 1250, 1261 (6th Cir. 1983).

Here, it is amply alleged that an agreement existed between ZMC Pharmacy and Zawaideh and between the Moving Defendants and the Inscribed, Integrative Neurology, and Farmbrook enterprises. As discussed and extensively cited above, Inscribed, Integrative Neurology, and Farmbrook needed ZMC Pharmacy and Zawaidah to dispense dangerously addictive medications to entice patients to return to Inscribed, Integrative Neurology, and Farmbrook and to give the appearance of injury. In turn, ZMC Pharmacy and Zawaidah needed Inscribed, Integrative Neurology, and Farmbrook to write the prescriptions for medications. Allstate's Complaint sufficiently alleges that these RICO enterprises were used in furtherance of the fraudulent mailings made by each other by providing necessary components to one another in furtherance of their *quid pro quo* arrangement.

All of these actions were (1) undertaken intentionally, (2) were only undertaken for the purpose of achieving the defendants' overall fraudulent objective of obtaining money from Allstate, and (3) required the use of the U.S. Mail and/or interstate wires to accomplish that singular objective as Allstate could not have paid a bill until it first received the same via the mail and/or fax. *See* Docket No. 1 at ¶¶ 844-865, and Counts II, IV, VIII, and XIV. This is more than sufficient to satisfy Allstate's pleading burden for its RICO conspiracy counts. Indeed, Allstate "is only

16

required to allege that defendants agreed to commit two predicate acts of mail fraud .

. . .  It need not plead that all defendants were responsible for the actual mailings,

only that they agreed to aid and abet the commission of mail fraud, and it is the

agreement that must be pleaded, not that defendants actually committed the acts."

State Farm Mut. Auto. Ins. Co. v. CPT Med. Servs., P.C., 2008 U.S. Dist. LEXIS

71156, *46 (E.D.N.Y. Sept. 3, 2008).

### D. ALLSTATE HAS PROPERLY PLEADED IN ACCORDANCE WITH FED. R. CIV. P. 9(b)

This Court has extensively discussed Rule 9(b) in the context of a RICO/fraud

case brought by Allstate:

> Rule 9(b) "requires only that the 'circumstances' of the fraud be pled with
> particularity, not the evidence of the case.  While 'circumstances' may consist
> of evidence, the rule does not mandate the presentation of facts and evidence
> in a complaint." *Michaels Bldg. Co. v. Ameritrust Co., N.A.*, 848 F.2d 674,
> 680 n.9 (6th Cir. 1988).  Moreover, "[a] party that causes a fraudulent bill to
> be submitted to an insurer may be as liable for fraud as the person whose name
> was on the fraudulent submission." *Universal Health Grp.*, 2014 U.S. Dist.
> LEXIS 151213, at *8 (citing *Allstate Ins. Co. v. Etienne*, No. 09-CV-3582,
> 2010 WL 433833, at *10 (E.D.N.Y. Oct. 6, 2010) and *Fremont Reorganizing
> Corp. v. Duke*, 811 F. Supp. 2d 1323, 1337 (E.D. Mich. 2011)).  Further, a
> plaintiff does not have to allege facts indicating that each defendant personally
> used the postal system to establish each defendants' liability. *Aetna Cas. Sur.
> Co. v. P&B Autobody*, 43 F.3d 1546, 1560 (1st Cir. 1994) (quoting *United
> States v. Maze*, 414 U.S. 395, 399 (1974) (to be liable for mail fraud, "[t]he
> plaintiff does not need to prove that each defendant personally used the mails
> but only that the defendant acted 'with knowledge that the use of the mails
> will follow in the ordinary course of business, or [acted in circumstances]
> where such use can be reasonably foreseen.'")).  Accordingly, the Court
> concludes that Allstate has adequately pled facts to establish that Defendants
> engaged in mail fraud and common law fraud to survive Defendants' motions
> to dismiss.

Universal Health Group, pp. 19-20.  Moreover, "a court must factor in the policy of simplicity of pleading which the drafters of the Federal Rules codified in Rule 8 . . . . [w]hen read against the backdrop of Rule 8, it is clear that the purpose of Rule 9 is not to reintroduce formalities to pleading . . . ."  JAC Holding Enters., Inc. v. Atrium Capital Partners, LLC, 997 F. Supp. 2d 710, 726 (E.D. Mich. 2014) (internal quotations omitted).

