UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ALLSTATE INSURANCE COMPANY;
ALLSTATE PROPERTY AND
CASUALTY INSURANCE COMPANY;
ALLSTATE FIRE AND CASUALTY                  No: 19-cv-13721
INSURANCE COMPANY; ESURANCE                 Hon. Linda V. Parker
INSURANCE COMPANY; and
ESURANCE PROPERTY AND
CASUALTY INSURANCE COMPANY,

              Plaintiffs,

vs.

INSCRIBED PLLC; INTEGRATIVE
NEUROLOGY PLLC; DIAGNOSTIC
SOLUTIONS LLC; WOOK KIM, M.D.,
P.C. d/b/a FARMBROOK
INTERVENTIONAL PAIN & EMG;
DETROIT INSTITUTE OF PAIN
MUSCULOSKELETAL MEDICINE
PLLC; MICHIGAN INSTITUTE OF
MUSCULOSKELETAL MEDICINE
PLLC; ZMC PHARMACY, L.L.C.;
INTEGRA LAB MANAGEMENT
LLC; GIREESH VELUGUBANTI,
M.D.; ARVINDER DHILLON, M.D.;
BACHU ABRAHAM, M.D.; AND
JALAL ZAWAIDEH, R.PH.,

              Defendants.

_____/

## REPLY BRIEF IN SUPPORT OF ZMC PHARMACY, L.L.C.
## AND JALAL ZAWAIDEH'S MOTION TO DISMISS

The Response brief filed by Plaintiffs (collectively, "Allstate") makes it abundantly clear that the claims against Defendants ZMC Pharmacy, L.L.C. and Jalal Zawaideh (together, "ZMC") should be dismissed.

**Allstate's *Ad Hominem* Arguments Regarding ZMC'S Attorneys.** Allstate opens its brief by trying to use against ZMC arguments that ZMC's attorneys made on behalf of Detroit Mayor Mike Duggan and residents of Detroit in a lawsuit to obtain a declaration that the no-fault law then in effect violated due process and equal protection guarantees. *See* Response at 1 (citing *Duggan, et al. v. McPharlin*, 18-cv-12639-GCS-SDD (E.D. Mich. Aug. 23, 2018)). It is true, as alleged in the *Duggan* Complaint that a key failure of Michigan's insurance scheme was the over-treatment and unnecessary treatment which occurred when "[a] small number of lawyers and medical providers aggressively solicit[ed] accident victims and encourage[d] them to seek unnecessary treatment." Response at 1 (citing *Duggan*).[1] But, the suit against ZMC is an example of the other side of the equation. If this case must proceed to discovery, it will be clear that ZMC did not abuse the no-fault law, and Allstate has zero evidence against our client. Allstate apparently hopes it can survive a Motion

---

[1] Allstate's own responsibility for many of the problems with the prior no-fault laws – precipitated by its adoption of McKinsey & Company's profit-maximizing, customer-adverse strategy of "delay, deny and defend" – has been well documented. *See* Jay M. Feinman, *Delay Deny Defend*, Delden Press (2000); https://www.huffpost.com/entry/insurance-claim-delays-industry-profits-allstate-mckinsey-company_n_1139102 (last accessed Apr. 2, 2020).

to Dismiss with a standard set of conclusory allegations, thus forcing ZMC to incur significant defense costs or to capitulate, setting an example for other pharmacies who may be considering filling prescriptions for auto accident victims. Allstate's shameful attempt to steamroll ZMC with baseless conclusory allegations should not be condoned by this Court.

**Lack of Non-Conclusory Factual Allegations.** Allstate did not – and could not – take advantage of the opportunity to identify factual non-conclusory allegations which could support the claims against ZMC. Of course, Allstate must allege *facts* which could plausibly support a finding that ZMC participated "in the operation or management" of the purported RICO enterprises and entered into an agreement covering same. But, Allstate merely pleads "threadbare recitals of the elements," supported, if at all, by "conclusory statements." *See*, *e.g.*, *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1940, 173 L. Ed. 2d 868 (2009).[2] In *Iqbal*, the Supreme Court set aside as conclusory, allegations that former Attorney General Ashcroft and FBI Director Mueller not only "knew of, condoned, and willfully and maliciously agreed" to subject the plaintiff to a detention policy "solely on account of [his] religion, race, and/or national origin," but that Ashcroft was the policy's "principal architect" and Mueller "instrumental" in its execution. *Id.* at 680-81.

