UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ALLSTATE INSURANCE COMPANY;
ALLSTATE PROPERTY AND
CASUALTY INSURANCE COMPANY;
ALLSTATE FIRE AND CASUALTY            No: 19-cv-13721
INSURANCE COMPANY; ESURANCE          Hon. Linda V. Parker
INSURANCE COMPANY; and
ESURANCE PROPERTY AND
CASUALTY INSURANCE COMPANY,

               Plaintiffs,

vs.

INSCRIBED PLLC; INTEGRATIVE
NEUROLOGY PLLC; DIAGNOSTIC
SOLUTIONS LLC; WOOK KIM, M.D.,
P.C. d/b/a FARMBROOK
INTERVENTIONAL PAIN & EMG;
DETROIT INSTITUTE OF PAIN
MUSCULOSKELETAL MEDICINE
PLLC; MICHIGAN INSTITUTE OF
MUSCULOSKELETAL MEDICINE
PLLC; ZMC PHARMACY, L.L.C.;
INTEGRA LAB MANAGEMENT
LLC; GIREESH VELUGUBANTI,
M.D.; ARVINDER DHILLON, M.D.;
BACHU ABRAHAM, M.D.; AND
JALAL ZAWAIDEH, R.PH.,

               Defendants.

_____/

## ZMC PHARMACY, L.L.C. AND JALAL ZAWAIDEH'S
## RESPONSE TO SUR-REPLY

Allstate asserts that it needed to file a sur-reply because: ZMC "initially withheld and only now produced to this Court and Allstate via their reply brief the releases that they rely on to support their assertion that res judicata bars Allstate's claims (this disclosure was made only after Allstate pointed out in its opposition the failure to provide the same initially) ...." Allstate Sur-Reply at 1. Allstate claims that counsel for ZMC intentionally withheld the documents because the Settlement Agreements "undermine" ZMC's res judicata arguments. *Id.* Those assertions are demonstrably false. As counsel for ZMC explained to counsel for Allstate (before Allstate sought leave to file a sur-reply), the Settlement Agreements *were* produced on February 28, 2020 via a dropbox folder. Exhibit 1 is the email (and follow-up email with password) providing a link to the documents. Exhibit 2 is a screenshot of the history of the folder showing that Smith Brink (identified by its location of Braintree, Massachusetts) downloaded the folders on February 28, 2020. Accepting Allstate's assertion that the folders appeared empty, the only explanation is an error *on Allstate's end*, because Exhibit 3 demonstrates that the files were in the folders.[1]

Counsel for ZMC explained this to counsel for Allstate before Allstate filed its Sur-Reply; nevertheless, Allstate uses its own failure to properly download the

---

[1] Allstate did not notify ZMC that it believed the folders were empty, opting instead to first raise the issue in its Response brief. Moreover, Allstate's entire argument borders on the absurd, because there is no doubt that Allstate has had every Settlement Agreement since long before this case was filed. Plaintiffs were parties to each and every Agreement.

files as an excuse for the *ad hominem* assertion that ZMC withheld the documents, and "lied" about them, because the releases were only signed by ZMC. That "motive" is nonsensical, because the releases themselves were primarily drafted by Allstate (subject to approval by counsel for ZMC), the release language is used by Allstate in most of its no-fault provider settlements, Allstate knows what the releases say, and the language of the release is wholly irrelevant to ZMC's argument and the law.[2] Allstate argues the language of the releases matters because "[t]he application of *res judicata* to matters previously resolved via settlement requires reviewing the actual settlement agreements themselves." Allstate Sur-Reply at 2. But, Allstate relies exclusively on an 11th Circuit decision applying a "modified" *federal res judicata* analysis for dismissed cases in which the settlement agreements were not expressly approved by the court (*Norfolk Southern Corp. v. Chevron, U.S.A., Inc.*, 371 F.3d 1285 (11th Cir. 2004)) and on a Kentucky district court case which found *Norfolk Southern* persuasive (*Pinnacle Sur. Servs., Inc. v. Manion Stigger, LLP*, No. 3:15-CV-364-DJH, 2018 WL 1522698 (W.D. Ky. Mar. 28, 2018)). But, as explained by another court in this District, the *Pinnacle* district court court (which was

---

[2] As stated in the Motion, the documents were not attached as exhibits to the initial Motion, because there is no reason to inundate the Court with incontestable documents. *See* E.D.Mich. L.R. 83.20 (Attorneys practicing in this District "will stipulate to relevant matters if they are undisputed and if no good-faith advocacy basis exists for not stipulating.") Undersigned did inadvertently state that Allstate signed the settlement agreements, when, in fact, they were only signed by Mr. Zawaideh on behalf of ZMC.

analyzing *Norfolk Southern*) held that the earlier dismissal was not "a final decision on the merits because the settlement agreement in the prior suit at issue explicitly stated that it no way settled or resolved the matter." *State Farm Mut. Auto. Ins. Co. v. Elite Health Centers, Inc.*, No. 2:16-CV-13040, 2019 WL 7593842, at *5–6 (E.D. Mich. Oct. 9, 2019) (Patti, Mag. J.). (discussing *Pinnacle and Norfolk Southern*). In other words, here, if the 11th Circuit "modified" approach to federal *res judicata* was applied, Allstate could have potentially preserved claims by expressly reserving its right to do so with the courts. That was not done here and that that is why the court in *Elite Health* declined State Farm's request to create the requested *res judicata* exception in a similar RICO action. *See Elite Health* at * 5-6; *see also Daniel v. W. Asset Mgmt.*, No. 14-13573, 2015 WL 2405708, at *3 (E.D. Mich. May 20, 2015) (barring subsequent claim where party negotiated settlement that avoided release of claim, but did not extract an express waiver of future *res judicata* defenses).

