# EXHIBIT A

Plaintiffs Allstate Insurance Company, Allstate Property and Casualty Insurance Company, Allstate Fire and Casualty Insurance Company, Esurance Insurance Company, and Esurance Property and Casualty Insurance Company (hereinafter, "Allstate" and/or "plaintiffs") hereby submit the within sur-sur-sur reply in opposition to the motion to dismiss filed by defendants ZMC Pharmacy, L.L.C. ("ZMC") and Jalal Zawaideh ("Zawaideh") (hereinafter collectively referred to as the "Moving Defendants"). *See* Docket No. __.

*Res judicata* cannot possibly apply to Allstate's causes of action here, all of which stem from a complex conspiracy and scheme to defraud involving a dozen defendants, hundreds of patients, and a pattern of misrepresentations and deceit. Allstate has never sued any of these defendants before and never sued anyone for the fraud scheme alleged in its Complaint. There is simply no identity of parties or causes of action between this RICO/fraud case and a handful of one-off state court cases brought solely by ZMC against Allstate. The Moving Defendants attempt to avoid this fact by baldly arguing that "the *only* transactions between Allstate and ZMC relate to payment for prescriptions." *See* Docket No. 55-1, PageID 2446 (emphasis original). This evidences a failure to read the Complaint, which amply discusses over more than 200 pages (plus extensive exhibits) a comprehensive scheme to defraud implemented by ZMC, Zawaideh, and their co-conspirators. The Moving Defendants ignore that the actionable conduct here is fraud and

1

misrepresentations, not insurance payments.  This District has confirmed that these are acts distinct from insurance claim payments and that *res judicata* does not apply. *See, e.g.,* Santos v. Farmers Ins. Exch., 2007 U.S. Dist. LEXIS 82905, \*10-\*12 (E.D. Mich. Nov. 8, 2007) ("Plaintiffs' misrepresentation claim does not arise out of the same transaction as their claims under the insurance policies. . . .  Therefore, the Court finds that Plaintiffs' misrepresentation claim is not barred by *res judicata* . . . .").

The Moving Defendants' argument would lead to the absurd result that a plaintiff with monetary damages due to a defendant's fraudulent conduct could never maintain a fraud cause of action because it had been induced by that fraud to pay the defendant.  This District has rightly rejected this argument.  *See, e.g.,* State Farm Mut. Auto. Ins. Co. v. Universal Health Group, Inc., 2014 U.S. Dist. LEXIS 151213, \*27 (E.D. Mich. Oct. 24, 2014) ("There is no reasonable interpretation of Michigan law that punishes, for instance, the submission of 'false information concerning any fact or thing material to [an insurance] claim,' M.C.L. § 500.4503(c), but only if the claim is unpaid.  In effect, defendants' interpretation of the law would only punish those who were incompetent fraudsters, letting their more intelligent or devious colleagues off the hook." [brackets original]).  Therefore, the Moving Defendants' statement that "Allstate could have potentially preserved claims by expressly reserving its right to do so with the courts," *see* Docket No. 55-1, PageID 2444,

ignores Allstate's Complaint allegations that, in fact, it could not have "preserved claims" because Allstate did not know it had claims to preserve due to the Moving Defendants' fraud and deceit. *See, e.g.,* Docket No. 1, ¶¶ 333, 820, 823, 824(h), 836-843, 845, 897-899, 913, 928-930, 944, 987-989, 1003, 1069, 1077, 1078, 1091.

As the Moving Defendants concede, *res judicata* could only possibly apply (assuming all other requirements are met) where "the parties, exercising reasonable diligence, could have raised [claims] but did not." Sprague v. Buhagiar, 213 Mich. App. 310, 313 (1995). As expressly alleged by Allstate (see Complaint citations in the previous paragraph), it did not realize the Moving Defendants' (and their co-conspirators') fraud until shortly before filing its RICO/fraud complaint. Thus, even while exercising reasonable diligence, Allstate did not know it was being defrauded and could not have raised claims otherwise in the handful of state court cases where ZMC released Allstate (which also explains why Allstate never signed any release in favor of ZMC – it was not aware of any claim that could be released). The Moving Defendants' argument to the contrary actually requires the Court to find that the Moving Defendants' fraud was so pervasive that the fraud was always obvious (otherwise, Allstate was reasonably diligent in paying insurance claims as insurance companies are wont to do).[1]

---

[1] The Moving Defendants also continue to belabor their tortured argument regarding extrinsic versus intrinsic fraud. While there clearly is extrinsic fraud here, this argument is a red herring because there is no *res judicata* applicable so there is no need for the extrinsic fraud exception to the same. *Res judicata* applies only "if all of the following are present: (1) a final judgment on the merits by a court of competent jurisdiction; (2) a subsequent action between the

