UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ALLSTATE INSURANCE CO.,
et al.,

      Plaintiffs,

v.

      Case No. 19-cv-13721
      Honorable Linda V. Parker

INSCRIBED PLLC, et al.,

      Defendants.
_____/

## OPINION AND ORDER DENYING MOTION TO DISMISS FILED BY DEFENDANTS ZMC PHARMACY, LLC AND JALAL ZAWAIDEH R.PH.

This dispute arises from no-fault insurance benefits Plaintiffs paid to Defendants. Plaintiffs are insurance companies which provide no-fault insurance coverage in Michigan. Defendants are medical clinics, a pharmacy, a clinical urine drug testing laboratory, and the physicians, owners, managers, agents, and representatives of those entities. In a 1164-paragraph, 213-page Complaint, Plaintiffs set forth facts alleging that Defendants engaged in a scheme to defraud Plaintiffs by submitting and causing to be submitted false and fraudulent medical records, bills, and invoices through interstate wires and the U.S. mail in violation

of the federal Racketeer Influenced Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962, and state law.

The matter is presently before the Court on a motion to dismiss filed by Defendants ZMC Pharmacy, LLC ("ZMC Pharmacy") and Jalal Zawaideh, R.Ph. ("Zawaideh") (collectively "ZMC Defendants"). (ECF No. 38.) Plaintiffs filed a response to the motion (ECF No. 48), the ZMC Defendants filed a reply (ECF No. 49), and with the Court's permission, Plaintiffs filed a sur-reply (ECF No. 54). Finding the facts and legal issues adequately presented in the parties' briefs, the Court is dispensing with oral argument with respect to the motion pursuant to Eastern District of Michigan Local Rule 7.1(f). For the reasons that follow, the Court is denying the ZMC Defendants' motion.

## I.     Applicable Standard of Review

A motion to dismiss pursuant to Rule 12(b)(6) tests the legal sufficiency of the complaint. *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1134 (6th Cir. 1996). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In deciding whether the plaintiff has set forth a "plausible" claim, the court must accept the factual allegations in the complaint as true. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). This presumption

is not applicable to legal conclusions, however. *Iqbal*, 556 U.S. at 668. Therefore, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing Twombly, 550 U.S. at 555).

The Federal Rules of Civil Procedure impose a heightened pleading standard for pleadings alleging fraud. *See* Fed. R. Civ. P. 9(b) (providing that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake"). To meet this heightened standard, a complaint must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Frank v. Dana Corp.*, 547 F.3d 564, 570 (6th Cir. 2008) (internal quotation marks and citations omitted).

While Rule 9(b) imposes additional pleading requirements, it must "not … be read in isolation, but is to be interpreted in conjunction with Federal Rule of Civil Procedure 8." *United States ex rel. Bledsoe v. Cmty. Health Systems, Inc.*, 501 F.3d 493, 503 (6th Cir. 2007) (quotation marks and citations omitted). "Rule 8 requires only 'a short and plain statement of the claim' made by 'simple, concise, and direct allegations.'" *Id.* (quoting *Michaels Bldg. Co. v. Ameritrust Co., N.A.*, 848 F.2d 674, 679 (6th Cir. 1988)). "When read against the backdrop of Rule 8, it is clear that the purpose of Rule 9 is not to introduce formalities to pleading, but instead to provide defendants with a more specific form of notice as to the

3

particulars of their alleged misconduct." *Id*. at 503. "The threshold test is whether the complaint places the defendant on sufficient notice of the misrepresentation, allowing the defendant[] to answer, addressing in an informed way [the] plaintiff[']s claim of fraud." *Coffey v. Foamex, L.P.*, 2 F.3d 157, 162 (6th Cir. 1993) (quotation marks omitted).

