UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| ALLSTATE INSURANCE COMPANY; ALLSTATE PROPERTY AND CASUALTY INSURANCE COMPANY; ALLSTATE FIRE AND CASUALTY INSURANCE COMPANY; ESURANCE INSURANCE COMPANY; and ESURANCE PROPERTY AND CASUALTY INSURANCE COMPANY, | C.A. No. 19-CV-13721-LVP-EAS |
| Plaintiffs, | |
| v. | |
| ZMC PHARMACY, L.L.C. and JALAL ZAWAIDEH, R.PH., | |
| Defendants. | |

**PLAINTIFFS' MOTION TO HOLD DEFENDANTS
ZMC PHARMACY, L.L.C. AND JALAL ZAWAIDEH
IN CONTEMPT AND FOR SANCTIONS**

Plaintiffs Allstate Insurance Company, Allstate Property and Casualty Insurance Company, Allstate Fire and Casualty Insurance Company, Esurance Insurance Company, and Esurance Property and Casualty Insurance Company (collectively, "Allstate") hereby move this Honorable Court for an order holding defendants ZMC Pharmacy, L.L.C. ("ZMC Pharmacy") and Jalal Zawaideh ("Zawaideh") (collectively the "defendants") in contempt for violating the Court's

Orders at ECF Nos. 69 and 86 and for making numerous misrepresentations to Allstate and the Court.  Allstate further moves this Honorable Court to impose sanctions, including the entry of default judgment, against the defendants.[1]

The undersigned certifies pursuant to Local Rule 7.1(a) that Allstate has repeatedly attempted to avoid the need for this motion, including by stipulating to an extension of time for the defendants to serve responses to discovery and produce documents; through requesting and participating in multiple discovery conferences on January 12, 2021, April 13, 2021, May 27, 2021, and June 15, 2021 during which Allstate repeatedly advised the defendants of the steps they must take to comply with the Court's Orders and satisfy their discovery obligations; and by filing a motion to compel discovery responses from the defendants that was granted by this Court on March 11, 2021.  *See* ECF Nos. 78 and 86.  Despite Allstate's exhaustive efforts, the defendants have continually failed to comply with the Court's Orders and refused to rectify their misrepresentations.  The defendants do not concur in the relief sought by Allstate's motion.

WHEREFORE, for the reasons set out herein and detailed in the attached brief in support of this motion for contempt and for sanctions, Allstate respectfully

---

[1] Allstate obtained the express permission of the Court to proceed with motion practice related to these discovery disputes, which began with Allstate's motion to compel (*see* ECF No. 78) and continues now with Allstate's attempts to get the defendants to abide by the Court's resulting Order (*see* ECF No. 86).

requests that this Honorable Court enter an Order holding defendants ZMC Pharmacy and Zawaideh in contempt and imposing sanctions, including the entry of default judgment, against these defendants.

Respectfully submitted,

SMITH & BRINK

*/s/ Jacquelyn A. McEttrick*

_____

Richard D. King, Jr.
rking@smithbrink.com
Nathan A. Tilden (P76969)
ntilden@smithbrink.com
Jacquelyn A. McEttrick
jmcettrick@smithbrink.com
John D. Tertan
jtertan@smithbrink.com
350 Granite Street, Suite 2204
Braintree, MA  02184
617-770-2214 (phone)

38777 Six Mile Road, Suite 314
Livonia, MI  48152

*Attorneys for Plaintiffs*

Dated: June 22, 2021

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

ALLSTATE INSURANCE COMPANY;
ALLSTATE PROPERTY AND
CASUALTY INSURANCE COMPANY;
ALLSTATE FIRE AND CASUALTY
INSURANCE COMPANY; ESURANCE
INSURANCE COMPANY; and
ESURANCE PROPERTY AND
CASUALTY INSURANCE COMPANY,

              Plaintiffs,

v.

ZMC PHARMACY, L.L.C. and JALAL
ZAWAIDEH, R.PH.,

              Defendants.

C.A. No. 19-CV-13721-LVP-EAS

---

**PLAINTIFFS' BRIEF IN SUPPORT OF MOTION TO HOLD
DEFENDANTS ZMC PHARMACY, L.L.C AND JALAL ZAWAIDEH
IN CONTEMPT AND FOR SANCTIONS**

---

# **TABLE OF CONTENTS**

Table of Contents ..................................................................i

Issues Presented ................................................................. iii

Controlling Authorities ........................................................iv

Brief in Support of Motion to Hold Defendants ZMC Pharmacy, L.L.C. and Jalal Zawaideh in Contempt and for Sanctions...................................................1

I.    Introduction................................................................1

II.    Relevant Background.....................................................2

III.    Discussion....................................................................5

    A.    Standard of Review ........................................5

    B.    The Defendants Misrepresentations to the Court and to Allstate ........ 6

    1.    Documents Evidencing Utilization of Revenue ...................................7

    2.    Evidence regarding Cash/Non-Auto Patients.....................................11

    3.    Referral Sources .........................................15

    4.    Email Addresses .........................................16

    C.    The Defendants Have Failed to Produce Numerous Documents/ESI ..........................................................17

    1.    Patient Files ..............................................17

    2.    Documents Evidencing Compliance with the Controlled Substances Act ...............................19

    D.    Substantial Sanctions, Including the Entry of Default Judgment Against the Defendants, Are Appropriate in Light of the Repeated, Willful Violations of Several Court Orders ......................20