To the extent the Moving Defendants acknowledge the allegations actually made by Allstate's Complaint, they attempt to disregard them by labeling them as "conclusory."  The Moving Defendants lack an understanding of what constitutes a "conclusory" allegation, as they apply this label to what are clearly factual allegations.  For example, Allstate's allegations that ZMC Pharmacy and Zawaidah dispensed medications that they knew were unnecessary in furtherance of their *quid pro quo* agreement with Inscribed, Integrative Neurology, and Farmbrook (*see* Docket No. 1 at ¶¶ 322-327, 342, 460-462, 824, 897, 928, and 987) are entirely factual in nature.  In Ashcroft v. Iqbal, 556 U.S. 662 (2009) (Iqbal), the Supreme Court itemized those allegations in Iqbal's complaint that were "conclusory" and those that were "factual."  The results are telling.  The Supreme Court deemed the following assertions to be factual:

- "the [FBI], under the direction of Defendant MUELLER, arrested and detained thousands of Arab Muslim men . . . as part of its investigation of the events of September 11"

- "[t]he policy of holding post-September-11[th] detainees in highly restrictive conditions of confinement until they were 'cleared' by the FBI was approved by Defendants ASHCROFT and MUELLER in discussions in the weeks after September 11, 2011"

556 U.S. at 681 (capitalization and ellipsis original).   The allegations that the Supreme Court deemed "conclusory" were because they "amount to nothing more than a 'formulaic recitation of the elements' of" Iqbal's cause of action.  Id.

With this discrete example for use as a comparison, it is clear that Allstate's allegations against the Moving Defendants fall on the "factual allegation" end of the spectrum.  Indeed, it is not an element of a single one of Allstate's causes of action (RICO, common law fraud, unjust enrichment, payment under mistake of fact) that any of the defendants agree to fill prescriptions for medications that are known to be unnecessary as part of a *quid pro quo* agreement.  Instead, these are the facts that demonstrate the particular vehicle by which the Moving Defendants committed RICO violations and common law fraud.  Allstate did not merely list *pro forma* the elements of a substantive RICO violation (enterprise, participation, pattern of racketeering activity), but rather alleged facts showing that Inscribed, Integrative Neurology, Farmbrook, and ZMC Pharmacy are legal entities organized under Michigan law (i.e., enterprises), that in exchange for prescriptions ZMC Pharmacy and Zawaidah agreed to dispense dangerously addictive medications to entice patients to return to Inscribed, Integrative Neurology, and Farmbrook for further unnecessary treatment (i.e., the Moving Defendants participated in the enterprises),

19

and that mailing bills for medications in derogation of established standards of care and applicable law to insurers was an ordinary part of the RICO enterprises' businesses (i.e., a pattern of racketeering activity).  These allegations are precisely the type of facts that have been repeatedly held to satisfy Rule 9(b) in this District:

> In complex civil RICO actions involving multiple defendants, Rule 9(b) does not require that the temporal or geographic particulars of each mailing be made in furtherance of the fraudulent scheme be stated with particularity, but only that the plaintiff delineate, with adequate particularity in the body of the complaint, the specific circumstances constituting the overall fraudulent scheme.

Total Toxicology, 2017 U.S. Dist. LEXIS 134517, *16-*17, quoting State Farm Mut. Auto. Ins. Co. v. Physiomatrix, Inc., 2013 U.S. Dist. LEXIS 18501, *5 (E.D. Mich. Feb. 12, 2013).

Allstate does not merely allege that ZMC Pharmacy and Zawaidah participated in a RICO enterprise.  Instead, Allstate cites concrete facts and examples of their conduct related to each enterprise-clinic.  For example, the allegation that "ZMC Pharmacy and its owner Zawaideh submitted bills for extensive (and unnecessary) prescription medications that gave the appearance patients suffered serious injury as a result of the alleged motor vehicle accident, thereby allowing Farmbrook to continue billing for unlawful and medically unnecessary evaluations, urine drug screens, EMGs, and injections, if performed at all, relating to each patient's alleged injury" (*see* Docket No. 1 at ¶ 987) is not a conclusory allegation under the standard articulated by the Supreme Court in Iqbal.  As a pleading matter,

20

there is little difference between this allegation concerning the Moving Defendants and the certified factual allegation in Iqbal that, for example, "detainees [had to be] cleared [by] Ashcroft and Mueller."  In particular, neither allegation is explicitly an element of a cause of action, which was cautioned against by the Iqbal court.