---

[2] For example, Allstate repeatedly recites the RICO element that a defendant must have participated in the "control and operation" of the enterprise, and then follows that with the conclusory statement that ZMC did so.

These allegations were conclusory because they started with an element of the cause of action (for instance, knowledge) and then worked backwards to fill in conclusory facts.

Allstate identifies specific allegations as purportedly supporting the causes of action: "¶¶ 322-327, 342, 460-462, 824, 897, 928, and 987." Response at 18. However, whatever Allstate may have alleged in prior cases, the only non-conclusory factual allegation relating to ZMC is the non-justiciable (and false) assertion that it charged "excessive" fees. Whether similar allegations were made in other cases that survived early dismissal (none of which has gone to Summary Judgment or trial), it is beyond cavil that the amount of fees for medication cannot give rise to liability. Paragraphs 322-27 are the only allegations made against ZMC with respect to identified patients. The allegations state the patient was treated by Dr. Dhillon and that Allstate is not required to pay ZMC for filling a prescription. Those two statements do not support liability. Similarly, paragraph 342 merely alleges the physician defendants had a (improper) protocol and ZMC filled prescriptions. Accepting these allegations as true could not give rise to RICO liability *for ZMC*.

Paragraphs 460-462 assert that "[t]he defendants then arranged to have these unnecessary prescriptions filled by defendant ZMC Pharmacy as part of their *quid pro quo* agreements." This is essentially the same as ¶ 342, but now including the

only reference in the Complaint to ZMC's supposed *quid pro quo*. Paragraphs 897, 928 and 987 repeat the assertion that ZMC "submitted bills for extensive (and unnecessary) prescription medications … allowing [X enterprise] to continue billing for unlawful and medically unnecessary evaluations, injections, and diagnostic testing, if performed at all, relating to each patient's alleged injury." But, again, even if those claims were accepted as true, the only thing it would demonstrate is that ZMC filled prescriptions as prescribed. There are no factual allegations explaining the supposed *quid pro quo* – what did ZMC supposedly agree to do? When? What did ZMC get? And, crucially, there are no factual allegations to support the (false) assertion that ZMC somehow had knowledge that treatment was unnecessary or that it filled prescriptions *because* that would somehow enable physicians to be able to continue to treat the patients. Without specifics, these allegations are no less conclusory than those made when Iqbal attempted to ascribe knowledge to Ashcroft and Mueller. ZMC is left without a basis to understand what Allstate claims makes ZMC different than any other pharmacy. [3]

Allstate tries to sidestep the issue by repeatedly arguing the Court need not look too deeply into its allegations because other Allstate and State Farm complaints have survived Motions to Dismiss. As discussed in ZMC's Motion, there are crucial

---

[3] The only allegation in paragraph 824 relating to ZMC is the non-actionable claim that ZMC "submitted charges to Allstate at amounts that were excessive and unreasonable."

differences between the allegations in the other cases and those *against ZMC*. In those cases, for example, the *quid pro quo* was detailed as to the moving defendants, the referral networks were shown, hidden ownership in labs was plausibly alleged, unnecessary testing was alleged to have been conducted by the moving defendants, improper billing codes were alleged to have been used by the moving defendants or procedures were alleged to have been double-billed by the moving defendants. The defendants knew what facts were being used to demonstrate liability. Here, in contrast, there are no similar allegations *against ZMC*. The *only* evidence alleged and actually supported by factual allegations is that ZMC filled prescriptions. Allstate's business decision to sue ZMC should not be countenanced.