More importantly, here, because the cases were dismissed in Michigan state courts, Michigan's "broad approach" to *res judicata* applies.[3] Under Michigan's "broad rule" of *res judicata*, the only time the language of a release or the fact that a case was resolved via settlement is relevant is when the settlement agreement

---

[3] Federal courts are required to give a state court judgment the same preclusive effect it would be given under the laws of the state that rendered the decision. *See Executive Arts Studio, Inc. v. Grand Rapids*, 391 F.3d 783 (6th Cir. 2004).

release and subsequent judgment expressly provide that certain claims will survive. *See, In re Estate of Dickinson*, No. 339212, 2018 WL 3479264, at *6 (Mich. Ct. App. July 19, 2018); *Fambrough v. Rhoads*, No. 185561, 1997 WL 33354332, at *2 (Mich. Ct. App. Jan. 28, 1997). Otherwise, a "voluntary dismissal with prejudice acts as an adjudication on the merits for *res judicata* purposes." *Limbach v. Oakland Co. Bd. of Rd. Comm'rs*, 226 Mich. App. 389, 395 (1997).

Allstate argues that *res judicata* does not bar its claims because the claims here involve different causes of action than the state court claims. Allstate is correct that there are distinctions between claims for "RICO, fraud, unjust enrichment, and payment under mistake of fact," but, for *res judicata*, the bar of later actions applies to every claim arising from the same transaction that a party exercising reasonably diligence *could have* raised in the prior suit. *See Adair v. State,* 470 Mich. 105, 121 (2004); *see also Scott v. Reif*, 659 F. App'x 338, 343 (6th Cir. 2016). But, Allstate's reliance *Cooper v. Auto Club Ins. Ass'n,* 481 Mich. 399 (2008) is misplaced because the *Cooper* court was not engaging in a *res judicata* analysis; the court was merely deciding determining whether a plaintiff's fraud action against an insurer was an independent cause of action not subject to the "one-year-back rule" applicable to actions brought under the no-fault act.[4] Under Michigan's "transactional approach,"

---

[4] Similarly, in *State Farm Mut. Auto. Ins. Co. v. Universal Health Grp., Inc.*, No. 14-CV-10266, 2014 WL 5427170 (E.D. Mich. Oct. 24, 2014), the challenge was not *res judicata*, but collateral estoppel (*11) and waiver (*Id.*). The language quoted

"[w]hether a factual grouping constitutes a transaction for purposes of res judicata is to be determined pragmatically, by considering whether the facts are related in time, space, origin or motivation, [and] whether they form a convenient trial unit." *Adair* at 121.[5] The *only* transactions between Allstate and ZMC relate to payment for prescriptions – the payments are the *only* injury alleged. ZMC sent invoices to Allstate and if Allstate did not pay, ZMC sued (either via assignment from the covered patient or via a direct suit). Each legal theory arises from the assertion that ZMC is liable – under theories of RICO, fraud, unjust enrichment, payment under mistake of fact, etc. – for improperly inducing or accepting the payments. [6]

---

by Allstate was the district court denying the waiver challenge because "Defendants cite no authority for the proposition that a reimbursement under Michigan's no-fault insurance system constitutes a waiver of claims related to the payment." *Id.* at *11.

[5] Without a hint of irony, Plaintiffs argue the exact opposite in state courts while seeking stays of pending ZMC state court actions in favor of this case. Plaintiffs argue to state courts that the state court claims will "necessarily require discovery into the details of the overarching fraud scheme," that the claims "involve the same parties, the same patient, and the same factual and legal issues" that there is an "identity between parties and claims" and that a ruling in this case "will be dispositive to the claims" in the state cases. Exhibit 4.

[6] Allstate's causes of action could not have accrued after dismissal of the state court cases. The "transactions" here – the alleged use of U.S. Mail, the alleged agreement to knowingly prescribe unneeded medication – all would have necessarily occurred prior to settlement. And, *res judicata* precludes a party from claiming, as Allstate does here with respect to Payment Under Mistake of Fact, that it had "an inability [in state court] to raise an issue that its own settlement of its state suit caused." *See Talismanic Properties, LLC v. City of Tipp City, Ohio*, 742 F. App'x 129, 131 (6th Cir. 2018).

There is no question that Allstate *could have* defended against the state court claims by asserting fraud, RICO or the various other claims brought in this suit.[7] The facts relevant to those defenses or counter-claims are identical to the facts relevant to this dispute. However, Allstate argues that it could not have brought its claims in state court because "it did not and could not know that it was being defrauded at the time" of the state cases.[8] But, even if Allstate could prove that it only entered into the settlement agreements because it supposedly did not know of purported fraud or of the facts underlying its RICO action, under Michigan law, *res judicata* would still apply. *See, e.g.*, *Triplett v. St. Amour*, 444 Mich. 170, 177–78 (1993). The only fraud

---

[7] Michigan courts are courts of general jurisdiction, permitting or requiring joinder of virtually all actionable claims. *See Scott v. Reif*, at 343-44 (barring claims which were "permissive" under state law (M.C.R. 3.301(B)), where "no Michigan or federal law precluded" the plaintiff from bringing the claims in the prior state court action.) Indeed, insurers routinely bring the types of claims in this case in state court in response to provider suits. *See, e.g.*, *Zigmond Chiropractic, P.C. v. AAA Michigan Auto. Ins. Ass'n*, No. 300286, 2012 WL 3198465, at *1 (Mich. Ct. App. Aug. 7, 2012); *Lanurias v. Progressive Ins. Co.*, No. 327435, 2016 WL 6127685, at *2 (Mich. Ct. App. Oct. 18, 2016).