The Moving Defendants also ignore that they are named as defendants in numerous counts that have nothing to do with monies Allstate was fraudulently induced to pay to ZMC. For example, Allstate alleges that ZMC and Zawaideh committed substantive RICO violations under 18 U.S.C. § 1962(c) and engaged in a RICO conspiracy in violation of 18 U.S.C. § 1962(d) related to RICO enterprise and co-defendant Inscribed PLLC ("Inscribed"). *See* Docket No. 1 at Counts I and II. The money that Allstate was fraudulently induced to pay to Inscribed is entirely separate from monies Allstate paid to ZMC. None of the releases cited by the Moving Defendants have anything to do with monies Allstate paid to Inscribed. Thus, the Moving Defendants' statement that "[t]he *only* transactions between Allstate and ZMC relate to payment for prescriptions – the payments are the *only* injury alleged," *see* Docket No. 55-1, PageID 2446 (emphasis original), is patently untrue. Allstate alleges that the Moving Defendants were key participants in the entire fraudulent scheme, including related to RICO enterprises and co-defendant clinics Inscribed (Counts I and II) and Integrative Neurology PLLC (Counts III and IV). *See* Docket No. 1. Thus, while the Moving Defendants' entire *res judicata* analysis is wrong because previous payment by a plaintiff only confirms that a

---

same parties or their 'privies'; (3) an issue in the subsequent action which was litigated or which should have been litigated in the prior action; and (4) an identity of the causes of action." <u>State Farm Mut. Auto Ins. Co. v. Elite Health Ctrs.</u>, 2019 U.S. Dist. LEXIS 225353, *16-*17 (E.D. Mich. Oct. 9, 2019) (emphasis added). Not a single one, let alone all four, of these requirements is present here and even the Moving Defendants concede that there is no identity of the causes of action. *See* Docket No. 55-1, PageID 2445 ("Allstate is correct that there are distinctions between claims for 'RICO, fraud, unjust enrichment, and payment under of mistake' . . . .").

plaintiff has damages due to the defendant's fraud, payments to ZMC do not constitute the only damages in Allstate's Complaint.

The Moving Defendants' citation to State Farm Mut. Auto Ins. Co. v. Elite Health Ctrs., 2019 U.S. Dist. LEXIS 225353 (E.D. Mich. Oct. 9, 2019), is curious to say the least. In that case, the court found that "[r]eview of the settlement agreement confirms that [the insurer] sufficiently released [the provider] from all claims and allegations asserted or which could have been asserted against it in the [prior] case," but the court still declined to apply *res judicata*. Id. at *20. Here, of course, there is no settlement agreement and Allstate never signed, let alone released, the Moving Defendants from anything. Thus, the fundamental first step of the Elite court's *res judicata* analysis is not present here, thereby ending the inquiry. Even if the analysis is continued, however, the Elite court's holding further dooms the Moving Defendants, as the court discussed how even two cases alleging fraud causes of action against the same provider brought by the same insurer still was not enough to apply *res judicata* because the details of the fraud was different between the two cases. Id. at *25-*27 (the court compared the two fraud complaints and held that the provider "cannot demonstrate that [the insurer] could have asserted these claims in the prior proceeding or had a full and fair opportunity to litigate the issues involved during the prior proceeding"). The facts in Elite – the same insurer suing the same provider again and both times for fraud – are far more likely to present an actual

instance of *res judicata* than the one-off ZMC state court case versus Allstate's RICO and fraud case here, and the <u>Elite</u> court still rightly found that there was no *res judicata* bar.  A complaint filed solely by ZMC (not even its owner Zawaideh) against Allstate in a minor state trial court related to a single patient cannot possibly have afforded Allstate the "full and fair opportunity to litigate" the issues of fraud, conspiracy, and pattern involving a dozen defendants and hundreds of patients that is Allstate's Complaint, especially because "[the provider] has cited no authority for the proposition that a plaintiff must bring, or waive, all claims it has against a defendant . . . in one suit.  Accordingly, [the provider] has failed to demonstrate that [the insurer] could have asserted its claims against him in the [prior] case, or that [the insurer] had a full and fair opportunity to litigate the present issues during the prior proceeding." <u>Id</u>. at *23.

The other cases on which the Moving Defendants rely likewise fail them.  For example, the Moving Defendants state that "a 'voluntary dismissal with prejudice acts as an adjudication on the merits for *res judicata* purposes.'" *See* Docket No. 55-1, PageID 2445, quoting <u>Limbach v. Oakland Co. Bd. of Rd. Comm'rs</u>, 226 Mich. App. 389, 395 (1997).  But Allstate did not dismiss anything via the state court cases where ZMC released it.  This is a critical distinction.  In <u>Limbach</u>, the court held that "there is no doubt that Limbach's voluntary dismissal of her cross-claim for indemnification against the OCRC precludes her from raising that claim against

the OCRC again." Id. at 395-396.  The Limbach decision is clearly and indisputably distinguishable because here Allstate did not voluntarily dismiss any of the claims it asserts in the instant RICO/fraud case against ZMC in any prior state court action. Indeed, Allstate has never even asserted a claim against either of the Moving Defendants before the present case so it is not possible that Allstate voluntarily dismissed the same.

For all of the reasons stated herein, Allstate respectfully requests that the Court deny the Moving Defendants' motion to dismiss.

Respectfully submitted,

SMITH & BRINK

/s/ Jacquelyn A. McEttrick
_____
Richard D. King, Jr.
rking@smithbrink.com
Nathan A. Tilden (P76969)
ntilden@smithbrink.com
Jacquelyn A. McEttrick
jmcettrick@smithbrink.com
John D. Tertan
jtertan@smithbrink.com
350 Granite Street, Suite 2303
Braintree, MA  02184
617-770-2214 (phone)

38777 Six Mile Road, Suite 314
Livonia, MI  48152
Attorneys for Plaintiffs

Dated: April __, 2020