## II.    Factual and Procedural Background

The Complaint describes a comprehensive scheme by Defendants to induce Plaintiffs to pay benefits under Michigan's No-Fault Act for treatment, tests, and medications that were never actually provided or were unnecessary for patients involved in motor vehicle accidents. The scheme begins with the illegal solicitation of motor vehicle accident victims as patients. (Compl. ¶¶ 5, 287-295, ECF No. 1 at Pg ID 3, 47-48.) The patients then undergo medically unnecessary evaluations, injections, and diagnostic tests at the following medical clinics owned and controlled by Gireesh Velugubanti, M.D.: Inscribed PPLC, Integrative Neurology PLLC., and Diagnostic Solutions LLC. (*Id*. ¶¶ 25, 30, 35, 111-12, Pg ID 7-9, 18.)

Velugubanti entered quid pro quo arrangements with pain management physicians Arvinder Dhillon and Bachu Abraham to share patients. (*Id*. ¶¶ 117-120, Pg ID 19.) Dhillon owns and controls Wook Kim, M.D., P.C., doing business as Farmbrook Interventional Pain & EMG ("Farmbrook"). (*Id*. ¶ 40, Pg ID 9.)

4

Abraham owns and controls Detroit Institute of Pain Musculoskeletal Medicine PLLC ("DIPMM") and Michigan Institute of Musculoskeletal Medicine PLLC ("MIMM"). (*Id.* ¶¶ 45, 50, Pg ID 10-11.) Dhillon and Abraham fabricated patient head injuries to justify referrals to Velugubanti's entities (*id.* ¶ 119, Pg ID 19), and Velugubanti sent his clinics' patients to Farmbrook, DIPMM, and MIMM for unnecessary pain management (*id.* ¶ 120, Pg ID 19). DIPMM, MIMM, and Abraham also ordered unnecessary and excessive definitive drug testing, which was performed at Integra Lab Management LLC. (*Id.* ¶ 128, Pg ID 20.)

Inscribed, Integrative Neurology, Farmbrook, Velugubanti, and Dhillon required no-fault patients to have their prescriptions filled by ZMC Pharmacy in Royal Oak, Michigan, which is owned and controlled by Zawaideh. (*Id.* ¶ 55, Pg ID 11.) Inscribed, Integrative Neurology, Farmbrook, Velugubanti, and Dhillon also prescribed medication pursuant to a protocol, rather than the individual medical needs of each patient. (*Id.* ¶¶ 342-43, Pg ID 56.) More specifically, "Inscribed, Integrative Neurology, and Velugubanti prescribed the same drugs to nearly every patient during their initial evaluation, including (1) a controlled substance used to treat ADHD, (2) an NSAID [nonsteroidal anti-inflammatory drugs], and (3) a dietary supplement[,]" and "arranged to have these unnecessary prescriptions filled by defendant ZMC Pharmacy as part of their quid pro quo

5

agreements." (*Id.* ¶¶ 461-62, Pg ID 73.) Defendants regularly prescribed and dispensed Schedule II controlled substances. (*Id.* ¶ 467, Pg ID 74.)

As a matter of course, Defendants also prescribed controlled substances not indicated for the treatment of the patients' purported conditions. (*Id.* ¶¶ 463, 470, Pg ID 73.) Medications were prescribed "on a pro forma basis in an attempt to incentivize patients to continue to return to [the Defendant clinics] for medically unnecessary treatment." (*Id.* ¶ 824(h), Pg ID 135.) The submission by the ZMC Defendants of bills for extensive prescription medications made it appear as if patients suffered serious injury as a result of their alleged motor vehicle accidents and enabled the scheme to continue. (*Id.* ¶ 897, Pg ID 149.)

These charges, along with charges from other Defendants, were submitted to Plaintiffs through interstate wires and the U.S. mail. (*Id.* ¶ 155, Pg ID 26.) Plaintiffs claim that the ZMC Defendants billed excessive charges for the medications they dispensed when compared to other pharmacies in the same geographic area. (*Id.* ¶¶ 800-810, Pg ID 129-31.)