IV.   Conclusion ...................................................................................................25

## <u>ISSUES PRESENTED</u>

1. Whether Allstate's motion to hold the defendants in contempt and for sanctions should be granted:

   Allstate answers: Yes

   Defendants answer:  No

2. Whether Allstate should be awarded default judgment against the defendants:

   Allstate answers: Yes

   Defendants answer:  No

3. Whether Allstate should be awarded costs, including attorney's fees, incurred in relation to this motion:

   Allstate answers: Yes

   Defendants answer:  No

<u>**CONTROLLING AUTHORITIES**</u>

<u>**CASES**</u>

Annabel v. Erichsen,
        2019 U.S. Dist. LEXIS 68626 (E.D. Mich. March 15, 2019)

Berry v. Ocwen Loan Servicing,
        2020 U.S. Dist. LEXIS 40353 (W.D. Tenn. Mar. 9, 2020)

Laues-Gholston v. Mercedes-Benz Fin. Servs. USA, LLC,
        2014 U.S. Dist. LEXIS 184021 (E.D. Mich. Nov. 28, 2014)

Media Capital Assocs. LLC v. Taylor (In re Taylor),
        370 B.R. 122 (E.D. Mich. 2007)

McGill v. Auto. Ass'n,
        207 Mich. App. 402 (1994)

New Prods. Corp. v. Dickinson Wright PLLC (In re Modern Plastics Corp.),
        577 B.R. 690 (W.D. Mich. 2017)

Rolex Watch U.S.A. v. Crowley,
        74 F.3d 716 (6th Cir. 1996)

Spectrum Health Hosps. v. Farm Bureau Mut. Ins. Co.,
        2020 Mich. App. LEXIS 5804 (Mich. Sept. 3, 2020)

State Farm Mut. Auto. Ins. Co. v. Angelo,
        2020 U.S. Dist. LEXIS 211341 (E.D. Mich. Nov. 12, 2020)

State Farm Mut. Aut. Ins. Co. v. Elite Health Ctrs., Inc.,
        2019 U.S. Dist. LEXIS 110767 (E.D. Mich. July 2, 2019)

State Farm Mut. Automobile Ins. Co. v. Physiomatrix, Inc.,
        2013 U.S. Dist. LEXIS 189646 (E.D. Mich. Aug. 13, 2013).

State Farm Mut. Auto Ins. Co. v. Policherla,
        2009 U.S. Dist. LEXIS 62135 (E.D. Mich. July 20, 2009)

Williams v. Goldman, Price & Assocs., LLC,
  2013 U.S. Dist. LEXIS 164402 (E.D. Mich. Sept. 30, 2013)

**RULES**

Fed. R. Civ. P. 37

**STATUTES**

Mich. Comp. Laws § 500.3159

21 U.S.C. § 801, *et seq.*

Plaintiffs Allstate Insurance Company, Allstate Property and Casualty Insurance Company, Allstate Fire and Casualty Insurance Company, Esurance Insurance Company, and Esurance Property and Casualty Insurance Company (collectively, "Allstate") hereby submit the within brief in support of their motion for an order holding defendants ZMC Pharmacy, L.L.C. ("ZMC Pharmacy") and Jalal Zawaideh ("Zawaideh") (hereinafter collectively referred to as the "defendants") in contempt for violating the Court's Orders at ECF Nos. 69 and 86 and for sanctions.[1]

## I.   **INTRODUCTION**

Throughout the entirety of discovery thus far, the defendants have repeatedly failed to respond to Allstate's requests seeking documents, electronically-stored information ("ESI"), and other information that is clearly relevant to allegations made against them in Allstate's Complaint.  Indeed, the defendants themselves admit and stipulated to their failures to respond to discovery requests that were served by Allstate more than seven (7) months ago (in November 2020).  *See* ECF No. 86. Allstate conferred with the defendants numerous times prior to filing its motion to compel (*see* ECF No. 78) and has conferred numerous times with the defendants

---

[1] Allstate obtained the express permission of the Court to proceed with motion practice related to these discovery disputes, which began with Allstate's motion to compel (*see* ECF No. 78) and continues now with Allstate's attempts to get the defendants to abide by the Court's resulting Order (*see* ECF No. 86).

since it was constrained to file that motion in an attempt to obtain responsive documents and ESI. Yet, the defendants have failed to produce documents/ESI that they were ordered to produce and further have misrepresented the existence of other documents/ESI, as detailed *infra*. The Court's March 11, 2021 Order was clear and unambiguous and was indisputably violated by the defendants as discussed herein. Despite having been placed on notice of the deficiencies in their responses and given ample time to comply, the defendants continue to refuse to produce responses to Allstate's discovery requests, constraining Allstate to file the instant motion. For these reasons, and as further discussed herein, the defendants should be held in contempt and sanctions, including the entry of default judgment, should issue against them.

## II.   <u>RELEVANT BACKGROUND</u>

Allstate served concise and narrowly tailored first requests for production of documents and interrogatories (the "first discovery requests") on each defendant on November 17, 2020. *See* ECF No. 78, Exhibits A through D thereto. At the specific request of the defendants, Allstate agreed to extend the deadline for them to respond to Allstate's pending discovery requests, serve their initial disclosures, and to produce initial responsive documents to January 5, 2021. *See* ECF No. 69. Unfortunately, despite the extension granted to them, the defendants' responses failed to produce whole categories of documents and refused to disclose highly

relevant and probative information without valid objection. The defendants' failures constrained Allstate to file a motion to compel on January 19, 2021. *See* ECF No. 78. Pursuant to that motion, the Court (Stafford, M.J.) issued a clear and unequivocal Order to the defendants to produce numerous categories of documents/ESI. *See* ECF No. 86. Allstate has recently confirmed that the defendants have misrepresented that documents/ESI requested by Allstate that are subject to the Court's Order at ECF No. 86 do not exist when, in fact, they do.