Not surprisingly, ZMC Pharmacy and Zawaidah contest the factual allegations asserted by Allstate, but that is not an appropriate argument on a motion to dismiss.  Indeed, the Moving Defendants' proposed standard of review on motion to dismiss eviscerates the holdings of Twombly and Iqbal, both of which confirmed the long-established rule that "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."  Iqbal, 556 U.S. at 679.  Neither Twombly nor Iqbal permits or endorses transforming the pleading stage into summary judgment or trial.  To the contrary, Sixth Circuit law is clear that at the motion to dismiss stage, "[i]t is not the function of the court to weigh evidence or evaluate the credibility of witnesses."  Miller v. Currie, 50 F.3d 373, 377 (6th Cir. 1995).  Indeed, "a motion to dismiss rests upon the pleadings rather than the evidence . . . ."  Toyz, Inc. v. Wireless Toyz, Inc., 799 F. Supp. 2d 737, 742 (E.D. Mich. 2011) (emphasis added).

Allstate has more than met its Fed. R. Civ. P. 9(b) burden with respect to its RICO and common law fraud counts.  Indeed, Rule 9(b) "requires only that the 'circumstances' of the fraud be pled with particularity, not the evidence of the

case. While 'circumstances' may consist of evidence, the rule does not mandate the presentation of facts and evidence in a complaint." Michaels Bldg., 848 F.2d at 680 n.9 (6th Cir. 1988) (emphasis added). The main purpose behind Rule 9(b) is to provide the defendant with notice of the plaintiff's claim so that the defendant may prepare an informed responsive pleading." Allen v. Andersen Windows, Inc., 2012 U.S. Dist. LEXIS 180320, *10-*11 (S.D. Ohio Dec. 20, 2012). *See also* Michaels Bldg., 848 F.2d at 679. The defendants fundamentally misinterpret and misconstrue the meaning of Fed. R. Civ. P. 9(b) in their motion. "Rule 9(b) does not require omniscience; rather the Rule requires that the circumstances of the fraud be pled with enough specificity to put defendants on notice as to the nature of the claim. . . . Especially in a case in which there has been no discovery, courts have been reluctant to dismiss the action where the facts underlying the claims are within the defendant's control." Michaels Bldg., 848 F.2d at 680.[3]

---

[3] *See also* Allstate Ins. Co. v. Lyons, 843 F. Supp. 2d 358, 372-373 (E.D.N.Y. 2012) ("Allstate has conformed to these requirements [of Rule 9(b)], explaining in detail the contours of the fraudulent scheme it alleges. It provides several representative examples of the thousands of claims at issue in this case. . . . Additionally, Allstate attaches to its Complaint a series of charts that include each of the charges submitted by the defendants that it believes were fraudulent. . . . The charts detail the entity that submitted each claim, as well as the corresponding claim number, the year Allstate paid the claim, and the amount paid by Allstate. Such information clearly directs defendants to the specific misrepresentations Allstate is alleging. Under the circumstances, the specificity requirement of 9(b) requires no more regarding the who, what, where, when, how, and why of the alleged fraud in this case") (internal citations omitted) and Vital, 2018 U.S. Dist. LEXIS 80361 at *20-*21 ("Like the pleadings State Farm filed in these other cases, its Complaint in the present matter (aided by the charts attached thereto) describes in detail, a complex, multi-layered scheme by the fifteen defendants to devise, facilitate, and/or participate in a plan to defraud State Farm of monies through the submission of fraudulent bills. The Complaint places each defendant on notice of their role in the alleged scheme, including the specific misrepresentations they are alleged to have made. The Complaint clearly alleges how each defendant's role is integral to the operation of the fraudulent payment submission scheme as a whole.").