**Res Judicata.** Allstate makes three misplaced arguments regarding *res judicata.* First, Allstate argues that the Court does not have sufficient information to make a determination. As stated in its opening brief, ZMC did not attach the Settlement Agreements as exhibits (but provided them to counsel for Allstate), because there is no legitimate dispute as to their existence – Plaintiffs signed them. However, the Settlement Agreements (and dismissals or docket entries, where entered) are submitted, under seal, with this brief.[4]

---

[4] Exhibit 1 to this brief is a spreadsheet of the settled claims with a column identifying the tab with the settlement agreements and dismissals for the identified patients.

Second, Allstate argues *res judicata* does not apply because there is no identity of the parties "except ZMC Pharmacy." This is a strange argument, because ZMC is asking for dismissal. And, the owner of a company, here Mr. Zawaideh, shares an identity with the company for *res judicata* purposes. *See*, *e.g.*, *Viele v. DCMA,* 167 Mich. App 571, 580 (1989) (discussing privity for identity purposes).

Third, Allstate argues *res judicata* does not apply because the state court cases did not "involve counts for RICO, fraud, or unjust enrichment." Allstate is confusing collateral estoppel with *res judicata*. The latter bars the claims against ZMC because Allstate *could have* raised fraud, unjust enrichment, and RICO in state court either defensively or affirmatively. *See*, *e.g.*, *Tafflin v. Levitt*, 493 U.S. 455, 110 S. Ct. 792, 107 L. Ed. 2d 887 (1990) (state courts have concurrent jurisdiction over civil RICO actions). There are no state court prohibitions of such actions and carriers routinely assert claims for fraud, conspiracy and unjust enrichment in auto cases. *See*, *e.g.*, *Moore v. Auto-Owners Ins. Co.*, No. 327872, 2016 WL 6352315 (Mich. Ct. App. Oct. 27, 2016).  For *res judicata*, it is irrelevant that a plaintiff may claim to have discovered the cause of action after the settlement/dismissal, where the cause of action *could have* been litigated if all facts were known. Allstate cannot agree in state court to pay claims and then sue in federal court on those payments.

**Unjust Enrichment.** First, Allstate inarguably waived its ability to bring unjust enrichment claims for the Settled Claims, pursuant to the doctrine of *res*

6

*judicata*, when it chose to not bring the claims in the settled lawsuits. Second, the Settlement Agreements, themselves, inarguably govern payment for the disputed invoices – the issue at dispute in this lawsuit. Third, as stated in the Motion to Dismiss, Allstate does not allege ZMC did not fill the prescriptions at issue, so there is no basis to allege it was inequitable for *ZMC* to be paid for doing so.

**The Miscellaneous Reasons.** ZMC will not belabor the arguments made in the "miscellaneous reasons" section. But, raising the issues is not "literally the definition of a frivolous pleading." Response at 28. The issues have not been decided by the Sixth Circuit or by the Supreme Court, thus ZMC would be remiss in not raising them here. Respectfully, district court rulings do not create "well-settled jurisprudence" vis-à-vis Fed. R. Civ. P 11(b)(2).

Respectfully submitted,

April 2, 2020

**FINK BRESSACK**

By:   /s/ Darryl Bressack
David H. Fink (P28235)
Darryl Bressack (P67820)
John L. Mack (P80710)
Attorneys for Defendants ZMC Pharmacy, L.L.C. and Jalal Zawaideh
38500 Woodward Ave., Ste. 350
Bloomfield Hills, MI 48304
Tel: (248) 971-2500
Fax: (248) 971-2600
dfink@finkandassociateslaw.com
dbressack@finkandassociateslaw.com
jmack@finkbressack.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 2, 2020, I electronically filed the foregoing paper with the Clerk of the court using the ECF system which will send notification of such filing to all counsel of record registered for electronic filing.

FINK BRESSACK

By: /s/ Darryl Bressack
Darryl Bressack (P67820)
38500 Woodward Ave, Suite 350
Bloomfield Hills, MI  48304
(248) 971-2500
dbressack@finkbressack.com