[8] Allstate argues (without citing to any applicable law) that it could not have brought the claims in state court because it is suing 12 Defendants and because some of the cases were in district court, with jurisdictional limitations of $25,000. Allstate Sur-Reply at 4-5. The fact that Allstate has chosen to name additional defendants cannot possibly avoid *res judicata*. If Allstate were correct, any plaintiff could file an unlimited number of cases against the same defendant as long as the plaintiff adds new defendants or alleges conspiracy. With respect to the jurisdictional limitation, M.C.R. 4.002 expressly allows a counter-claim to be filed in district court in excess of the limitation, after which, the district court will determine whether to transfer the case to circuit court.

or concealment which could vitiate *res judicata* is "extrinsic fraud," which is simply

not alleged here. *See Sprague v. Buhagiar*, 213 Mich. App. 310, 313-14 (1995).[9] If

Allstate's position is accepted, then virtually no Michigan judgment would obtain

the finality mandated under Michigan law.[10] A litigant could simply agree to settle

a contract claim, and then file a new lawsuit attacking that payment based on RICO

or fraud or by claiming the payment was made under mistake of fact.[11]

Respectfully submitted,

April 10, 2020

**FINK BRESSACK**
By:   /s/ Darryl Bressack
David H. Fink (P28235)
Darryl Bressack (P67820)
John L. Mack (P80710)
Attorneys for Defendants ZMC Pharmacy,
L.L.C. and Jalal Zawaideh
38500 Woodward Ave., Ste. 350
Bloomfield Hills, MI 48304
Tel: (248) 971-2500
Fax: (248) 971-2600
dfink@finkandassociateslaw.com

---

[9] Allstate continues to illogically assert there is no privity of the parties. But, every dismissal at bar was entered into between Allstate (or one of its subsidiary co-Plaintiffs) and ZMC and signed by Mr. Zawaideh. There is complete unquestionable privity between Plaintiffs, ZMC and ZMC's owner.

[10] Allstate argues that "[t]he Moving Defendants admit" Allstate made sufficient allegations by stating in their Reply that "Allstate identifies specific allegations as purportedly supporting the causes of action." The word "purportedly" in the sentence quoted by Allstate reflects that Allstate merely "purports" to identify non-conclusory factual allegations. The rest of the argument demonstrates that Allstate does not succeed in that endeavor.

[11] Allstate states that "the Moving Defendants newly argue in their reply that Allstate's unjust enrichment count must be dismissed because of their bare allegation that they provided medications." However, the argument at issue was made on page 21 of ZMC's Motion to Dismiss.

dbressack@finkandassociateslaw.com
jmack@finkbressack.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 10, 2020, I electronically filed the foregoing

paper with the Clerk of the court using the ECF system which will send notification

of such filing to all counsel of record registered for electronic filing.

FINK BRESSACK
By: /s/ Darryl Bressack
Darry Bressack (P67820)
38500 Woodward Ave, Suite 350
Bloomfield Hills, MI  48304
(248) 971-2500
dbressack@finkbressack.com

# EXHIBIT 1

| From: | Darryl Bressack |
|---|---|
| To: | Jacquelyn A. McEttrick; Nathan Tilden |
| Subject: | Allstate et al v ZMC et al - Request for Concurrence |
| Date: | Friday, February 28, 2020 10:28:00 AM |
| Attachments: | image001.png |

Jacqui and Nate,

I am sending this email to seek concurrence with respect to a Motion to Dismiss we intend to file on behalf of ZMC Pharmacy and Jalal Zawaideh.

1.  The Complaint does not plausibly allege a 1962(c) violation as to ZMC or Mr. Zawaideh, because there are no plausible non-conclusory allegations that they participated in the control or operation of any of the "enterprises."

2.  The Complaint does not plausibly allege a 1962(d) violation as to ZMC or Mr. Zawaideh, because there are no plausible non-conclusory allegations that they agreed to the commission of a predicate act.

3.  Res judicata precludes Allstate from litigating claims relating to patients for whom ZMC and Allstate entered into settlement agreements. The "fraud" defense to res judicata only applies to extrinsic fraud outside of the facts of the case (e.g. if ZMC caused Allstate to believe the documents being signed weren't actually settlement agreements). The following link will take you to a dropbox folder containing settlement agreements and releases regarding many of the patients identified in the Complaint and exhibits, all of which should already be in Allstate's possession. Password to follow in separate email.

    https://www.dropbox.com/sh/b2x8rc229s05uew/AAAmfVyWtSe07qiV5Cqp4YCka?dl=0

4.  The court shouldn't exercise jurisdiction over the state law claims if the federal claims are dismissed.

5.  The Complaint does not meet the 9(b) requirements for a common law fraud and civil conspiracy claim with respect to ZMC and Mr. Zawaideh.

6.  The unjust enrichment claim should be dismissed because there are express contracts between Allstate and ZMC with respect to the settled claims and because there is no inequity from ZMC being paid for prescriptions in inarguably filled.

7.  While recognizing courts in Eastern District have already ruled on the arguments in other matters, the claims here should be dismissed pursuant to the holding in Jackson v Sedgwick, pursuant to Burford abstention and pursuant to reverse preemption.

Please advise if you concur with respect to the relief requested, in whole or in part.

Thank you,

Darryl

**Darryl Bressack**
T: 248-971-2500 | M: 734-255-4004



E: dbressack@finkbressack.com | W: http://www.finkbressack.com

A: 38500 Woodward Ave., Suite 350, Bloomfield Hills, MI 48304

A: 535 Griswold St., Suite 1000, Detroit, MI 48226

NOTICE: This is a communication from Fink Bressack and is intended for the named recipient(s) only. It may contain information which is privileged, confidential and/or protected by the attorney-client privilege or attorney work product doctrine. If you received this by mistake, please destroy it and notify us of the error. Thank you.