Based on the above conduct, Plaintiffs assert the following claims against the ZMC Defendants:

- RICO, 18 U.S.C. § 1962(c) and (d) (Counts I-IV, VII-VII, XIII-XIV);
- common law fraud (Count XVII);
- civil conspiracy (Count XVIII);
- payment under mistake of fact (Count XIX); and,
- unjust enrichment (Count XX).

Plaintiffs also seek a declaration that Defendants billed for unnecessary and unlawful treatment that is not compensable under Michigan's No-Fault Act. (Count XXI).

## III. Applicable Law and Analysis

### A. RICO Claims

Plaintiffs allege violations under RICO, 18 U.S.C. §§ 1962(c) and (d). These sections provide as follows:

> (c) It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.
>
> (d) It shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section.

18 U.S.C. § 1962(c), (d). To establish a RICO violation, the plaintiff must demonstrate "'(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity.'" *Moon v. Harrison Piping Supply*, 465 F.3d 719, 723 (6th Cir. 2006) (quoting *Sedima, SPRL v. Imrex Co.*, 473 U.S. 479, 496 (1985)). The ZMC Defendants seek dismissal of the RICO claims Plaintiffs assert against them, arguing that Plaintiffs fail to plead non-conclusory facts to show that the ZMC Defendants participated in a RICO enterprise.

To support a RICO violation, a defendant's participation "'must be in the conduct of the affairs of a RICO enterprise, which ordinarily will require some participation in the operation or management of the enterprise itself.'" *Stone v. Kirk*, 8 F.3d 1079, 1091 (6th Cir. 1993) (quoting *Bennet v. Berg*, 710 F.2d 1361, 1364 (8th Cir.) (en banc), *cert. denied*, 464 U.S. 1008 (1983)). "RICO liability is not limited to those with primary responsibility for the enterprise's affairs; only 'some part' in directing the enterprise's affairs is required.'" *Ouwinga v. Benistar 419 Plan Servs., Inc.*, 694 F.3d 783, 792 (6th Cir. 2012) (quoting *Reves v. Ernst & Young*, 507 U.S. 170, 179 (1993)). This "'can be accomplished either by making decisions on behalf of the enterprise or by knowingly carrying them out.'" *Id.* (quoting *United States v. Fowler*, 535 F.3d 408, 418 (6th Cir. 2008)).

Nevertheless, to be liable under § 1962(c), the defendant "must have 'conducted or participated in the conduct of the '*enterprise's* affairs,' not just [its[ *own* affairs.'" *Id.* (quoting *Reves*, 507 U.S. at 185) (emphasis in original). Participation, for purposes of RICO, "has a narrower meaning than 'aid and abet.'" *Stone*, 8 F.3d at 1091 (quoting *Reves*, 507 U.S. at 178). Plaintiffs plead sufficient non-conclusory allegations to satisfy the conduct required in the above cases to state their RICO claims against the ZMC Defendants.

According to the ZMC Defendants, Plaintiffs simply allege that they "fill[ed] a vanishingly small number of prescriptions from the other defendants"

8

(Defs.' Mot. at 8, ECF No. 986), and charged "excessive" amounts when compared to pharmacies dispensing the same medications in the same geographic area (*id.* at 3, Pg ID 981). In fact, Plaintiffs additionally allege that the ZMC Defendants developed a quid pro quo arrangement with the defendant clinics whereby those clinics wrote unnecessary and excessive prescriptions for dangerously addictive medications and then directed the patients to ZMC Pharmacy to fill the prescriptions. Plaintiffs further allege that the ZMC Defendants dispensed medications knowing the prescribed medications were not necessary, but instead were designed to entice patients to return to the clinics and thereby perpetuate the RICO/fraud scheme. *See Ouwinga*, 694 F.3d at 792-93 ("knowingly carrying out the orders of the enterprise satisfies the 'operation or management' test").