Allstate has attempted to resolve its discovery dispute with the defendants several times, having first conferred with the defendants on January 12, 2021. Since then, Allstate has conferred with the defendants on March 5, 2021, April 13, 2021, May 27, 2021, and June 15, 2021 relating to their ongoing discovery deficiencies and violations of the Court's Orders at ECF Nos. 69 and 86. Allstate also sent lengthy correspondence to the defendants outlining their extensive discovery failures on April 6, 2021, April 9, 2021, and June 3, 2021. For example, Allstate's June 3, 2021 correspondence (*see* Exhibit A) included an extensive recitation of the defendants' misrepresentations and outstanding discovery failures and numerous exhibits confirming the same. Allstate conferred yet again with the defendants on June 15, 2021 via telephone to address these outstanding issues and misrepresentations. At the end of that conference call, counsel for the defendants promised to immediately speak with the defendants and rectify these issues. On June

16, 2021, however, counsel for the defendants emailed counsel for Allstate that "[w]e need more time to connect with our client on the other items included in your June 3 email and addressed in our conversation yesterday." *See* Exhibit B.  The time to "connect with [their] client" relating to discovery first served in November 2020 and the subsequent violations of this Court's Orders at ECF Nos. 69 and 86 has passed and should have been done months ago when Allstate served its discovery and when the Court issued those Orders.  Nor has Allstate received a single follow up response from the defendants or their counsel since June 16, 2021.  Discovery is scheduled to conclude on October 1, 2021 (*see* ECF No. 90) and Allstate still does not have all of the patient files that it initially requested from the defendants on November 17, 2020.  This is simply unacceptable in a healthcare fraud case.  Since the outset of discovery and despite multiple written communications by Allstate and numerous conferences concerning the defendants' clear discovery deficiencies, the defendants continue to flout the Court's Orders.

The evasive and uncooperative behavior on the part of the defendants is not surprising considering Allstate recently learned that ZMC Pharmacy is currently under investigation by the United States Department of Justice ("DOJ"), the Federal Bureau of Investigation ("FBI"), and the Department of Health and Human Services Office of the Inspector General ("DHHS-OIG").  *See, e.g.,* Exhibit C.  The criminal investigation into ZMC Pharmacy parallels the fraud allegations contained in

4

Allstate's Complaint.  Indeed, Allstate was advised by the DOJ and the FBI that the defendants are currently under investigation for billing for drugs that were never dispensed to patients.  The DHHS-OIG is actively obtaining evidence relative to ZMC Pharmacy from its suppliers and other companies with which it conducts business.  Id.  This criminal investigation is devastating for the defendants and may be the reason for their continued failure to engage in discovery.  But, Allstate cannot be prejudiced simply because the defendants' conduct rises to the level of criminality.

As a result of the defendants' repeated violations of the Court's Orders and their continued failure to engage in discovery, the only appropriate consequences are they should be held in contempt with sanctions issued, including entry of default judgment.

## III.  DISCUSSION

### A.  STANDARD OF REVIEW

A court may find a party in contempt when it has "violated a definite and specific order of the court requiring him to perform or refrain from performing a particular act or acts with knowledge of the court's order."  New Prods. Corp. v. Dickinson Wright PLLC (In re Modern Plastics Corp.), 577 B.R. 690, 709 (W.D. Mich. 2017), quoting Elec. Workers Pension Trust Fund of Local Union No. 58, IBEW v. Gary's Elec. Service Co., 340 F.3d 373, 379 (6th Cir. 2003).  "[W]here it

is established that a party has violated a court order, the burden shifts to that party to show an inability to comply."  Williams v. Goldman, Price & Assocs., LLC, 2013 U.S. Dist. LEXIS 164402, *4 (E.D. Mich. Sept. 30, 2013).  To satisfy this burden, "a defendant must show categorically and in detail why he or she is unable to comply with the court's order."  Rolex Watch U.S.A. v. Crowley, 74 F.3d 716, 720 (6th Cir. 1996).

## B.  THE DEFENDANTS' MISREPRESENTATIONS TO THE COURT AND TO ALLSTATE

Allstate has been severely prejudiced by the defendants' failure to respond to discovery and their numerous misrepresentations to Allstate and the Court, which are detailed below and which undermine the integrity of the limited discovery that has occurred to date.  "Prejudice may be found where the adversary encounters substantial difficulty in obtaining information to which it is entitled or where the adversary needlessly expends time and money in this effort."  Media Capital Assocs. LLC v. Taylor (In re Taylor), 370 B.R. 122, 129 (E.D. Mich. 2007) (internal citations omitted).  Allstate served its discovery requests more than seven (7) months ago, and the defendants' continued failure to produce the responsive documents/ESI requested by Allstate makes it impossible for Allstate to move forward with prosecuting its case, including preventing it from conducting additional third-party discovery, consulting with its experts, and identifying deponents and scheduling deposition testimony.  As set out below, Allstate has obtained evidence confirming

that the defendants have made several misrepresentations to the Court and to Allstate.  While these misrepresentations are sanctionable in their own right, they also undermine any confidence Allstate and the Court have in the veracity of the limited discovery the defendants have produced to date.