### E. *RES JUDICATA* DOES NOT BAR ANY OF ALLSTATE'S COUNTS

The Moving Defendants argue that "Allstate and ZMC entered into settlement agreements (with attendant entry of judgment / dismissal) regarding patients comprising at least $1,094,874.45 of the 'damages' identified by Allstate. (Ex. 1)." *See* Docket No. 38, PageID 994. As an initial matter, this argument must be denied by this Court because the Moving Defendants not only failed to attach a single purported settlement agreement to their motion, they have also failed to identify the parties involved in each alleged settlement agreement for a single one of the claims they argue are barred based on *res judicata*, thereby prohibiting this Court from performing any analysis of their *res judicata* argument. *See* Warren Chiropractic, 2015 U.S. Dist. LEXIS 104332, *41 (rejecting defendants' arguments because "the Court cannot perform a proper collateral estoppel analysis, e.g., determining the actual issue(s) decided in those cases, the manner in which they were decided (orally or written), whether judgment was entered, the parties to the matter, etc."); State Farm Mut. Auto. Ins. Co. v. Radden, 2017 U.S. Dist. LEXIS 54093, *5 (E.D. Mich. Apr. 10, 2017) ("Defendants also argue that certain, unidentified claims of the 267 at issue in the complaint have been adjudicated in state court and that the judgments in those cases are *res judicata* in the present action. However, Defendants have failed to identify even one case they contend has *res judicata* effect here."). Even assuming *arguendo* that the Moving Defendants are referring to unidentified state

court actions whereby ZMC Pharmacy sued Allstate for No-Fault benefits, *res judicata* cannot possibly apply here as not a single one of these state court cases involved any defendant except ZMC Pharmacy (including no cases where ZMC Pharmacy's owner Zawaidah or the other co-conspirators named as defendants in Allstate's RICO Complaint were also named parties) nor did a single one of these state court cases involve counts for RICO, fraud, or unjust enrichment, the causes of action in Allstate's Complaint.  There is simply no identity of parties or causes of action between this RICO case and state court cases brought by ZMC Pharmacy seeking No-Fault benefits.

The Moving Defendants incorrectly equate No-Fault actions with the RICO/fraud action that is Allstate's Complaint.  Here, Allstate alleges that the Moving Defendants committed fraud and engaged in a complex scheme to defraud with their co-defendants to illegally obtain payments from Allstate.  "A fraud action is conceptually distinct from a no-fault action because: (1) a fraud action requires a[] [plaintiff] to prove several elements that are different from those required in a no-fault action; (2) a fraud action accrues at a different time than a no-fault action; and (3) a fraud action permits a[] [plaintiff] to recover a wide range of damages that are not available in a no-fault action." Cooper v. Auto Club Ins. Ass'n, 481 Mich. 399, 407 (2008).  "A fraud claim is clearly distinct from a no-fault claim." Id. at 408.

24

Even the Moving Defendants' own counsel agrees that the Michigan No-Fault Act does not contemplate a fraud action like that alleged by Allstate: "Michigan's No-Fault Act lacks measures to protect against fraud . . . ." <u>Duggan</u>, 18-cv-12639-GCS-SDD, Docket No. 1 at ¶ 97.  Allstate's causes of action against the Moving Defendants and their co-conspirators are distinct from any alleged state court actions that the Moving Defendants failed to even identify in their motion to dismiss.  As such, *res judicata* is no bar to Allstate's Complaint.

### F.   <u>Allstate Has Sufficiently Alleged Unjust Enrichment</u>

The Moving Defendants challenge Allstate's unjust enrichment count by arguing that unjust enrichment is not available where there is an express contract between Allstate and the Moving Defendants.  Fatally, however, the Moving Defendants failed to identify a single one of the settlement agreements that they claim constitute such contracts.[4]  Even assuming the Moving Defendants are referring to purported settlement agreements arising from No-Fault cases brought by ZMC Pharmacy against Allstate (which Allstate disputes act as any type of bar to its unjust enrichment count), their argument still fails because there is not even an allegation by the Moving Defendants that Allstate's RICO and fraud counts here