**From:**      Darryl Bressack
**To:**        Jacquelyn A. McEttrick;  Nathan Tilden
**Subject:**   Allstate et al v ZMC et al - Dropbox
**Date:**      Friday, February 28, 2020 10:29:00 AM
**Attachments:**  image001.png

The dropbox folder can be accessed by typing:





**Darryl Bressack**
T: 248-971-2500 | M: 734-255-4004
E: dbressack@finkbressack.com | W: http://www.finkbressack.com

A: 38500 Woodward Ave., Suite 350, Bloomfield Hills, MI 48304
A: 535 Griswold St., Suite 1000, Detroit, MI 48226

NOTICE: This is a communication from Fink Bressack and is intended for the named recipient(s) only. It may contain information which is privileged, confidential and/or protected by the attorney-client privilege or attorney work product doctrine. If you received this by mistake, please destroy it and notify us of the error. Thank you.

# EXHIBIT 2



# EXHIBIT 3









# EXHIBIT 4

TXA0155526.5/

STATE OF MICHIGAN
IN THE CIRCUIT COURT FOR THE COUNTY OF OAKLAND

ZMC PHARMACY, LLC, as Assignee of
SHANNON EVANS,
    Plaintiffs,

and

ADVANCED SURGERY CENTER, LLC and
SOUTHEAST MICHIGAN ANESTHESIA GROUP,
PLLC
(as Assignee of Shannon Evans),
    Intervening Plaintiffs,

vs.

ESURANCE PROPERTY AND CASUALTY
INSURANCE COMPANY,
    Defendants.
_____/

CASE NO. 18-170359-NF
HON. PHYLLIS C. MCMILLEN

**MOTION FOR STAY OF
PROCEEDINGS**

Timothy M. Hartner (P66237)
Andrew S. Khurana (P66363)
Attorneys for Plaintiff
888 W. Big Beaver Rd., Ste. 350
Troy, Michigan 48084
(248) 731-7846/ Fax: (248) 592-7374
tim@khuranalegal.com

KOUSSAN HAMOOD PLC
Ali H. Koussan (P75044)
Attorney for Intervening Plaintiffs Advanced
Surgery Center, LLC and Southeast
Michigan Anesthesia Group, PLLC
821 W. Milwaukee
Detroit, Michigan 48202
(313) 444-8348/ Fax: (313) 444-7814
ali@kh-plc.com

Jessica A. Buck (P73559)
Attorney for Defendant(s), ESURANCE
27555 Executive Drive, Suite 270
Farmington Hills, MI 48331-3570
(248) 324-1046 / (866) 537-7795 (fax)
Jessica.buck@Esurance.com
_____/

FEE

2

FILED   Received for Filing   Oakland County Clerk   1/24/2020 7:34 AM

## **DEFENDANT'S MOTION FOR STAY OF PROCEEDINGS**

NOW COMES Defendant ZMC Pharmacy, LLC ("Defendant" and/or "Esurance"), by and through undersigned counsel, and for its Motion for for Stay of Proceedings, states as follows:

1.  On December 19, 2019, Esurance and several associated entities initiated the action *Esurance Insurance Company, et al v Inscribed PLLC, et al*, 2:19-cv-13721-LVP-EAS (ED Mich 2019) (the "federal action") against ZMC Pharmacy, L.L.C. ("Plaintiff" and/or "ZMC Pharmacy"), its owners and managers, and several related entities. *See* Exhibit A.

2.  Esurance's federal action includes several causes of action, including under the federal Racketeer Influenced and Corrupt Organizations (RICO) Act, 18 U.S.C. § 1962(c) and (d), and various state laws, alleging that ZMC Pharmacy and its co-defendants engaged in a comprehensive scheme to defraud Esurance by submitting bills for treatment that was never actually provided, engaging in *quid pro quo* arrangements with personal injury attorneys and other healthcare providers, fabricating patient diagnoses and fraudulently altering records, billing for treatment by unlicensed individuals (if provided at all), billing for medically unnecessary treatment (if provided at all), submitting fraudulent bills, and charging exorbitant and unreasonable amounts.

3.  The federal action contains detailed analysis and numerous representative examples of each type of fraudulent conduct in which ZMC Pharmacy and its co-defendants engaged, and the allegations are supported by significant documentary and testimonial evidence. *See* Exhibit A.

4.  ZMC Pharmacy is owned and controlled by Jalal Zawaideh, R.Ph. ("Zawaideh").

5.      Zawaideh and ZMC Pharmacy violated Michigan's Anti-Solicitation laws by engaging in *quid pro quo* arrangements with the other defendants in the federal action and other healthcare providers.  *See* Exhibit A at ¶¶ 5, 322-327, 460-462, and 824.

6.      The defendants in the federal action violated established standards of care by prescribing medically unnecessary medications, including controlled substances, to patients pursuant to a predetermined protocol and then arranged to have these unnecessary medications filled by ZMC Pharmacy to induce patients to undergo unnecessary procedures and endure excessive treatment allegedly rendered by the defendants in the federal action in furtherance of their *quid pro quo* agreements.  *See* Exhibit A at ¶¶ 6, 127, 331-335, 342, 343, 460-462, and 824.

7.      The federal action details how ZMC Pharmacy dispensed controlled substances without regard for medical necessity or the potential for abuse, which contributed to the ongoing public health crisis in Michigan.  *See* Exhibit A at ¶¶ 460-470 and 824.

8.      The federal action also details how ZMC Pharmacy submitted excessive charges that far exceeded the reasonable and customary amounts for the medications that ZMC Pharmacy allegedly dispensed to patients, in violation of Michigan's No-Fault Act.  *See* Exhibit A at ¶¶ 8, 799-812, and 824.

9.      The medications dispensed to Shannon Evans are expressly at issue in the federal action (see Exhibit A at Exhibit 7, pg. ID 428, highlighted for ease of reference) and are part of the same overarching pattern of fraudulent conduct alleged throughout the federal action, and are therefore not compensable for the same reasons set forth therein and summarized above.

10.      In addition to monetary damages, the federal action seeks a declaration pursuant to 28 U.S.C. § 2201 that ZMC Pharmacy has no right to receive payment for any previously-denied and pending bills submitted to Esurance (including relative to Shannon Evans) for all of the reasons set forth above.