While Plaintiffs do not allege facts demonstrating an express agreement between the ZMC Defendants and the remaining defendants to carry out the RICO/fraud scheme, Plaintiffs allege sufficient facts to support the ZMC Defendants' awareness of and knowing participation in the scheme. Specifically, Plaintiffs claim that "Inscribed, Integrative Neurology, and Velugubanti prescribed the same drugs to nearly every patient during their initial evaluation" and that these prescription protocols regularly included Schedule II controlled substances. (Compl. ¶¶ 461, 467, ECF No. 1 at Pg ID 73-74.) Patients were directed to have ZMC Pharmacy fill their prescriptions. (*Id.* ¶ 462, Pg ID 73.)

9

Pursuant to the duties imposed on pharmacies and pharmacists under *inter alia* the Controlled Substances Act, one must assume that the ZMC Defendants were aware of the suspicious pattern of prescriptions written by the remaining defendants.[1] *See In re Nat'l Prescription Opiate Litig.*, -- F. Supp. 3d --, 2020 WL 4550400 (N.D. Ohio Aug. 6, 2020) (explaining the duty of pharmacies and pharmacists to monitor for questionable prescriptions); *see also id.*, No. 1:17-md-2804, 2019 WL 3917575 (N.D. Ohio Aug. 19, 2019) (describing the statutory and regulatory framework of the Controlled Substances Act and its implementing regulations). Moreover, the ZMC Defendants would have known that the prescriptions were unnecessary for the patients' diagnosed conditions (or at least should have known given the patterned diagnosis and prescriptions coming from

---

[1] The ZMC Defendants argue that they had a duty to dispense medication in accordance with the prescriptions presented and that doing otherwise would constitute negligence. (Defs.' Mot. at 9, ECF No. 38 at Pg ID 987 (citing cases).) The cases they cite to support this argument, however, address only the duties pharmacies and/or pharmacists owe customers. *See, e.g., Stebbins v. Concord Wrigley Drugs, Inc.*, 416 N.W.2d 381, 387-88 (Mich. Ct. App. 1987) (holding that a pharmacist generally has no duty to warn a patient of possible side effects of prescribed medication where the prescription is proper on its face and no warning is required by the prescribing physician or manufacturer). Those decisions do not undermine the legal duties imposed on pharmacies and pharmacists under federal law, including the duty to monitor and disclose suspicious orders of controlled substances. *See In re Nat'l Prescription Opiate Litig.*, -- F. Supp. 3d. --, 2020 WL 4550400, at *7-8

10

the same small group of clinics). Despite this awareness, the ZMC Defendants continued to dispense the medications prescribed by the remaining defendants.

While the ZMC Defendants insist that they had no relationship with or connection to the remaining defendants and were unaware that the prescriptions they filled lacked medical necessity, this is contrary to the facts alleged by Plaintiffs. The Court must accept the allegations in the Complaint as true at this stage of the proceedings. The extent of the relationship between the ZMC Defendants and the remaining defendants "is not an issue appropriate for resolution at the motion to dismiss stage." *Allstate Ins. Co. v. Total Toxicology Labs, LLC*, No. 16-12220, 2017 WL 3616476, at *6 (E.D. Mich. Aug. 23, 2017).

Plaintiffs' allegations are also sufficient to plausibly allege an agreement to violate RICO under § 1962(d). To state a claim under this section, a plaintiff "must successfully allege all the elements of a RICO violation, as well as alleg[e] 'the existence of an illicit agreement to violate the substantive RICO provision.'" *Heinrich v. Waiting Angels Adoption Servs., Inc.*, 668 F.3d 393, 411 (6th Cir. 2012) (quoting *United States v. Sinito*, 723 F.2d 1250, 1260 (6th Cir. 1983)). "'An agreement can be shown if the defendant objectively manifested an agreement to participate directly or indirectly in the affairs of an enterprise through the commission of two or more predicate crimes.'" *Id*. (quoting *Sinito*, 723 F.2d at

11

1261). As discussed above, there are enough allegations to suggest that the ZMC Defendants were parties to an agreement to engage in the alleged predicate acts.