### 1.    Documents Evidencing Utilization of Revenue

In its first discovery requests to ZMC Pharmacy, specifically Request No. 30, Allstate requested "documents related to ZMC Pharmacy's utilization of revenue, including general ledgers, balance sheets, profit and loss statements, income statements, annual budgets, and disbursement logs, during the relevant period."  *See* ECF No. 78-4, PageID 3252.  Following Allstate's motion to compel, the defendants misrepresented that "ZMC doesn't generate the information requested [but] will produce the general ledgers:"

> 3.  **ZMC Pharmacy's Request for Production No. 30:** All documents related to ZMC Pharmacy's utilization of revenue, including general ledgers, balance sheets, profit and loss statements, income statements, annual budgets, and disbursement logs, during the relevant period.
>
> ZMC doesn't generate the information requested. ZMC will produce the general ledgers for the relevant time period from which the requested information may be derived.

Id.  Despite the representation made to the Court that ZMC Pharmacy does not "generate" the financial information requested, Allstate discovered that Zawaideh received at least one balance sheet relating to ZMC Pharmacy that was dated November 30, 2018 from Michael Gill ("Gill") on December 19, 2018.  *See* Exhibit

D.[2]  Another of defendant Zawaideh's pharmacies named Gabe Care Direct Rx, Inc. ("Direct Rx") issued an invoice to ZMC Pharmacy seeking payment of fifteen thousand dollars ($15,000.00) for what it described as payment for a "Management Fee."  *See* Exhibit E.   According to an email authored by Zawaideh, this "management fee" was "for Mike Gill for [sic] doing our [ZMC Pharmacy's] books."  *See* Exhibit F.  Thus, ZMC Pharmacy paid Direct Rx (a different legal entity) $15,000.00 for Gill to "do[] our books" despite the fact that the defendants represented to the Court that "ZMC doesn't generate the [balance sheets, profit and loss statements, income statements, annual budgets, and disbursement logs] requested [by Allstate]."  *See* ECF No. 86, PageID 3402.  This is clearly a false statement by the defendants.  Gill had to have documents and ESI in order to "do the books" and to perform the work that Direct Rx billed to ZMC Pharmacy (at a sizable fee of $15,000).  More importantly, ZMC Pharmacy clearly does possess balance sheets and income statements, as proven by Exhibit D, but to date the only documents/ESI the defendants have produced regarding their utilization of revenue

---

[2] Exhibits D, E, F, and J were originally marked "confidential" by the defendants. During the April 13, 2021 conference, counsel for the defendants admitted that her office had simply marked every document as "confidential" without making a specific determination of confidentiality and that the defendants did not object to Allstate not treating these documents as confidential (Allstate also notes that none of the documents at Exhibits D, E, F, and J contain patient or HIPAA-protected information).

is the one document at Exhibit D. All such documents related to the defendants' utilization of revenue must be immediately produced to Allstate.

The utilization of revenue records are clearly relevant and discoverable and therefore should have already been produced to Allstate. Courts in this District have repeatedly recognized the importance of producing financial records in discovery in insurer RICO cases. *See, e.g.,* State Farm Mut. Auto Ins. Co. v. Policherla, 2009 U.S. Dist. LEXIS 62135, *9-*10 (E.D. Mich. July 20, 2009) (holding that financial information is relevant to healthcare fraud claim); State Farm Mut. Aut. Ins. Co. v. Elite Health Ctrs., Inc., 2019 U.S. Dist. LEXIS 110767, *31 (E.D. Mich. July 2, 2019), quoting State Farm Mut. Auto Ins. Co. v. Physiomatrix, Inc., 2013 U.S. Dist. LEXIS 189832, *7 (E.D. Mich. Nov. 26, 2013) (the plaintiff insurer was "entitled to discovery tending to prove the entirety of the 'scheme' alleged"). Indeed, courts in this District have expressly stated that financial records such as those requested by Allstate "may evince payments between Defendants and others to further the alleged scheme; they may also show the extent to which Defendants allegedly defrauded Plaintiff or profited from the conspiracy." State Farm Mut. Auto. Ins. Co. v. Angelo, 2020 U.S. Dist. LEXIS 211341, *4 (E.D. Mich. Nov. 12, 2020). Furthermore, this District has previously determined that banking and other financial accounts held by both defendant clinics and their individual owners are relevant and discoverable in RICO actions for fraud: "The banking records of the Clinic Defendants … and even

the joint accounts of those Defendants with their non-party wives are clearly relevant … given that the individual Defendants are being sued in their individual capacities, as well as the fact that the various corporate Defendants are closely held by the individual Defendants, which easily permits the free flow of money between corporate and personal accounts."   State Farm Mut. Automobile Ins. Co. v. Physiomatrix, Inc., 2013 U.S. Dist. LEXIS 189646, *11 (E.D. Mich. Aug. 13, 2013).

It is beyond comprehension that a multimillion dollar business such as ZMC Pharmacy would not keep financial records such as balance sheets or profit and loss statements and indeed the evidence proves that ZMC Pharmacy does, in fact, have documents and ESI related to its finances and utilization of revenue.  Moreover, the defendants managed to give Gill access to their financial records and information in order for him to "do the books" so there is no reason why they cannot give similar access to Allstate.  Most importantly, the defendants made misrepresentations to the Court and to Allstate at ECF No. 86 when they falsely said that they do not "generate the information requested."

The truth is the defendants are simply trying to avoid producing the requested information and have no legitimate basis to do so.  The defendants admitted that Gill utilized electronically-stored financial data to prepare ZMC Pharmacy's books and ZMC Pharmacy's failure to produce that documentation/ESI to Allstate while

misrepresenting the facts to this Court are clear grounds for a finding of contempt and an issuance of sanctions.