---

[4] The Moving Defendants also make a bald allegation about the extent of Allstate's damages here that relate to alleged previous settlement agreements.  As discussed *supra* at page 5, this allegation is flatly wrong and contradicted by Allstate's allegations, which must be accepted as true at this stage.  The Moving Defendants' willingness to lie to this Court and to willfully ignore Allstate's allegations falls well below the standard expected of litigants and their counsel in federal court and should be sanctioned by this Court.

were at issue in the cases leading to any of the purported settlement agreements.  *See* Chrysler Realty Co., LLC v. Design Forum Architects, Inc., 544 F. Supp. 2d 609, 617 (E.D. Mich. 2008) ("[g]enerally, an implied contract may not be found if there is an express contract between the same parties on the same subject matter" [emphasis added]), quoting Morris Pumps v. Centerline Piping, Inc., 273 Mich. App. 187, 194 (2006).  There has never been any contract between Allstate and either of the Moving Defendants on the subject of their fraud, thereby fatally foreclosing the Moving Defendants' unjust enrichment argument.  "A fraud claim is clearly distinct from a no-fault claim. . . .  [U]nlike an action for no-fault benefits, which arises when the insurer fails to pay benefits, an action for fraud arises when the fraud is perpetrated."  Cooper, 481 Mich. at 408-409.

The issue of whether something is "unjust" is a question of fact that is not appropriate for determination at this stage in the proceeding.  The Moving Defendants argue that because ZMC Pharmacy filled the prescriptions written by their co-conspirators, there is "no valid reason to assert that it was inequitable for ZMC to then receive payment."  *See* Docket No. 38, PageID 999.  This argument is absurd.  Allstate has filed an entire RICO/fraud Complaint asserting why it is inequitable for ZMC Pharmacy to retain any payments Allstate was fraudulently induced to make, including hundreds of paragraphs, several exemplar claims, and extensive exhibits detailing how and why the Moving Defendants' submission of

bills seeking payment for dispensing medications based on knowingly bogus prescriptions from their co-conspirators was not lawful or necessary. Allstate has also expressly alleged that it would not have made the payments at issue in its RICO/fraud complaint had the true nature of the Moving Defendants' conduct been known to it. *See* Docket No. 1 at ¶¶ 10, 327, 836-865, 898, 929, 988, 1077, 1128, 1135, 1140, and 1145.

Unjust enrichment requires a plaintiff to prove two things: (1) receipt of a benefit by the defendant from the plaintiff and (2) that it would be inequitable for the defendant to retain the benefit. In re McCallum Estate, 153 Mich. App. 328, 335 (1986). Allstate has itemized by date, payor, payee, patient claim number, check number, and amount exactly those payments it tendered to ZMC Pharmacy in reliance on the fraudulent scheme alleged by the Complaint. *See* Docket No. 1 at Exhibit 21. Thus, Allstate has clearly satisfied the requirements of an unjust enrichment count as to ZMC Pharmacy. In any event, whether something is unjust is a question of fact, thus it is not an appropriate argument in a motion to dismiss.

### G. THE MOVING DEFENDANTS' "MISCELLANEOUS REASONS" ARE EACH WITHOUT MERIT

The Moving Defendants cite to "Other Miscellaneous Reasons" as to why this Court should dismiss Allstate's Complaint even while admitting that "Courts in this district (including this Court) have ruled in favor of Allstate (and other insurers) with respect to the arguments in this section. ZMC raises the arguments to preserve the

issues and because they represent valid reasons for dismissal of the claims against ZMC." *See* Docket No. 38, PageID 1000.  As an initial matter, this section of the Moving Defendants' motion to dismiss is literally the definition of a frivolous pleading under Fed. R. Civ. P. 11(b)(2) because these arguments are neither "warranted by existing law [n]or by a nonfrivolous argument for extending, modifying, or reversing existing law . . . ."  As the Moving Defendants have already admitted, each of their arguments are without merit and each ignores well-settled jurisprudence.  However, Allstate will briefly refute each argument yet again.