11. The relief sought by Esurance's federal action is part of its effort to combat abuse of Michigan's No-Fault system, which is a problem so pervasive and serious that Michigan was recently compelled to create a new Anti-Fraud Unit in an attempt to combat the issue. *See* Exhibit B.

12. The problem is perpetuated by providers like ZMC Pharmacy who submit claims that are so outrageously improper that no reasonable insurer would pay them, and then inundate courts and insurers with innumerable boilerplate lawsuits, thus multiplying the systemic costs of paying valid No-Fault claims for all Michigan drivers.

13. Attempts by providers like ZMC Pharmacy to overwhelm Michigan state courts are a serious problem. Indeed, according to a recent news article, providers such as ZMC Pharmacy have caused a 295% increase in No-Fault litigation in Michigan's state courts through their abusive filing practices that are grossly unfair to both the courts and to Esurance. *See* Exhibit C.

14. Because of the breadth and pervasiveness of the fraudulent scheme undertaken by ZMC Pharmacy and its co-defendants in the federal action, litigation concerning the bills which it asserts against Esurance will require extensive fact and expert discovery, including with respect to its engagement in and benefit from illegal solicitation, its relationship to the owners, managers, and co-defendants who were responsible for perpetrating the fraud, inducements offered to patients, lack of medical necessity, and fraudulent billing practices.

15. Esurance's defenses in this action, which involves ZMC Pharmacy's claims for payment for medications it allegedly dispensed pursuant to the fraudulent scheme summarized above and detailed in Esurance's federal action, will necessarily require discovery into the details of the overarching fraud scheme. It is far more efficient and cost-effective for the parties to

conduct this extensive discovery one time in the federal action rather than repeatedly in this, and every other, action ZMC Pharmacy has and will file in Michigan's state courts.

16.     Esurance's federal action and this case involve the same parties, the same patient, and the same factual and legal issues (although Esurance's federal action also involves additional issues).  Thus, a ruling in Esurance's federal action will be dispositive to the claims related to the single patient at issue in the instant case.

17.     In light of the identity between parties and claims in this matter and the federal action, and the considerably larger scope of the federal action, the interests of judicial economy and fairness to litigants and witnesses favor dismissal of the matter filed by ZMC Pharmacy in this Court without prejudice while the parties litigate the federal action.

18.     In the interests of fairness and judicial economy, Esurance will agree to toll the one-year-back rule, MCL 500.3145(1), should this Court dismiss this action without prejudice. As such, there is no risk of harm or prejudice to ZMC Pharmacy if the relief sought herein is granted.

19.     Dismissal of this matter will not delay the adjudication of ZMC Pharmacy's claims as the parties will be diligently and immediately addressing these exact claims in the federal action.

20.     Esurance and its affiliates have been constrained to file numerous similar actions in Michigan to address improper and fraudulent claims for benefits under the No-Fault Act in recent years and always seeks a swift adjudication of its claims, as evidenced by the fact that nearly all of these cases have resolved in less than one (1) year, to wit:

- o *Esurance Ins Co, et al v Pispidikis, D.C. et al*, Case No. 13-cv-13384-TGB-MJH
  - **Total Time of Case: 8 Months and 15 Days**

- o *Esurance Ins Co et al v Spine Specialists of Michigan, P.C. et al*, Case No. 13-cv-13539-AJT-MKM
  - **Total Time of Case: 10 Months and 22 Days**

- o *Esurance Ins Co et al v Total Toxicology Labs, LLC et al*, Case No. 16-cv-12220-DPH-SDD
  - **Total Time of Case: 8 Months and 5 Days**

- o *Esurance Ins Co et al v American Anesthesia Associates, LLC et al*, Case No. 17-cv-10299-MFL-MKM
  - **Total Time of Case: 7 Months and 20 Days**

- o *Esurance Ins Co, et al v OMIC, LLC d/b/a Oakland MRI, et al*, Case No. 17-cv-13908-VAR-DRG
  - **Total Time of Case: 12 months and 22 days**

- o *Esurance Ins Co, et al v Derek L Bittner D.C., P.C. d/b/a Bittner Chiropractic Center, et al*, Case No. 18-cv-13484-JEL-APP
  - **Total Time of Case: 11 months and 3 days**

- o *Esurance Ins Co, et al v Michigan Pain Management PLLC, et al*, Case No. 19-cv-10579-SJM-APP
  - **Total Time of Case:  8 months and 1 day**

21.     Alternatively, a stay of proceedings in this matter would also promote the interests of justice and judicial economy as Esurance's federal action will resolve whether the services at issue in the instant matter are compensable under the No-Fault Act.

22.     The relief sought by Esurance is not unique or extraordinary; several other state courts have granted dismissals without prejudice or stays in response to nearly identical factual scenarios occasioned by the filing of similar fraud-based federal actions, including on October 3, 2018 when Judge Warren dismissed a lawsuit filed by a medical provider in *Summit Medical Group, PLLC (Cooper) v Esurance Property & Casualty Insurance Company*, Oakland County Circuit Court, Case No. 18-165988-NF.  In so ruling, Judge Warren found:

> resolution of both cases will require examination of the "same operative facts" – i.e., whether the Plaintiff billed the Defendant for services that were medically unnecessary, fraudulently billed and/or resulted from illegal kickbacks.  In these circumstances it matters not that the federal action was filed by the Defendant against the Plaintiff (and others) alleging causes of action for violations of the federal RICO Act, 18 USD [sic] Section 1962(c) and (d), common law fraud, civil conspiracy, payment under mistake of fact, and unjust enrichment.  If the billings at issue in the federal action are found fraudulent or not reasonable or necessary or unrelated to the automobile accident, then the overlapping claims in this case will

not be compensable because fraud is a defense to payment of PIP benefits under the no fault act[.]

*Id.* at p 7 (internal quotation omitted) (*see* Exhibit D).