The ZMC Defendants argue that the alleged facts do not establish Zawaideh's participation in the RICO/fraud scheme. Owning and managing ZMC Pharmacy, they point out, is insufficient to establish his liability. (Defs.' Mot. at 8 n.5, ECF No. 38 at Pg ID 986 (citing *United Food & Commercial Workers Unions & Emps. Midwest Health Benefits Fund v. Walgreen Co.*, 719 F.3d 849, 853-56 (7th Cir. 2013).) However, "individual defendants are always distinct from corporate enterprises … even when those individuals own the corporations or act only on their behalf[.]" *In re ClassicStar Mare Lease Litig.*, 727 F.3d 473, 492 (6th Cir. 2013) (citing *Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158 (2001)). Additionally, when a corporate employee conducts the affairs of the corporation in a RICO-forbidden manner, he or she can be liable under the RICO statute separate from the corporation itself. *Cedric Kushner Promotions*, 533 U.S. at 163.

For the above reasons, the Court concludes that Plaintiffs adequately plead their RICO claims against the ZMC Defendants.

**B. Res Judicata**

The ZMC Defendants argue that the doctrine of res judicata bars Plaintiffs from asserting claims that were previously settled. In their motion, however, the

ZMC Defendants fail to identify a single case that they contend bars the present action. District courts have rejected similar arguments asserted by no-fault providers who fail to identify a specific case with preclusive effect. *See, e.g., State Farm Mut. Auto. Ins. Co. v. Radden*, No. 2017 WL 1315758, at *2 (E.D. Mich. Apr. 10, 2017); *State Farm Mut. Auto. Ins. Co. v. Warren Chiropractic & Rehab Clinic PC*, No. 14-cv-11521, 2015 WL 4724829, at *16 (E.D. Mich. Aug. 10, 2015) (citing *State Farm Mut. Auto. Ins. Co. v. Universal Health Grp., Inc.*, No. 14-cv-10266, 2014 WL 5427170, at *11 (E.D. Mich. Oct. 24, 2014)).

In reply, the ZMC Defendants introduce several releases that ZMC Pharmacy executed in exchange for the payment of benefits by the no-fault insurers bringing the present lawsuit. (*See* ECF No. 50.) But these releases do not demonstrate the satisfaction of the elements necessary for Plaintiffs' claims to be barred by res judicata.[2] Plaintiffs' claims against the ZMC Defendants arise from Plaintiffs' payments of no-fault insurance benefits to the ZMC Defendants. Plaintiffs' current claims did not arise until those payments were made, and therefore the claims were not and could not have been resolved in the released

---

[2] The doctrine of res judicata bars a second, subsequent action when "'(1) the prior action was decided on the merits, (2) both actions involve the same parties or their privies, and (3) the matter in the second case was, or could have been, resolved in the first.'" *AuSable River Trading Post, LLC v. Dovetail Solutions, Inc.*, 874 F.3d 271, 274 (6th Cir. 2017) (quoting *Adair v. Michigan*, 680 N.W.2d 386, 396 (Mich. 2004)) (additional citations omitted).

13

actions. Moreover, the releases are signed only by ZMC Pharmacy and waive only ZMC Pharmacy's future and existing claims relating to the specific victim and automobile accident involved, not any cause of action the insurer may have.

The doctrine of res judicata therefore does not bar Plaintiffs' claims.