### 2.   **Evidence regarding Cash/Non-Auto Patients**

The defendants have also failed to produce "invoices, cash receipts, and other evidence of payment generated and/or maintained by ZMC Pharmacy relating to patients who paid for medications in cash" despite representing to the Court that "ZMC will review its files and attempt to produce information that satisfies this request":

> 9.   <u>ZMC Pharmacy's Request for Production No. 33</u>: All invoices, cash receipts, and other evidence of payment generated and/or maintained by ZMC Pharmacy relating to patients who paid for medications in cash during the relevant period.
>
> ZMC does not maintain this information in a readily accessible format. ZMC will review its files and attempt to produce information that satisfies this Request.

*See* ECF No. 86, PageID 3402-3403.   Notwithstanding the defendants' representation that "ZMC does not maintain this information in a readily accessible format," Allstate has obtained a customer compliance questionnaire that ZMC Pharmacy submitted to Auburn Pharmaceutical Company, one of its wholesale suppliers, that identifies the "percentage of payment method your pharmacy receives" as "Cash: 9%."   *See* Exhibit G.   Again, despite representing to the Court that ZMC Pharmacy "does not maintain this information in a readily accessible format," the defendants were able to state definitively that they receive 9% of their revenue from cash payments when asked by one of their wholesale suppliers.   Put

differently, the defendants were able to identify the answer to the question about the sources of their cash revenue when it was convenient for them to do so, but not when facing serious fraud and RICO allegations.[3]

Allstate's Complaint details how the defendants submitted excessive charges that far exceeded the reasonable and customary amounts for the medications that ZMC Pharmacy allegedly dispensed to patients, in violation of Michigan's No-Fault Act. *See* ECF No. 1 at ¶¶ 8, 799-812, and 824. The No-Fault Act is clear that only "reasonable charges" constitute allowable expenses thereunder. Mich. Comp. Laws § 500.3107(1)(a). Michigan courts have explicitly stated that "medical care providers are prohibited from charging more than a reasonable fee." McGill v. Auto. Ass'n, 207 Mich. App. 402, 405 (1994). The evidence obtained by Allstate has confirmed that ZMC Pharmacy submitted unreasonable and excessive charges to Allstate for the medications allegedly dispensed to Allstate insureds. According to the invoices produced by ZMC Pharmacy and its wholesale suppliers that identify the costs to ZMC Pharmacy to obtain the medications billed to Allstate, ZMC Pharmacy charged Allstate outrageous markups. A representative chart

---

[3] The application at Exhibit G also supports Allstate's arguments regarding the defendants' misrepresentations concerning discovery regarding their utilization of revenue discussed in the immediately preceding subsection. Again, clearly, the defendants have financial documents and ESI regarding the sources of their business and revenue (as Exhibit G confirms that ZMC Pharmacy was readily able to confirm that it receives payment from insurers, Medicare/Medicaid, worker's compensation, and cash patients), but refuse to turn them over to Allstate.

12

summarizing costs to ZMC Pharmacy for just some of the medications billed to Allstate is below:

| Medication Billed | ZMC Pharmacy Amount Billed to Allstate | Cost to ZMC Pharmacy for Medication Billed to Allstate | ZMC Pharmacy's Markup Percentage |
|---|---|---|---|
| Alprazolam 2 MG tablet | $373.73 | $3.03 | **12,214.81%** |
| Amlodipine Besylate 5 MG tablet | $161.01 | $0.36 | **44,625.00%** |
| Aripiprazole 2 MG tablet | $2,886.75 | $9.93 | **28,962.22%** |
| Cyclobenzaprine Hydrochloride 10 MG tablet | $196.47 | $0.88 | **22,236.29%** |
| Donepezil Hydrochloride 5 MG tablet | $701.10 | $1.19 | **58,981.46%** |
| Escitalopram 10 MG tablet | $389.70 | $0.83 | **46,593.03%** |
| Meloxicam 15 MG tablet | $436.05 | $0.73 | **59,862.87%** |
| Olanzapine 5 MG tablet | $1,105.80 | $2.12 | **52,060.38%** |
| Omeprazole 20 MG capsule | $774.03 | $2.00 | **38,628.61%** |
| Ondansetron 4 MG tablet | $2,230.05 | $2.41 | **92,433.20%** |
| Ranitidine 150 MG tablet | $280.80 | $2.93 | **9,494.10%** |
| Rizatriptan 10 MG tablet | $1,195.50 | $9.07 | **13,080.82%** |
| Sertraline 100 MG tablet | $266.62 | $1.33 | **19,880.52%** |
| Tramadol 50 MG tablet | $214.95 | $1.93 | **11,050.02%** |
| Vyvanse 20 MG tablet | $911.43 | $293.21 | **210.85%** |

*See* Exhibit H (Exhibit H contains the invoice cost for the specific medication billed to Allstate followed by the bill submitted by ZMC Pharmacy to Allstate for that specific medication for each row in the above chart).

Allstate is entitled to discovery that identifies how much ZMC Pharmacy billed cash patients for the same medications it billed to Allstate and the total amount

13

ZMC Pharmacy received as payment in full from these cash patients based upon the clear allegations in its Complaint and Michigan law. In fact, the Michigan Court of Appeals recently published a detailed decision explaining that the information Allstate requested is absolutely relevant in <u>Spectrum Health Hosps. v. Farm Bureau Mut. Ins. Co.</u>, 2020 Mich. App. LEXIS 5804, *53-*57 (Sept. 3, 2020):

> Simply put, third-party payments which are accepted by a healthcare provider as payment in full during the pertinent timeframe for products and services are relevant to determining the reasonableness of charges for those very same products and services in the context of treatment covered by PIP benefits.
>
> ***
>
> [C]omparison of the amounts that [the provider] charged for the services [the patient] received to the amounts that others actually paid for the same services during the same general timeframe – and that [the provider] accepted as payment in full for these services – tends to make it more or less likely that the amounts [the provider] charged were reasonable or unreasonable. That is, what others actually pay can be used to measure the value of the medical services provided and can constitute a useful point of comparison for assessing the reasonableness of medical charges.
>
> ***
>
> A medical provider's typical price cannot be deemed reasonable unless it reflects an amount that is actually being charged in the marketplace, and a realistic standard considers the amount insurers actually pay and the amount a medical provider is willing to accept. Quite simply, when determining reasonableness, the amount that others pay for the same goods or services is a pertinent factor to be considered when deciding whether a charge of those same goods or services is reasonable.