The Moving Defendants argue that Allstate's RICO counts should be dismissed pursuant to Jackson v. Sedgwick Claims Mgmt. Servs., 731 F.3d 556, 564 (6th Cir. 2013), which held that the RICO Act requires a plaintiff to allege injury to its "business or property."  This District has repeatedly ruled that Jackson does not apply to recovery actions brought by insurers based on the fraudulent conduct of medical providers who sought and obtained benefits under Michigan's No-Fault Act. *See, e.g.,* Vital at *16-*18 and Physiomatrix, 2014 U.S. Dist. LEXIS 17410, *7 ("[the auto insurer's] injuries arise from the payment of allegedly fraudulent claims submitted by the Clinics.  Such an injury is clearly not 'personal' and is an injury to [the insurer's] 'business or property.'").  The Moving Defendants' attempt to (mis)characterize Allstate's Complaint as seeking damages for personal injuries has no logical or legal support, and therefore Jackson has no application in this matter.

28

The Moving Defendants next argue that this Court should decline jurisdiction pursuant to the abstention doctrine set forth in <u>Burford v. Sun Oil Co.</u>, 319 U.S. 315 (1943) (<u>Burford</u>).  "<u>Burford</u> abstention is used to avoid conflict with a state's administration of its own affairs."  <u>Rouse v. DaimlerChrysler Corp. v. UAW Non-Contributory Plan</u>, 300 F.3d 711, 716 (6th Cir. 2002).  As the Court in <u>Warren Chiropractic</u> held when presented with an identical argument, "Plaintiff does not challenge the no-fault scheme itself, or any state decision – administrative or otherwise – based on those statutory provisions.  Instead, Plaintiff claims that Defendants acted fraudulently – conduct the no-fault scheme also seeks to prevent." 2015 U.S. Dist. LEXIS 104332, *45.  *See also* <u>Vital</u> at *10-*11 ("the Court finds that this is not an exceptional case warranting <u>Burford</u> abstention").

The Moving Defendants' last "miscellaneous reason" for dismissing Allstate's Complaint relies upon the argument that Allstate's RICO counts are reverse preempted under the McCarran-Ferguson Act, 15 U.S.C. § 1011, *et seq*.  This exact reverse preemption argument has been repeatedly rejected by courts in the Eastern District of Michigan (see Exhibit A) in factually similar cases where an auto insurer sued defendants for fraudulently submitting No-Fault claims.  "RICO complements and augments, rather than impairs, Michigan's regulatory scheme. [The insurer's] RICO claims are not reverse preempted by the McCarran-Ferguson Act."  *See* <u>Vital</u> at *15-*16 (denying identical argument and compiling numerous

29

decisions that "consider[ed] the question in cases factually indistinguishable from the present matter [and] have concluded that the application of RICO would not impair, invalidate, or supersede the state's insurance code") and <u>Physiomatrix</u>, 2013 U.S. Dist. LEXIS 18501, *12.

## IV.   <u>CONCLUSION</u>

The Moving Defendants may disagree with the legion of case law supporting that Allstate is entitled to recovery for their fraudulent acts alleged in the Complaint, but they are bound to abide by established law.  Allstate respectfully requests that the Court deny the Moving Defendants' meritless motion to dismiss in its entirety.

Respectfully submitted,

SMITH & BRINK

*/s/ Jacquelyn A. McEttrick*
_____
Richard D. King, Jr.
rking@smithbrink.com
Nathan A. Tilden (P76969)
ntilden@smithbrink.com
Jacquelyn A. McEttrick
jmcettrick@smithbrink.com
John D. Tertan
jtertan@smithbrink.com
350 Granite Street, Suite 2303
Braintree, MA  02184
617-770-2214 (phone)

38777 Six Mile Road, Suite 314
Livonia, MI  48152

*Attorneys for Plaintiffs*

Dated: March 19, 2020

## <u>CERTIFICATE OF SERVICE</u>

I, Jacquelyn A. McEttrick, counsel for Plaintiffs, hereby certify that on March

19, 2020, I electronically filed the foregoing papers with the Clerk of the Court using

the ECF system, which will send notification of such filing to all counsel of record.

SMITH & BRINK

*/s/ Jacquelyn A. McEttrick*
_____
Jacquelyn A. McEttrick
jmcettrick@smithbrink.com
350 Granite St., Suite 2303
Braintree, MA 02184
(617) 770-2214

38777 Six Mile Road, Suite 314
Livonia, MI 48152
(734) 521-9000