23.     Multiple state courts have granted the same relief Esurance seeks herein following the filing of the similar fraud-based federal action *Esurance Insurance Company, et al v Michigan Pain Management PLLC, et al*, 2:19-cv-10579-SJM-APP (ED Mich 2019):

    a.  On April 15, 2019, Judge Grant stayed an action filed by a medical provider defendant "until the parties' federal action is resolved." *Advanced Surgery Center v Esurance Ins Co*, Oakland County Circuit Court, Case No. 2018-168146-NF (*see* Exhibit E);

    b.  On April 15, 2019, Judge Grant stayed a separate action filed by a different medical provider defendant "until the parties' federal action is resolved." *Dearborn Pain Specialists v Esurance Ins Co*, Oakland County Circuit Court, Case No. 2018-167414-CZ (*see* Exhibit E);

    c.  On March 28, 2019, Judge Morris granted a motion for stay of proceedings "until the conclusion of the [federal action]" in an action filed by a medical provider defendant. *Advanced Surgery Center, LLC (Cortez) v Esurance Property and Casualty Insurance Company*, Oakland County Circuit Court, Case No. 2018-163908-NF (*see* Exhibit E);

    d.  On March 27, 2019, Judge Chabot granted a motion for stay of proceedings filed by an Esurance affiliate "until further order of this Court or the final resolution of [the federal action]." *Advanced Surgery Center, LLC (Nickson) v Esurance Property and Casualty Insurance Company*, Oakland County Circuit Court, Case No. 2017-162352-NF (*see* Exhibit E); and

    e.  On March 20, 2019, Judge Bowman entered an order dismissing an action filed by a medical provider defendant. *Dearborn Pain Specialists, PLC (Clay) v Esurance Property and Casualty Insurance Company*, Oakland County Circuit Court, Case No. 2018-162917-NF (*see* Exhibit E).

24.     Multiple state courts also granted the relief Esurance seeks herein following the filing of the similar fraud-based federal action *Esurance Insurance Company, et al v American Anesthesia Associates, LLC, et al*, 2:17-cv-10299-MFL-MKM (ED Mich 2017):

    a.  On March 22, 2017, Judge Sullivan granted Esurance's motion and entered an Order staying proceedings pending the outcome of the federal action in *American Anesthesia Associates, LLC (Magdalena Rista) v Esurance,* Wayne County Circuit Court, Case No. 16-010697-NF (*see* Exhibit F);

    b.  On April 4, 2017, Judge Plawecki granted Esurance's motion to stay in two cases in 20th District Court: *American Anesthesia Associates, LLC (Krystos) v Esurance,* Case No. 16-79222-GCP, and *American Anesthesia Associates, LLC (Idzikowski),* Case No. 16-78971-GCP (*see* Exhibit F);

c.  On April 20, 2017, Judge Plawecki granted Esurance's motion to stay in the 20th District Court Case *American Anesthesia Associates, LLC (Butler) v Esurance*, Case No. 16-80666-GCP (*see* Exhibit F);

d.  On April 21, 2017, Judge Murphy granted Esurance's motion for a stay in the Wayne County Circuit Court Case *American Anesthesia Associates, LLC (Blanding) v Esurance*, Case No. 16-009604-NF (*see* Exhibit F); and

e.  On May 3, 2017, Judge Brennan granted Esurance's motion for stay in the Wayne County Circuit Court Case *American Anesthesia Associates, LLC (McGlory) v Esurance*, Case No. 16-014126-NF (*see* Exhibit F).

WHEREFORE, for the reasons set forth herein and in the attached brief in support, Esurance respectfully requests that this Court enter an Order Staying the Proceedings in this case until final resolution of the matter *Esurance Insurance Company, et al v Inscribed PLLC, et al*, 2:19-cv-13721-LVP-EAS (ED Mich 2019).

Respectfully submitted,

*/s/ Jessica A. Buck*
Jessica A. Buck (P73559)
Attorney for Defendant(s), ESURANCE

Dated: January 23, 2020

TXA0155526.5/

STATE OF MICHIGAN
IN THE CIRCUIT COURT FOR THE COUNTY OF OAKLAND

ZMC PHARMACY, LLC, as Assignee of
SHANNON EVANS,
   Plaintiffs,

and

ADVANCED SURGERY CENTER, LLC and
SOUTHEAST MICHIGAN ANESTHESIA GROUP,
PLLC
(as Assignee of Shannon Evans),
   Intervening Plaintiffs,

vs.

ESURANCE PROPERTY AND CASUALTY
INSURANCE COMPANY,
   Defendants.
_____/

CASE NO. 18-170359-NF
HON. PHYLLIS C. MCMILLEN

**BRIEF IN SUPPORT**

Timothy M. Hartner (P66237)
Andrew S. Khurana (P66363)
Attorneys for Plaintiff
888 W. Big Beaver Rd., Ste. 350
Troy, Michigan 48084
(248) 731-7846/ Fax: (248) 592-7374
tim@khuranalegal.com

KOUSSAN HAMOOD PLC
Ali H. Koussan (P75044)
Attorney for Intervening Plaintiffs Advanced
Surgery Center, LLC and Southeast
Michigan Anesthesia Group, PLLC
821 W. Milwaukee
Detroit, Michigan 48202
(313) 444-8348/ Fax: (313) 444-7814
ali@kh-plc.com

Jessica A. Buck (P73559)
Attorney for Defendant(s), ESURANCE
27555 Executive Drive, Suite 270
Farmington Hills, MI  48331-3570
(248) 324-1046 / (866) 537-7795 (fax)
Jessica.buck@Esurance.com
_____/

**BRIEF IN SUPPORT**

I.  **STATEMENT OF FACTS**

ZMC Pharmacy, L.L.C. ("ZMC Pharmacy") purports to provide healthcare services to patients and submits claims for personal protection insurance benefits to Defendant ZMC Pharmacy, LLC ("Defendant" and/or "Esurance").  ZMC Pharmacy filed this lawsuit seeking No-Fault benefits pursuant to the Michigan No-Fault Act, MCL 500.3101, *et seq.* ("No-Fault Act"), for treatment purportedly rendered to Shannon Evans.