### C. State Law Claims

The ZMC Defendants raise several arguments supporting dismissal of Plaintiffs' state law claims against them. As the Court concludes that Plaintiffs' RICO claims are not subject to dismissal, it rejects without discussion the ZMC Defendants' first argument that, upon dismissing Plaintiffs' federal claims, the Court should decline to exercise supplemental jurisdiction over their state law claims. (*See* Defs.' Mot. at 18, ECF No. 38 at Pg ID 996.) The Court also rejects without discussion the ZMC Defendants' "miscellaneous reasons" for dismissal, which they raise only "to preserve the issues" while recognizing that every court in this District (including the present Court) have ruled in favor of Plaintiffs and other insurers on these issues. (*See id.* at 22, Pg ID 1000.) The Court adopts the reasons explained previously for rejecting those arguments. *See, e.g., Pointe Physical Therapy*, 68 F. Supp. 3d at 751-54; *State Farm Mut. Auto. Ins. Co. v. Vital Community Care, P.C.*, No. 17-cv-11721, 2018 WL 2194019, at \*\*3-6 (E.D. Mich. May 14, 2018); *Warren Chiropractic*, 2015 WL 4724829, at \*11-18.

14

The Court will address, however, the ZMC Defendants' argument that Plaintiffs fail to sufficiently plead their common law fraud and civil conspiracy claims with the particularity required under Rule 9(b). The Court addresses the argument only briefly, however, as the ZMC Defendants' reasons for why Plaintiffs' pleading is insufficient are challenges other defendants have raised unsuccessfully in several similar cases brought by no-fault insurers. *See Vital Community Care*, 2018 WL 2194019, at *7 (listing cases). Plaintiffs' Complaint in the present matter—like those in similar cases—describes in detail a complex, multi-layered scheme designed by Defendants to facilitate and/or participate in a plan to defraud Plaintiffs of monies through the submission of fraudulent bills. The Complaint places each defendant on notice of their role in the alleged scheme, including the specific misrepresentations they are alleged to have made. The Complaint clearly alleges how each defendant's role is integral to the operation of the fraudulent payment submission scheme as a whole.

Finally, Plaintiffs' unjust enrichment claim is not subject to dismissal due to the existence of an express contract between Plaintiffs and the ZMC Defendants. Plaintiffs dispute the existence of an express contract between themselves and the ZMC Defendants covering the subject matter here. An unjust enrichment claim is subject to dismissal only where it is undisputed that there is an express contract, between the same parties, covering the same subject matter. *See Universal Health*

*Grp.*, 2014 WL 5427170, at *11 (citing *State Farm Mut. Auto. Ins. Co. v. Physiomatrix, Inc.*, No. 12-11500, 2013 WL 509284, *5 (E.D. Mich. Jan. 12, 2013)); *see also Vital Community Care*, 2018 WL 2194019, at *9 (quotation marks and citations omitted) ("an unjust enrichment claim in fact is precluded by the existence of an express contract, but only where the contract is between the same parties on the same subject matter"). The ZMC Defendants identify the releases as the express contracts precluding Plaintiffs' unjust enrichment claims; however, those releases do not cover the subject matter presented here (i.e., Defendants' purported fraudulent scheme).

Plaintiffs also have sufficiently set forth the benefit the ZMC Defendants purportedly unjustly received. Specifically, Plaintiffs allege that the ZMC Defendants have been enriched by more than $1 million when Plaintiffs paid their claims for dispensing medically unnecessary medication. (*See* Compl. ¶ 1148, ECF No. 1 at , Damages Chart, ECF No. 1-22.) Plaintiffs further maintain that it would be inequitable to allow the ZMC Defendants to retain the benefit of the monies paid when they knowingly submitted fraudulent claims and documentation.

For these reasons, the Court concludes that Plaintiffs' state law claims are not subject to dismissal.

**IV. Conclusion**

To summarize, the Court rejects the ZMC Defendants' arguments in support of their request to dismiss Plaintiffs' claims against them.

Accordingly,

**IT IS ORDERED** that the motion to dismiss by ZMC Pharmacy, LLC and Jalal Zawaideh, R.Ph (ECF No. 38) is **DENIED**.

s/ Linda V. Parker
LINDA V. PARKER
U.S. DISTRICT JUDGE

Dated: September 29, 2020