(internal citations omitted).

14

Accordingly, documents and ESI requested by Allstate identifying the amounts ZMC Pharmacy charges its patients who pay in cash and the amounts that ZMC Pharmacy accepts as payment in full from these non-auto insurance patients are clearly relevant on the issue of the reasonableness of the defendants' charges and discoverable in light of the <u>Spectrum Health</u> decision. The defendants' misrepresentations to the Court and to Allstate regarding this documentation and ESI cannot be tolerated.

### 3. <u>Referral Sources</u>

In his March 31, 2021 supplemental responses to Allstate's first set of interrogatories, Zawaideh stated that he "did not track or record the source of patient referrals" to ZMC Pharmacy. *See* Exhibit I at Request No. 4. Yet, Zawaideh was able to provide detailed percentages to Auburn Pharmaceutical Company that identified the patient breakdown as follows: 60% from insurance companies (such as Allstate), 30% from Medicare/Medicaid, 1% from worker's compensation, and 9% from cash patients. *See* Exhibit G.

Furthermore, Zawaideh admitted that he utilized a "case management referral team" to obtain business and referrals. *See* Exhibit J. One of the things his "case management referral team" told Zawaideh to do was sponsor an event in which "[t]he audience will be about 40 docs that treat auto." <u>Id</u>. Thus, it is indisputable that Zawaideh does in fact track the source of patient referrals to ZMC Pharmacy yet

misrepresented otherwise to Allstate in his supplemental discovery responses, thereby severely prejudicing Allstate from obtaining discovery that is relevant and proportional to its claims against the defendants.  To this day, neither defendant has produced any discovery regarding their sources of business/referrals, thereby depriving Allstate from the opportunity to conduct third-party discovery and depositions of this "case management referral team" and these "40 docs that treat auto."  The email at Exhibit J likewise confirms that the defendants target auto insurance when committing their fraud, which is exactly what Allstate alleges in its Complaint.

### 4.    Email Addresses

Zawaideh has also failed to identify "all email addresses created, controlled, and/or otherwise used by you (both personal and business) during any part of the relevant period."  *See* ECF No. 78-9, PageID 3334.  Zawaideh identified the following four (4) email addresses in response to Allstate's discovery: (1) jalal@zmcrx.com, (2) jzawaideh@zmcroyaloak.com, (3) jalal@zmcroyaloak.com, and (4) jzawaideh@directrx.com.  Id.; *see also* Exhibit I at Request No. 7.  However, Allstate has recently obtained evidence that Zawaideh failed to identify all of the email addresses that he used.  Specifically, Zawaideh identified "customrxllc@gmail.com" to one of his suppliers as his email addresses as recently as October 7, 2019 (i.e., well within the time period at issue in Allstate's Complaint).

*See* Exhibit K. Yet, Zawaideh failed to identify this email address in his responses to Allstate and Allstate was only able to uncover the same by its third-party discovery. The defendants' continued failure to respond truthfully to Allstate's discovery has prejudiced Allstate and prevented Allstate from obtaining evidence to prepare for trial.

## C.   THE DEFENDANTS HAVE FAILED TO PRODUCE NUMEROUS DOCUMENTS/ESI

There can be no dispute that the defendants have knowingly violated the March 11, 2021 Order requiring the defendants to produce several categories of documents and ESI. *See* ECF No. 86.

### 1.   Patient Files

Allstate's requests for production of documents seek "[a]ll patient files and metadata related to the creation of records and bills for all Allstate Insureds for whom ZMC Pharmacy billed Allstate during the relevant period" (*see* ECF No. 78-4, PageID 3249) and "[a]ll documents related to claims that ZMC Pharmacy submitted or caused to be submitted to Allstate during the relevant period, including, but not limited to, prescriptions, notes, bills, referrals, orders, and communications related to all Allstate Insureds" (id.). ZMC Pharmacy failed to produce all of the patient files at issue in Allstate's Complaint (despite Allstate providing an extension of time), thereby necessitating Allstate's motion to compel. *See* ECF No. 78. In

response to Allstate's motion to compel, ZMC Pharmacy was ordered to produce

updated patient files on or before March 31, 2021:

1. **ZMC Pharmacy's Requests for Production Nos. 12, 15, 19, 21, 27**: These are the ones we categorized on the phone as the "Allstate-insured patient documents," including patient files, reports, communications, etc. that correlate to the 133 ZMC patients itemized in the complaint.
   a. As we discussed during our phone call this morning, we have received less than 20% of the patient files at issue in Allstate's Complaint. However, even the patient files that have been "produced" are severely lacking and also do not contain the metadata requested. For example, several of the patient files produced on January 5, 2021 contain an "Assignment of Payment" document that identifies the specific patient and further indicates "signature on file" relating to that patient. However, not a single patient file produced to date contains a document with the patient's signature on file, indicating that ZMC Pharmacy has not produced the complete patient file.