On December 19, 2019, Esurance and several of its associated entities initiated the action *Esurance Ins Co, et al v Inscribed PLLC, et al*, 2:19-cv-13721-LVP-EAS (ED Mich 2019) (hereinafter referred to as the "federal action") against ZMC Pharmacy, its owners and managers, and related entities.  *See* Exhibit A.  Esurance's federal action includes several causes of action, including under the federal Racketeer Influenced and Corrupt Organizations (RICO) Act, 18 U.S.C. § 1962(c) and (d), and various state laws, alleging that ZMC Pharmacy and its co-defendants engaged in a comprehensive scheme to defraud Esurance by submitting bills for treatment that was never actually provided, engaging in *quid pro quo* arrangements with personal injury attorneys and other healthcare providers, fabricating patient diagnoses and fraudulently altering records, billing for treatment by unlicensed individuals (if provided at all), billing for medically unnecessary treatment (if provided at all), submitting fraudulent bills, and charging exorbitant and unreasonable amounts.

The federal action contains detailed analysis and numerous representative examples of each type of fraudulent conduct in which ZMC Pharmacy and its co-defendants engaged, and the allegations are supported by significant documentary and testimonial evidence.  *See* Exhibit A.

ZMC Pharmacy is owned and controlled by Jalal Zawaideh, R.Ph. ("Zawaideh"). Zawaideh and ZMC Pharmacy violated Michigan's Anti-Solicitation laws by engaging in *quid pro quo* arrangements with the other defendants in the federal action and other healthcare providers.  *See* Exhibit A at ¶¶ 5, 322-327, 460-462, and 824.

The defendants in the federal action violated established standards of care by prescribing medically unnecessary medications, including controlled substances, to patients pursuant to a predetermined protocol and then arranged to have these unnecessary medications filled by ZMC Pharmacy to induce patients to undergo unnecessary procedures and endure excessive treatment allegedly rendered by the defendants in the federal action in furtherance of their *quid pro quo* agreements.  *See* Exhibit A at ¶¶ 6, 127, 331-335, 342, 343, 460-462, and 824.

The federal action details how ZMC Pharmacy dispensed controlled substances without regard for medical necessity or the potential for abuse, which contributed to the ongoing public health crisis in Michigan.  *See* Exhibit A at ¶¶ 460-470 and 824.  The federal action also details how ZMC Pharmacy submitted excessive charges that far exceeded the reasonable and customary amounts for the medications that ZMC Pharmacy allegedly dispensed to patients, in violation of Michigan's No-Fault Act.  *See* Exhibit A at ¶¶ 8, 799-812, and 824.

The medications allegedly dispensed to Shannon Evans are expressly at issue in the federal action (*see* Exhibit A at Exhibit 7, pg. ID 428, highlighted for ease of reference), and are not compensable under the No-Fault Act for the same reasons summarized herein and alleged in the federal action.  The federal action seeks a declaration pursuant to 28 U.S.C. § 2201 that ZMC Pharmacy has no right to receive payment for any previously-denied and pending bills submitted to Esurance, including those bills submitted relative to Shannon Evans, in light of the comprehensive fraudulent scheme detailed therein.  Thus, Esurance's federal action will

necessarily result in a ruling addressing the compensability of the claims for No-Fault benefits at issue in the instant matter.

Esurance assures this Honorable Court that it does not seek to delay resolution of ZMC Pharmacy's claims related to Shannon Evans.  To the contrary, the relief sought by Esurance's federal action is part of its effort to combat abuse of Michigan's No-Fault system, which is a problem so pervasive and serious that Michigan was recently compelled to create a new Anti-Fraud Unit in an attempt to combat the issue.  *See* Exhibit B.  The problem is perpetuated by providers like ZMC Pharmacy who submit claims that are so outrageously improper that no reasonable insurer would pay them, and then inundate courts and insurers with innumerable boilerplate lawsuits, thus multiplying the systemic costs of paying valid No-Fault claims for all Michigan drivers.  Attempts by providers like ZMC Pharmacy to overwhelm Michigan state courts are a serious problem.  Indeed, according to a recent news article, providers such as ZMC Pharmacy have caused a 295% increase in No-Fault litigation in Michigan's state courts through their abusive filing practices that are grossly unfair to both the courts and to Esurance.  *See* Exhibit C.  ZMC Pharmacy's filing of boilerplate complaints, such as that filed in this matter, is an integral part of its scheme because they have the practical effect of overwhelming a system that cannot possibly evaluate the complicated medical evidence and patterns of fraudulent submissions in each case.

The medications billed for by ZMC Pharmacy were allegedly dispensed pursuant to a larger fraudulent scheme that involves complicated issues of (lack of) medical necessity, unlawful treatment, unlawful solicitation, billing for services not rendered, fraudulent billing practices, and unreasonable and grossly excessive charges.  Since 2013, the defendants in the federal action have submitted bills to Esurance and its associated companies for at least 165 different patients.  *See* Exhibit A.  As a result of the federal defendants' fraudulent acts, Esurance

has paid in excess of $2,547,427 to them since 2013 related to the 165 different patients at issue in the federal action.  *See* Exhibit A.  Esurance's only recourse to confront ZMC Pharmacy's fraud head-on, and to present the full evidence of ZMC Pharmacy's fraud to a factfinder, is through its federal action.  The necessary fact and expert discovery is most appropriate to conduct a single time in the federal action, as that matter includes all patients and more claims (including counts against ZMC Pharmacy's owner) than the instant proceeding possibly could involve.  A dismissal of the instant proceeding without prejudice will allow the parties to devote their resources to litigating the one federal action, which will resolve all issues pending between the parties in a single proceeding.