ZMC will produce updated patient files for the remaining patients. The patient files contain the requested information if ZMC has it. When signatures are required, they are kept on the AOBs within the legal files of the Khurana Law Firm. If you really need to see the AOBs, please let me know and I will request them from the law firm.

*See* ECF No. 86, PageID 3401.

As of the date of this motion, ZMC Pharmacy has failed to produce all of the

"updated patient files" to Allstate.  There is simply no basis to refuse to produce the

files related to the patients specifically identified in this healthcare fraud case.

Furthermore, ZMC Pharmacy has failed to produce <u>any</u> of the metadata that Allstate

requested.  *See* ECF No. 78-4, PageID 3249.  Allstate specifically requested

metadata to be produced because this information allows Allstate to determine

if/when patient specific data produced by ZMC Pharmacy was altered or edited in

any way (a serious and well-founded concern in light of the defendants' numerous

misrepresentations, as discussed above) and whether and when the defendants

complied with regulations concerning patients.  ZMC Pharmacy has failed to provide

this metadata to Allstate for each of the patient files "produced" despite Allstate's

original request clearly asking for metadata and numerous follow up inquiries from

Allstate at the parties' conferences over the past several months.  Allstate has expended considerable time and resources to ensure this very simple request is fulfilled, yet the patient files remain incomplete.

> ### 2.   Documents Evidencing Compliance with the Controlled Substance Act

ZMC Pharmacy was also ordered to produce documents to Allstate evidencing its compliance with the Controlled Substances Act:

> 8. **ZMC Pharmacy's Requests for Production Nos. 18, 19, and 20:** This category relates to the regulatory compliance.  Your clients have already agreed to produce these documents.
> ZMC will produce documents required for compliance with the identified statutes.

Id., PageID 3402.  However, the defendants have failed to produce these documents to Allstate.  For example, the Controlled Substances Act requires ZMC Pharmacy retain a copy of all written orders for controlled substances for a period of two (2) years, and report any suspicious orders to the Drug Enforcement Agency.  *See* 21 U.S.C. §§ 822-828.  ZMC Pharmacy is a multimillion dollar pharmacy operating in the State of Michigan, which is well-known to be in the midst of an opioid crisis, and where a multitude of medical providers are known to engage in overprescribing of controlled substances and have been criminally prosecuted for same.  To date, Allstate has received almost no documents or ESI from the defendants regarding their compliance with Drug Enforcement Administration regulations and

19

requirements, no applications for licenses submitted to the State of Michigan, and no patient-specific MAPS reports.[4]

**D.  SUBSTANTIAL SANCTIONS, INCLUDING THE ENTRY OF DEFAULT JUDGMENT, ARE APPROPRIATE IN LIGHT OF THE DEFENDANTS' MISREPRESENTATIONS AND REPEATED, WILLFUL VIOLATIONS OF SEVERAL COURT ORDERS**

This Court should impose strong sanctions, including the entry of default judgment, against the defendants.  "Among the variety of discovery sanctions available in a district court's 'arsenal,' the entry of a default judgment against a defendant or an Order of dismissal against a plaintiff are the court's 'strongest weapon[s].'"  Annabel v. Erichsen, 2019 U.S. Dist. LEXIS 68626, *2 (E.D. Mich. March 15, 2019), quoting Grange Mut. Gas. Co. v. Mack, 270 Fed. Appx. 372, 376 (6th Cir. 2008).  "[T]he district court does not abuse its discretion in entering a default judgment where a 'party has the ability to comply with a discovery Order and does not.'"  Id. at *4, quoting Stooksbury v. Ross, 528 Fed. Appx. 547, 552 (6th Cir. 2013).

---

[4] MAPS reports are "Michigan Automated Prescription System" reports, which stem from "Michigan's prescription monitoring program. MAPS is used to track controlled substances, schedules 2-5 drugs. It is a tool used by prescribers and dispensers to assess patient risk and is also used to prevent drug abuse and diversion at the prescriber, pharmacy, and patient levels." *See* https://www.michigan.gov/lara/0,4601,7-154-89334_72600_72603_55478---,00.html (last accessed June 22, 2021).

"A court must consider four factors when determining whether a plaintiff's complaint should be dismissed pursuant to Rule 37: (1) whether the party's failure to cooperate in discovery is due to willfulness, bad faith, or fault; (2) whether the party's adversary was prejudiced by the party's failure to cooperate in discovery; (3) whether the party was warned that failure to cooperate could lead to dismissal; and (4) whether less drastic sanctions were imposed or considered before dismissal was ordered."  Id., citing Bank One of Cleveland, N.A. v. Abbe, 916 F.2d 1067, 1073 (6th Cir. 1990).  "Although no one factor is dispositive, dismissal or default judgment is proper if the record demonstrates delay or contumacious conduct."  Id., citing United States v. Reyes, 307 F.3d 451, 458 (6th Cir. 2002).

The facts discussed above call for entry of default judgment against the defendants.  The defendants' actions were willful, intentional, and done in bad faith.  The defendants' refusal to provide honest responses to Allstate's discovery and continued failure to produce documents, metadata, and ESI in violation of the Court's Orders at ECF Nos. 69 and 86 constitute a willful disregard of both the Court and the defendants' discovery obligations.  Moreover, the defendants were previously the subject of a motion to compel, which led to an Order requiring them to rectify their discovery deficiencies so the defendants were clearly on notice that their misconduct would not be tolerated.  There can be no question that Allstate has been severely prejudiced by the defendants' failure to respond to discovery.  Allstate

served its discovery requests more than seven (7) months ago, and the defendants'

continued failure to produce the responsive documents requested by Allstate, and

ordered by this Court, makes it impossible for Allstate to move forward with

prosecuting its case, including preventing it from conducting additional third-party

discovery, consulting with its experts, identifying deponents and scheduling

deposition testimony, and otherwise preparing for trial.