## II.   DISCUSSION

### A.   This Case Should Be Stayed Pending Final Resolution of the Federal Action

A stay of the proceedings is the only appropriate alternative until final resolution of Esurance's federal action.  "[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the cases on its docket with economy of time and effort for itself, for counsel, and for litigants."  *Gray v Bush*, 628 F3d 779, 785 (6th Cir 2010), citing *Landis v North American Co*, 299 US 248, 254; 57 S Ct 163; 81 L Ed 153 (1936).  The questions included in the declaratory relief sought in Esurance's federal action—namely that ZMC Pharmacy has no right to receive payments from Esurance for any pending and previously-denied claims—impact ZMC Pharmacy's ability to pursue its claims in this case.  No-Fault insurance benefits are only recoverable if the claimant has established that the claim for benefits complies with all criteria of the No-Fault Act, including MCL 500.3105, 500.3107(1), and 500.3157.  *Cherry v State Farm Mut Auto Ins Co*, 195 Mich App 316; 489 NW2d 788 (1992).  If the court in Esurance's federal action finds that ZMC Pharmacy submitted bills for medications allegedly dispensed to patients who were the product of illegal solicitation, were medically

unnecessary, or were charged at unreasonable rates, then ZMC Pharmacy cannot recover No-Fault benefits from Esurance pursuant to the No-Fault Act, including MCL 500.3105, 500.3107(1), and 500.3157, and the proceedings in this Court will necessarily be impacted. The rights of the parties in this action will be guided by the determinations made in Esurance's federal action. Thus, at a minimum, this Court should stay the proceedings of this case pending final resolution of Esurance's federal action.

## III.   CONCLUSION

Esurance reiterates that it is not seeking to delay resolution of the disputes between the parties. To the contrary, Esurance is eager to proceed to the merits of ZMC Pharmacy's alleged dispensing of medications, which is why Esurance filed the federal action challenging these alleged services as to more than 165 patients. The claims submitted by ZMC Pharmacy raise a host of issues that will require fact and expert discovery that Esurance respectfully submits is more logically completed one time in the federal action, which will resolve all patients and will resolve far more causes of action than the instant proceeding (including Esurance's counts for RICO and fraud against the owners of the healthcare providers involved in the federal action). In sum, the quickest route to resolution is via the federal action. Accordingly, and for the reasons stated herein, Esurance respectfully requests that this Honorable Court enter an Order Staying the Proceedings in this case until final resolution of the matter *Esurance Insurance Company, et al v Inscribed PLLC, et al*, 2:19-cv-13721-LVP-EAS (ED Mich 2019).

Respectfully submitted,

*/s/ Jessica A. Buck*

Jessica A. Buck (P73559)
Attorney for Defendant(s), ESURANCE
PROPERTY AND CASUALTY
INSURANCE COMPANY

Dated:  January 24, 2020

**PROOF OF SERVICE**
The undersigned certifies that the foregoing
instrument was served on all parties, or their
attorneys of record, in the action noted above,
at their last known address on;
January 24, 2020.  Service was performed by:

U.S. Mail                        Fax
Hand Delivery              Overnight Express
x     Other: Court's ECF
         Signature:   */s/ Heather Silcott*

# EXHIBIT A

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| ALLSTATE INSURANCE COMPANY; ALLSTATE PROPERTY AND CASUALTY INSURANCE COMPANY; ALLSTATE FIRE AND CASUALTY INSURANCE COMPANY; ESURANCE INSURANCE COMPANY; and ESURANCE PROPERTY AND CASUALTY INSURANCE COMPANY, | C.A. No. _____ |
| Plaintiffs, | **Demand for Jury Trial** |
| v. | |
| INSCRIBED PLLC; INTEGRATIVE NEUROLOGY PLLC; DIAGNOSTIC SOLUTIONS LLC; WOOK KIM, M.D., P.C. d/b/a FARMBROOK INTERVENTIONAL PAIN & EMG; DETROIT INSTITUTE OF PAIN MUSCULOSKELETAL MEDICINE PLLC; MICHIGAN INSTITUTE OF MUSCULOSKELETAL MEDICINE PLLC; ZMC PHARMACY, L.L.C.; INTEGRA LAB MANAGEMENT LLC; GIREESH VELUGUBANTI, M.D.; ARVINDER DHILLON, M.D.; BACHU ABRAHAM, M.D.; and JALAL ZAWAIDEH, R.PH., | **COMPLAINT** |
| Defendants. | |

# COMPLAINT

Plaintiffs Allstate Insurance Company, Allstate Property and Casualty Insurance Company, Allstate Fire and Casualty Insurance Company, Esurance Insurance Company, and Esurance Property and Casualty Insurance Company (hereinafter, "Allstate" and/or "plaintiffs"), by their attorneys SMITH & BRINK, hereby allege as follows.

## I. INTRODUCTION

1. This is a case about medical clinics, a pharmacy, a clinical urine drug testing laboratory, and the physicians, owners, managers, agents, and representatives of the same who abused the unlimited benefits available under the Michigan No-Fault Act, Mich. Comp. Laws § 500.3101, *et seq*., by engaging in a scheme to defraud Allstate by submitting and causing to be submitted false and fraudulent medical records, bills, and invoices through interstate wires and the U.S. Mail seeking reimbursement under the No-Fault Act for treatment and services that were not actually rendered and, if performed at all, were medically unnecessary, were fraudulently billed, and were not lawfully rendered.

2. Defendants Inscribed PLLC ("Inscribed"); Integrative Neurology PLLC ("Integrative Neurology"); Diagnostic Solutions LLC ("Diagnostic Solutions"); Wook Kim, M.D., P.C. d/b/a Farmbrook Interventional Pain & EMG ("Farmbrook"); Detroit Institute of Pain Musculoskeletal Medicine PLLC

2