For all of these reasons, the Court should find that the defendants are in

contempt of the Court's unambiguous Orders at ECF Nos. 69 and 86 and enter

default judgment against them as sanctions for their conduct.  Indeed, such an order

is both warranted by the facts of this case and consistent with other similar cases.

*See, e.g.,* Annabel, 2019 U.S. Dist. LEXIS 68626 at *8-*11 (in which the court

recommended entry of default judgment where the defendant disregarded multiple

court orders and failed to provide the plaintiff with revised discovery responses as

ordered, and noting that the court "has little trouble concluding that [the defendant's]

behavior in this case is due to willfulness or bad faith and amounts to contumacious

conduct as defined by the Sixth Circuit"); Berry v. Ocwen Loan Servicing, 2020

U.S. Dist. LEXIS 40353, *3-*5 (W.D. Tenn. Mar. 9, 2020) (entering case-

terminating sanctions against a litigant who failed to produce documents in response

to discovery requests six (6) months after such requests were served, and finding

that warnings of dismissal and award of costs were ineffective at correcting the

litigant's conduct); <u>Laues-Gholston v. Mercedes-Benz Fin. Servs. USA, LLC</u>, 2014 U.S. Dist. LEXIS 184021 (E.D. Mich. Nov. 28, 2014) (case-terminating sanctions entered as a result of discovery violations even though the litigant was *pro se*, because his conduct was obstructionist and in bad faith).

In addition, the Court should impose significant monetary sanctions against the defendants, including awarding Allstate its costs and attorney's fees incurred as a result of its ongoing efforts to obtain the discovery to which it is indisputably entitled pursuant to Fed. R. Civ. P. 37(b)(2).  *See* <u>Annabel</u>, 2019 U.S. Dist. LEXIS 68626 at *3-*4 ("[a] court may also, in addition to or as an alternative to [the entry of default judgment] direct 'the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure' to comply with the court Order"), quoting Fed. R. Civ. P. 37(b)(2)(C).

Allstate reiterates that it has made every possible effort in this case to accommodate the defendants, including monthly conferences, numerous correspondence outlining the defendants' misrepresentations and deficiencies (often sent with supporting documentation, *see, e.g.,* Exhibit A), several stipulations extending the time for the defendants to finally comply with their discovery obligations (*see* ECF Nos. 69 and 86), and a stipulation extending the discovery period in this case at the defendants' request (*see* ECF No. 89).  But Allstate cannot tolerate the defendants' continued stonewalling, including the most recent

communication from counsel for the defendants that they are still "connect[ing] with our client" on discovery served more than seven (7) months ago.  *See* Exhibit B. Allstate's fraud and RICO allegations are serious.  Indeed, this Court has already recognized the serious issues presented by the ZMC Defendants' behavior in finding that "[p]ursuant to the duties imposed on pharmacies and pharmacists under *inter alia* the Controlled Substances Act, one must assume that the ZMC Defendants were aware of the suspicious pattern of prescriptions written by the remaining defendants" and that "the ZMC Defendants would have known that the prescriptions were unnecessary for the patients' diagnosed conditions (or at least should have known given the patterned diagnosis and prescriptions coming from the same small group of clinics).  Despite this awareness, the ZMC Defendants continued to dispense the medications prescribed[.]"  *See* ECF No. 60 at PageID 2519-2520.

The ZMC Defendants' refusal to abide by the standards and regulations that legitimate pharmacies honor is consistent with their repeated violations of the Court's Orders to comply with Allstate's discovery requests concerning the production of full and complete patient files (including metadata and MAPS reports) and documentation relative to ZMC Pharmacy's compliance (if any) with the Controlled Substances Act and is consistent with their numerous misrepresentations to the Court and to Allstate.  The sum of these deficiencies – which have endured now for more than seven (7) months – is that the defendants must be severely

24

sanctioned, including the entry of default judgment and Allstate must be compensated for its well documented months of attempts to get the defendants to participate in discovery in good faith to no avail.

## IV.   **CONCLUSION**

The defendants have ignored and violated two Court Orders and have made numerous misrepresentations to the Court and to Allstate, seriously prejudicing Allstate's efforts to prosecute this case.  For these reasons, this Court should find the defendants in contempt and enter sanctions, including the entry of default judgment, against them.

Respectfully submitted,

SMITH & BRINK

*/s/ Jacquelyn A. McEttrick*

_____

Richard D. King, Jr.
rking@smithbrink.com
Nathan A. Tilden (P76969)
ntilden@smithbrink.com
Jacquelyn A. McEttrick
jmcettrick@smithbrink.com
John D. Tertan
jtertan@smithbrink.com
350 Granite Street, Suite 2204
Braintree, MA  02184
617-770-2214 (phone)

38777 Six Mile Road, Suite 314
Livonia, MI  48152

*Attorneys for Plaintiffs*

Dated:  June 22, 2021

## **CERTIFICATE OF SERVICE**

I, Jacquelyn A. McEttrick, counsel for Plaintiffs, hereby certify that on June

22, 2021, I electronically filed the foregoing papers with the Clerk of the Court using

the ECF system, which will send notification of such filing to all counsel of record.

SMITH & BRINK

*/s/ Jacquelyn A. McEttrick*

_____

Jacquelyn A. McEttrick
jmcettrick@smithbrink.com
350 Granite St., Suite 2204
Braintree, MA 02184
(617) 770-2214

38777 Six Mile Road, Suite 314
Livonia, MI 48152
(734) 521-9000