UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ALLSTATE INSURANCE COMPANY;
ALLSTATE PROPERTY AND
CASUALTY INSURANCE COMPANY;
ALLSTATE FIRE AND CASUALTY        No: 19-cv-13721
INSURANCE COMPANY; ESURANCE       Hon. Linda V. Parker
INSURANCE COMPANY; and            Mag. Judge Elizabeth Stafford
ESURANCE PROPERTY AND
CASUALTY INSURANCE COMPANY,

                Plaintiffs,

vs.

INSCRIBED PLLC; INTEGRATIVE
NEUROLOGY PLLC; DIAGNOSTIC
SOLUTIONS LLC; WOOK KIM, M.D.,
P.C. d/b/a FARMBROOK
INTERVENTIONAL PAIN & EMG;
DETROIT INSTITUTE OF PAIN
MUSCULOSKELETAL MEDICINE
PLLC; MICHIGAN INSTITUTE OF
MUSCULOSKELETAL MEDICINE
PLLC; ZMC PHARMACY, L.L.C.;
INTEGRA LAB MANAGEMENT
LLC; GIREESH VELUGUBANTI,
M.D.; ARVINDER DHILLON, M.D.;
BACHU ABRAHAM, M.D.; AND
JALAL ZAWAIDEH, R.PH.,

                Defendants.

## DEFENDANTS ZMC PHARMACY, L.L.C. AND JALAL ZAWAIDEH'S EMERGENCY MOTION TO DISQUALIFY SMITH & BRINK, PLLC, FOR SANCTIONS AND FOR STAY

Defendants ZMC Pharmacy, L.L.C. and Jalal Zawaideh, PharmD, by and through their attorneys, Fink Bressack, hereby move this Honorable Court for an order disqualifying the law firm Smith & Brink from representing Plaintiffs. In addition, Defendants ask this Court to impose appropriate sanctions and to enter a stay of proceedings pending substitution of counsel.

1) On August 5, 2021, Plaintiffs took the deposition of Jla Monet Devereaux, an employee of Defendant ZMC Pharmacy, L.L.C. at the law offices of Smith & Brink, in Livonia, Michigan.

2) Before the deposition began and again during a break in the deposition, attorney Jacquelyn McEttrick, an attorney employed by Smith & Brink, serving as counsel for Plaintiffs, met with Defendant Jalal Zawaideh in the absence of Mr. Zawaideh's counsel.

3) Without the knowledge of Mr. Zawaideh's counsel, Ms. McEttrick engaged in extensive discussions with Mr. Zawaideh about the substance of this case. Those discussions included, among other things, the following:

   a. Ms. McEttrick's representations about an expert report, which had not yet been served or filed by Plaintiffs, including promoting the expert's qualifications (discussing his affiliation with Tufts and Harvard), boasting about its impact on the case ("you are not going to like the

2

report") and attempting to intimidate the unrepresented party ("You are not going to be happy with me the next time you see me.")

b. Discussing with this unrepresented party Allstate's decision not to use their regular pharmacy consultant—Mitchell AutoRx—as an expert, even though Allstate uses that firm on a daily basis. (With Ms. McEttrick saying "yeah, that's part of the problem.")

c. Asking the unrepresented party "do you still plan on billing no-fault under the new fee schedule?"

d. Asking the unrepresented party "Why wouldn't you just bill what Medicare's fee schedule is?"

e. Attempting to intimidate the unrepresented party into billing Allstate at lower rates. ("All you need to do is bill less than the next provider so you wouldn't be on my client's radar.")

f. Discussing a substantive deposition exhibit in detail with the unrepresented party.

g. Telling the unrepresented party that if the case goes to trial she intends to show the jury an exhibit which identifies a large amount of billings, attempting to intimidate the unrepresented party by telling him that this would adversely influence the jury, because jurors could "buy a house" with the amount of charges shown on the exhibit.

4) At no time did Ms. McEttrick advise Mr. Zawaideh that such conversations were contrary to the Michigan Rules of Professional Conduct, nor did she seek or obtain permission from Mr. Zawaideh's counsel for such conversations.

5) A substantial part of these discussions occurred in the presence of another Smith & Brink attorney—Nathan Tilden. At no time did Mr. Tilden object to these discussions, nor did he inform Mr. Zawaideh that his counsel should be present.

6) The details of these discussions are set forth in the Affidavit of Jalal Zawaideh. Ex. 1.

7) Defendants label this filing an "Emergency Motion," and respectfully request that this motion be heard on an expedited basis in light of the current discovery cutoff date of October 1, 2021 (*See* ECF No. 90, PageID.3434) and the numerous depositions to be taken over the next six weeks. Smith & Brink's continued representation of Plaintiffs in light of the improper direct communications with a represented party described in Ex. 1 will continue to significantly prejudice Defendants and will only be remedied by this Court expeditiously disqualifying the firm from this case. If the Court is not inclined to hear the entirety of this Motion on an expedited basis, Defendants respectfully request that as an alternative, this Court enter an immediate stay until the question of disqualification can be determined.

The undersigned certifies that he has conferred with counsel for the Plaintiffs pursuant to E.D. Mich. LR 7.1 regarding the subject matter of this motion but concurrence was denied.

For the reasons set forth in the accompanying brief, ZMC Pharmacy, L.L.C. and Jalal Zawaideh, PharmD respectfully request that this court enter an order immediately disqualifying Smith & Brink, granting such other sanctions as the Court deems just, and entering a stay of proceedings pending substitution of counsel.

 Dated:  August 16, 2021

Respectfully submitted,

**FINK BRESSACK**

By:    /s/ David H. Fink
David H. Fink (P28235)
Nathan J. Fink (P75185)
Morgan D. Schut (P81009)
*Attorneys for Defendants ZMC*
*Pharmacy, L.L.C. and Jalal Zawaideh*
38500 Woodward Ave., Ste. 350
Bloomfield Hills, MI 48304
Tel: (248) 971-2500
dfink@finkbressack.com
nfink@finkbressack.com
mschut@finkbressack.com

5

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ALLSTATE INSURANCE COMPANY;
ALLSTATE PROPERTY AND
CASUALTY INSURANCE COMPANY;
ALLSTATE FIRE AND CASUALTY          No: 19-cv-13721
INSURANCE COMPANY; ESURANCE        Hon. Linda V. Parker
INSURANCE COMPANY; and             Mag. Judge Elizabeth Stafford
ESURANCE PROPERTY AND
CASUALTY INSURANCE COMPANY,

                    Plaintiffs,

vs.

INSCRIBED PLLC; INTEGRATIVE
NEUROLOGY PLLC; DIAGNOSTIC
SOLUTIONS LLC; WOOK KIM, M.D.,
P.C. d/b/a FARMBROOK
INTERVENTIONAL PAIN & EMG;
DETROIT INSTITUTE OF PAIN
MUSCULOSKELETAL MEDICINE
PLLC; MICHIGAN INSTITUTE OF
MUSCULOSKELETAL MEDICINE
PLLC; ZMC PHARMACY, L.L.C.;
INTEGRA LAB MANAGEMENT
LLC; GIREESH VELUGUBANTI,
M.D.; ARVINDER DHILLON, M.D.;
BACHU ABRAHAM, M.D.; AND
JALAL ZAWAIDEH, R.PH.,

                    Defendants.


## DEFENDANTS ZMC PHARMACY, L.L.C. AND JALAL ZAWAIDEH'S BRIEF IN SUPPORT OF EMERGENCY MOTION TO DISQUALIFY SMITH & BRINK, PLLC, FOR SANCTIONS AND FOR STAY

# TABLE OF CONTENTS

**ISSUES PRESENTED**......................................................................... iii

**STATEMENT OF MOST APPROPRIATE AUTHORITIES**.......................... iv

**TABLE OF AUTHORITIES** ...................................................................v

**FACTUAL BACKGROUND** ....................................................................1

   **I.  Nature of the Case** .....................................................................1

   **II.  Plaintiffs' Counsel Improperly Engaged in Substantive Discussions With Mr. Zawaideh Outside the Presence of his Counsel** .............................2

   **III.  Undersigned Counsel's Due Diligence Before Filing This Motion** .........6

**STANDARD OF REVIEW** ....................................................................8

**ARGUMENT** .....................................................................................8

   **I.  Smith & Brink Should Be Disqualified Because Allstate's lead attorneys, Jacquelyn McEttrick and Nathan Tilden, Violated the Michigan Rules of Professional Conduct With Their Unauthorized *ex-parte* communications with Mr. Zawaideh about the substance of this case.** ......................................8

   **II.  By disclosing, multiple times, that if ZMC "would just bill less, then [ZMC] wouldn't be in this position" and that all Defendants needed to do was "bill less than the next guy, the highest biller is going to be on my client's radar", these attorneys are now necessary witnesses and therefore must be disqualified.** ...........................................................................15

   **III.  Requested Relief** .....................................................................18

**CONCLUSION** ..................................................................................19

**ISSUES PRESENTED**

1.  Should the Court disqualify Smith & Brink from representing Plaintiffs in this matter, after Smith & Brink attorneys Jacquelyn McEttrick and Nathan Tilden engaged in extensive substantive discussions with Jalal Zawaideh, an individually named defendant and the only managing member of Defendant ZMC Pharmacy, L.L.C. ("ZMC"), while counsel for Mr. Zawaideh and ZMC was not present?

Defendants Answer: Yes.


2.  Should the Court sanction Plaintiffs' attorneys for violating MRPC 4.2(a)?

Defendants Answer: Yes.


3. Should the Court enter an Order for Stay providing Plaintiffs a reasonable opportunity to retain new counsel in this matter?

Defendants Answer: Yes.

## STATEMENT OF MOST APPROPRIATE AUTHORITIES

Michigan Rule of Professional Conduct 3.7

Michigan Rule of Professional Conduct 4.2(a)

*DeBiasi v. Charter County of Wayne*, 284 F. Supp. 2d 760 (2003)

*Papanicolaou v. Chase Manhattan Bank, N.A.*, 720 F. Supp. 1080 (1989)

iv

# TABLE OF AUTHORITIES

**Cases**

*Board of Educ. v. Nyquist*, 590 F.2d 1241 (2d Cir. 1979) .......................................12

*DeBiasi v. Charter Cnty. of Wayne*, 284 F. Supp. 2d 760 (E.D. Mich. 2003) ....8, 16

*Eagle v. Hurley Med'l Center*, 292 F.R.D. 466 (2013) ...........................................10

*Hull v. Celanese Corp.*, 513 F.2d 568 (1975).........................................................12

*Hutto v. Charter Twp. of Clinton*, No. 12-CV-12880, 2014 WL 1405216 (E.D. Mich. Apr. 11, 2014) ..............................................................................................8

*In re Valley-Vulcan Mold Co.*, 237 B.R. 322 (B. A. P. 6th Cir. 1999).....................8

*Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Alticor, Inc.*, 472 F.3d 436 (6th Cir. 2007) ......................................................................................................................9

*Papanicolaou v. Chase Manhattan Bank, N.A.*, 720 F. Supp. 1080 (1989).... 11, 12, 13, 14

*Smith v. Kalamazoo Ophthalmology*, 322 F. Supp. 2d 883 (W.D. Mich. 2004).....10

*Valassis v. Samelson*, 143 F.R.D. 118 (E.D. Mich. 1992)......................................10

*Wright v. Group Health Hospital*, 103 Wash.2d 192, 691 P.2d 564 (1984) ...........10

**Other Authorities**

ABA Formal Opinion 108 (1934)............................................................................10

ABA Formal Opinion 91–359 ................................................................................10

**Rules**

E.D. Mich. L.R. 83.20(j)...........................................................................................9

Michigan Rule of Professional Conduct ("MRPC") 4.2(a) ......................................9

MRPC 3.7.................................................................................................................15

MRPC 4.2.................................................................................................. 9, 10, 15

MRPC 4.2(a) ...........................................................................................................14

MRPC 5.1(c) ...........................................................................................................14

MRPC 5.1(c)(1-2) ...................................................................................................14

## FACTUAL BACKGROUND

### I.         Nature of the Case

Plaintiffs Allstate Insurance Company, Allstate Fire and Casualty Insurance Company, Allstate Property and Casualty Insurance Company, Esurance Insurance Company, and Esurance Property and Casualty Insurance Company ("Allstate") filed this lawsuit against twelve individuals and entities, including Defendants ZMC Pharmacy, L.L.C. ("ZMC") and Jalal Zawaideh, PharmD, for their alleged involvement in a conspiracy to submit improper claims to Allstate under the Michigan No-Fault Act.  Allstate's claims against ZMC and Mr. Zawaideh include unjust enrichment, payment under mistake of fact, civil conspiracy, common law fraud, and various RICO violations.

ZMC and Mr. Zawaideh are the last remaining Defendants.  Typically, Allstate brings this type of RICO claim against medical providers and, during the course of litigation, Allstate stops making any payment on insurance claims until the providers settle.  This (presumably) forces the defendants to settle because, upon information and belief, no defending party in any of Allstate's RICO cases in the Eastern District of Michigan has had the financial wherewithal to match this multi-billion dollar insurance company.  Instead, these providers are small businesses forced to rely upon timely insurance payments to continue to provide medical care to their patients.

1

The case against ZMC and Mr. Zawaideh is unlike many other cases brought by Allstate.  ZMC and Mr. Zawaideh do not process No-Fault claims as a majority, or even a significant, part of their business.  Also, ZMC and Mr. Zawaideh have no significant ties with any of the co-defendants, other than apparently providing care to approximately 130 of the same patients who claim medical care coverage under the Michigan No-Fault Act at issue in this case.  Out of ZMC's 25,097 patient records, 130 patients represent approximately 0.5% of ZMC's business.

Because ZMC and Mr. Zawaideh have refused to settle on Allstate's terms, Allstate has apparently decided to attempt to bury ZMC and Mr. Zawaideh (and Mr. Zawaideh's family, who are unrelated to this case) with improper and unduly burdensome discovery requests and to needlessly increase litigation costs (ECF No. 105).  Now Allstate's counsel has engaged in indefensible communications with Defendant Mr. Zawaideh while his attorneys were not present.

## II.   Plaintiffs' Counsel Improperly Engaged in Substantive Discussions With Mr. Zawaideh Outside the Presence of his Counsel

On August 5, 2021, Mr. Zawaideh attended the deposition of ZMC employee Jla Monet Devereaux, which (notwithstanding a late request for a different venue) occurred at Plaintiffs' counsel's offices in Livonia, Michigan. Mr. Zawaideh was present with one attorney from Fink Bressack, Morgan D. Schut.  Smith & Brink attorneys Jacquelyn McEttrick and Nathan Tilden were present for Allstate.  Shari Pavlovich was the court reporter.

2

Before the deposition began, Ms. Schut, Ms. McEttrick and Mr. Tilden were seated in a conference room discussing discovery.  Mr. Zawaideh arrived for the deposition and sat down in the conference room.  Ms. Schut asked the attorneys to move to a separate conference room to discuss the items privately, without the direct involvement of her client. The attorneys moved to another room and resumed the discussion.  Once they finished, Ms. Schut met briefly with the deponent, Jla Monet Devereaux in a conference room.

While Ms. Schut was in a private conference room with Ms. Devereaux, Mr. Zawaideh was sitting in the lobby of Smith & Brink. (Ex. 1, Affidavit of Mr. Zawaideh, ¶ 6). Then, without seeking permission from his attorney, Ms. McEttrick engaged in direct discussions with Mr. Zawaideh, telling Mr. Zawaideh, among other things, that Allstate's expert report was due later that day and that Mr. Zawaideh was "not going to be happy with" her next time he saw her.  (Ex. 1, ¶ 7). Ms. McEttrick told Mr. Zawaideh that the expert was affiliated with Tufts and Harvard. (*Id*.)  She bragged that this "Tufts/Harvard" expert was going to be a strong witness against ZMC. (Ex. 1, ¶ 8). Ms. McEttrick asked Mr. Zawaideh, "are you planning on attending all of the depositions?" (Ex. 1, ¶ 9). And Zawaideh said he was. (*Id*.) Mr. Zawaideh asked why Allstate would not just use Mitchell AutoRx for expert testimony, because Allstate uses them on a daily basis, and Ms. McEttrick laughed and said, "yeah, that's part of the problem." (Ex. 1, ¶ 10). Once Ms. Schut

3

left the private conference with the deponent, Mr. Zawaideh and the attorneys all went to another room, where the deposition was conducted with the court reporter present.  (Ex. 1, ¶ 11).

After Ms. McEttrick concluded her direct examination of Ms. Devereaux for the day, the parties took a break. According to the deposition transcript, this break lasted from 3:50 p.m. to 4:09 p.m. (Ex. 2, Devereaux Dep. 128). Ms. Schut stepped out of the deposition conference room to speak with Mr. Zawaideh first, separately. (Ex. 1, ¶ 12).  She then met with privately with the deponent, while Mr. Zawaideh returned to the deposition room.  (*Id.*)

While Ms. Schut was in a different conference room with Ms. Devereaux, Ms. McEttrick, Mr. Tilden, the court reporter and Mr. Zawaideh were together in the deposition room.  (Ex. 1, ¶ 13).  While sitting with Mr. Zawaideh, Ms. McEttrick brought up a settlement agreement in another case and noted that "all of these No-Fault cases want to settle now that there is a new fee schedule." (Ex. 1, ¶ 14). Ms. McEttrick then asked Mr. Zawaideh, "are you going to continue billing No-Fault with the new fee schedule?" (*Id.*) Mr. Zawaideh replied that yes, he was. (*Id.*)  He said, it was business as usual for him. (*Id.*)  Mr. Zawaideh stated that the new fee schedule was in line with one of the exhibits (Exhibit B) that Ms. McEttrick had introduced during Ms. Devereaux's deposition. (Ex. 1, ¶ 15).  Ms. McEttrick responded to his comment by saying that the new fee schedule does not apply in this

4

case. (Ex. 1, ¶ 16). Ms. McEttrick also told him, more than once, "why wouldn't you just bill what Medicare's fee schedule is?" (Ex. 1, ¶ 17).  He then explained to her the extent the services provided by ZMC in an effort to explain to her the reasonableness of ZMC's billing rates.  (*Id.*)

Ms. McEttrick laughed and told Mr. Zawaideh that "all [ZMC] need[s] to do is bill less than the next provider so you wouldn't be on my client's radar." (Ex. 1, ¶ 18).  Ms. McEttrick then brought up deposition Exhibit B again and said that if ZMC would have just billed in line with Medicare, ZMC could have been paid on the bill in Exhibit B.  (Ex. 1, ¶ 19).  Ms. McEttrick also said that if this case goes to trial, she would show deposition Exhibit B to the jury and that the jurors could "buy a house" with the amount of money charged in Exhibit B and that the jury would scoff at ZMC's bill.  (*Id.*)  Mr. Zawaideh again explained his experience with Allstate to Ms. McEttrick and the details that support why ZMC believes it charges reasonable rates in billing its No-Fault claims. (Ex. 1, ¶ 20).  Mr. Zawaideh also said that there is always the possibility that a case gets dismissed and Ms. McEttrick laughed and said "we know that isn't going to happen."   (Ex. 1, ¶ 21).

Ms. McEttrick also said, "if you just bill less, then you wouldn't be in this position" and that ZMC just needed to "bill less than the next guy, the highest biller is going to be on my client's radar." (Ex. 1, ¶¶ 22-23). According to Mr. Zawaideh, Mr. Tilden sat next to Ms. McEttrick during this conversation. (Ex. 1, ¶ 26).

### III.   Undersigned Counsel's Due Diligence Before Filing This Motion

Undersigned counsel recognizes the seriousness of these allegations and would not bring them without first conducting appropriate, objective due diligence. Before filing this motion, undersigned counsel sought concurrence from Smith & Brink. A "meet and confer" was conducted to allow Allstate's counsel to respond to these allegations. During that "meet and confer," Ms. McEttrick acknowledged nothing. She flatly denied having any substantive discussions with Mr. Zawaideh. She denied any discussion about Allstate's expert. She denied any discussions about ZMC's billing rates. She denied any discussions about the deposition exhibit. And, she denied any discussion about how a jury would respond or that a juror could "buy a house" with the amounts shown on Deposition Exhibit B. She postulated that Mr. Zawaideh may have inferred this information from the deposition of Ms. Devereaux, which he had just observed.[1] Unfortunately, Ms. McEttrick's denials were quickly disproven by Defendants' investigation. Undersigned counsel's due diligence included the following:

- Multiple detailed interviews of Mr. Zawaideh regarding his interactions with Ms. McEttrick and Mr. Tilden, assessing his ability to consistently recall the relevant details of the conversations.

---

[1] The "meet and confer" was conducted as a Zoom conference; a court reporter was present and transcribed the conference. That transcript is available at the Court's request.

- A crosscheck of the information provided by Mr. Zawaideh against the facts as they developed. Mr. Zawaideh told Ms. Schut about these conversations immediately after the deposition. More than an hour later, Smith & Brink served Allstate's expert report. Before receiving that report, there was no way for Mr. Zawaideh or his attorneys to know anything about Allstate's expert. In fact, that expert *is* affiliated with Tufts and Harvard, and his inappropriately vituperative report would offend any litigant and make that litigant "less happy" to see opposing counsel in the future.

- An expedited transcript of the deposition of Ms. Devereaux was closely reviewed, and that transcript revealed no reference to billing less than the next highest biller, no reference to jurors or the cost of houses, and, of course, no reference to an expert witness attending Tufts or Harvard.

- After the "meet and confer," undersigned counsel consulted with the neutral court reporter who was present during the conversation during the deposition break. The court reporter confirmed that the discussions, including the discussion about jurors being able to "buy a house" with the amounts charged in Exhibit B and the discussion about charging less than the next highest biller, had occurred in her presence, and that Ms. Schut was not in the room during these discussions.

7

There can be no justification for these improper discussions, so Ms. McEttrick offers a blanket denial, but that denial does not hold up to any serious investigation.

## STANDARD OF REVIEW

"A motion to disqualify counsel is the proper method for a party to bring an alleged breach of ethical duties to the court's attention." *DeBiasi v. Charter Cnty. of Wayne*, 284 F. Supp. 2d 760, 770 (E.D. Mich. 2003) (citations omitted). Disqualification is appropriate when there is a "reasonable possibility that some specifically identifiable impropriety actually occurred, and where the public interest in requiring professional conduct by an attorney outweighs the competing interest of allowing a party to retain counsel of his choice." *DeBiasi*, 284 F. Supp. 2d at 770. The movant bears the burden of proving the grounds for disqualification of counsel. *In re Valley-Vulcan Mold Co.*, 237 B.R. 322, 337 (B. A. P. 6th Cir. 1999) (citation omitted); *Hutto v. Charter Twp. of Clinton*, No. 12-CV-12880, 2014 WL 1405216, at *1 (E.D. Mich. Apr. 11, 2014) (citation omitted).

## ARGUMENT

**I.     Smith & Brink Should Be Disqualified Because Allstate's lead attorneys, Jacquelyn McEttrick and Nathan Tilden, Violated the Michigan Rules of Professional Conduct With Their Unauthorized *ex-parte* communications with Mr. Zawaideh about the substance of this case.**

With their communications with Mr. Zawaideh on August 5, Ms. McEttrick and Mr. Tilden flagrantly violated a fundamental ethical rule all attorneys in

Michigan must follow—the rule against opposing counsel engaging in substantive communications with represented parties. According to this Court's Local Rules, "[a]n attorney admitted to the bar of this court…is subject to the [Michigan] Rules of Professional Conduct." E.D. Mich. L.R. 83.20(j). *See also Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Alticor, Inc*., 472 F.3d 436, 438 (6th Cir. 2007) (applying the Michigan Rules of Professional Conduct to regulate the conduct of attorneys in federal courts).

Michigan Rule of Professional Conduct ("MRPC") 4.2(a) provides:

> In representing a client, a lawyer shall not communicate about the subject of the representation with a person whom the lawyer knows to be represented in the matter by another lawyer, unless the lawyer has the consent of the other lawyer or is authorized by law to do so.

"The purpose of [MRPC 4.2[2]] is to preserve the efficacy and sanctity of the attorney-client relationship. Specifically, it is intended to prevent one party's attorney from exploiting the lack of legal knowledge of a momentarily uncounseled

---

[2] *Valassis* references the Model Rules of Professional Conduct. American Bar Association Model Rule of Professional Conduct 4.2 is substantively similar to MRPC 4.2, and provides "In representing a client, a lawyer shall not communicate about the subject of the representation with a person the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized to do so by law or a court order." And, before its Preamble, the Michigan Rules of Professional Conduct provide: "[t]he rules and comments were largely drawn from the American Bar Association's Model Rules of Professional Conduct. Prior to the submission of those Model Rules to the Michigan Supreme Court, the State Bar of Michigan made minor changes in the rules and the comments to conform them to Michigan law and preferred practice." MRPC 1.0 cmt.

adverse party." *Valassis v. Samelson*, 143 F.R.D. 118, 120 (E.D. Mich. 1992) (alteration in original) (citations omitted). Likewise, "[c]lients retain counsel to overcome their lack of legal knowledge. Unrestricted *ex parte* contact might 'neutralize this protection that the adverse party has sought to secure by employing an attorney.'" *Id.* (citation omitted). As noted in American Bar Association Formal Opinion 91-359, "the purposes of the rule against ex parte communications with represented parties are preserving the proper functioning of the legal system and shielding the adverse party from improper approaches." ABA Formal Opinion 91–359 (quoting *Wright v. Group Health Hospital*, 103 Wash.2d 192, 691 P.2d 564, 576 (1984) (citing ABA Formal Opinion 108 (1934)).

MRPC 4.2: "(1) prevent[s] an attorney from circumventing opposing counsel in order to obtain statements from the adversary; (2) [] preserve[s] the integrity of the attorney-client relationship; (3) [] prevent[s] the inadvertent disclosure of privileged information; and (4) [] facilitate[s] settlement by involving lawyers in the negotiation process." *Eagle v. Hurley Med'l Center*, 292 F.R.D. 466, 478 (2013), citing *Smith v. Kalamazoo Ophthalmology*, 322 F. Supp. 2d 883, 888 (W.D. Mich. 2004). Moreover, attorneys have a basic "responsibility to refrain from inquiring into areas that may be subject to the attorney-client privilege or the work product doctrine." *Kalamazoo Ophthalmology*, *supra*, 322 F. Supp. 2d. at 890 (citation omitted).

10

As soon as Allstate's counsel had the chance to talk to Mr. Zawaideh without his attorneys, they used that opportunity to engage in substantive conversations about this case, including discussion about Allstate's expert witness and forthcoming expert report, details related to the reasonableness of ZMC's billing rates in dispute in this case, and discussions about an exhibit used at the August 5 deposition. They even made claims about how jurors could be prejudiced against Mr. Zawaideh. It is difficult to imagine a more egregious scenario.   Allstate's lawyers did not even attempt to avoid the appearance of impropriety; their breach of ethics was blatant.

Other courts faced with similar unethical conduct have disqualified attorneys and their firms. In *Papanicolaou v. Chase Manhattan Bank, N.A.*, 720 F. Supp. 1080 (1989), the plaintiff, who was represented by counsel, and defendant's counsel "exchanged pleasantries" in defendant's counsel's reception area outside the presence of the plaintiff's attorney after a deposition had occurred earlier that day. *Id*. at 1081. "[T]he plaintiff asked the [defendant's attorney] how the case was going. The conversation immediately became sensitive, and the plaintiff suggested the two go to a conference room.  The [defendant's attorney] agreed." *Id*. at 1081-82.  During the conversation, the plaintiff and the defendant's attorney "argued the merits of the case at length, [ ] the plaintiff showed the [defendant's attorney] a certain document meant to refute key defense testimony, and [ ] the [defendant's attorney] disparaged the competence of the plaintiff's attorneys." *Id*. at 1082. After the plaintiff's attorney

11

became aware of this violation of Rule 4.2, the plaintiff moved to disqualify defendant's counsel and his firm. The court granted the plaintiff's request and disqualified defendant's counsel and his law firm "[i]n order to protect the integrity" of the case. *Id.* at 1087-88. The court noted that "a district judge should disqualify the offending counsel when the integrity of the adversarial process is at stake." *Id.* at 1083, citing *Board of Educ. v. Nyquist*, 590 F.2d 1241, 1246 (2d Cir. 1979). Further, the court noted that

> [C]ourts must remember that [t]he preservation of public trust both in the scrupulous administration of justice and in the integrity of the bar is paramount. Recognizably important [is the plaintiff's] right to counsel of her choice… [That] consideration [ ] must yield, however, to considerations of ethics which run to the very integrity of our judicial process.

*Papanicolaou*, F. Supp. at 1083, citing *Hull v. Celanese Corp*., 513 F.2d 568, 572 (1975). Further, "any doubt is to be resolved in favor of disqualification." *Id*. at 1083 (citations omitted).

Because "a violation of professional ethics rules does not alone trigger disqualification[,]" the court also analyzed "the prejudice at trial that might result from the attorney's unethical act." *Id*. (citations omitted). Plaintiff "pointed to several examples of interpretation, analysis, and strategy during the meeting with defendant's counsel." *Id.* at 1084. This is eerily similar to the August 5 interactions between Allstate's counsel and Mr. Zawaideh.

12

As the court held in *Papanicolaou*, "[w]here the parley's substance went to the nub of the lawsuit . . . the attorney had to be disqualified to protect [the adverse party] from any unfair advantage [the attorney] *might* have achieved by the improper meeting." *Id*. at 1085 (internal citations omitted) (emphasis original). Additionally, "[Rule 4.2] quite clearly puts the responsibility on the attorney to avoid such meetings, and the plaintiff's accomplishments do not relieve the [defendant's attorney] of his obligation to comply with the rules of ethics." *Id*. at 1085 (internal citations omitted).

Here, Allstate's lead attorney, Ms. McEttrick (with Mr. Tilden in the room) engaged in an extensive, substantive conversation with Mr. Zawaideh, a non-lawyer party, outside the presence of his counsel. During that conversation, Allstate's counsel and a represented party argued the merits of the case. (Ex. 1, ¶¶ 15, 17, 19-24). Ms. McEttrick told Mr. Zawaideh, multiple times, that if he had just billed less, then he would not be in this lawsuit. (Ex. 1, ¶ 22). Ms. McEttrick's discussion about the underlying claims in this litigation, her intimidating assertions that Mr. Zawaideh would not be in this place if he would just "bill less," and her claims about how a jury could be prejudiced by an exhibit undermine the integrity of the judicial process.

Ms. McEttrick did not advise Mr. Zawaideh that he should have counsel present for substantive discussions about the ongoing litigation nor did she mention the impropriety of discussing the substance of the case without his counsel present.

13

(Ex. 1, ¶ 28).  By discussing his interpretation, analysis and strategy, Allstate has gained an unfair advantage over Mr. Zawaideh and ZMC.  Smith & Brink should be disqualified.

Mr. Tilden's actions also violated MRPC 5.1(c).  Mr. Tilden, as a shareholder of Smith & Brink, is "responsible for another lawyer's violation of the rules of professional conduct if . . . the lawyer is a partner in the law firm in which the other lawyer practices . . . and . . . *with knowledge of the relevant facts and the specific conduct, ratifies the conduct involved . . . or knows of the conduct at a time when its consequences can be avoided or mitigated but fails to take reasonable remedial action.*"  MRPC 5.1(c)(1-2) (emphasis added).  Mr. Tilden's failure to speak up and stop Ms. McEttrick from further questioning Mr. Zawaideh and his failure to advise Mr. Zawaideh of his rights are inconsistent with Mr. Tilden's obligations under MRPC 5.1(c) and MRPC 4.2(a). As the *Papanicolaou* court noted, "[Rule 4.2] quite clearly puts the responsibility on the attorney to avoid such meetings[.]"  *Id*. at 1085.

The disqualifying actions of Ms. McEttrick and Mr. Tilden are imputed to the entire firm of Smith & Brink.  "[W]hen one attorney is infected with privileged information, the other attorneys at the firm are presumed to become contaminated and must also be disqualified." *Papanicolaou*, 720 F. Supp. at 1086.  It is reasonable to assume that all attorneys at Smith & Brink have knowledge of the information unethically obtained by shareholders Ms. McEttrick and Mr. Tilden during Ms.

14

McEttrick's *ex-parte* communications with Mr. Zawaideh. The Court should presume that all attorneys at Smith & Brink are tainted with the fruit of this poisonous tree. *Id*. Smith & Brink can't unring the bell. All Smith & Brink attorneys should be disqualified under MRPC 4.2(a).

**II.** **By disclosing, multiple times, that if ZMC "would just bill less, then [ZMC] wouldn't be in this position" and that all Defendants needed to do was "bill less than the next guy, the highest biller is going to be on my client's radar", these attorneys are now necessary witnesses and therefore must be disqualified.**

MRPC 3.7 provides, in pertinent part:

(a) A lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness except where: (1) the testimony relates to an uncontested issue; (2) the testimony relates to the nature and value of legal services rendered in the case; or (3) disqualification of the lawyer would work substantial hardship on the client.

Because of the August 5 communications, Ms. McEttrick and Mr. Tidlen have now become central witnesses in this case, both of whom will need to be deposed by Defendants and called as witnesses at trial. Ms. McEttrick revealed Allstate's policy of attacking providers not on the basis of the reasonableness of their fees or of the actual existence of a RICO conspiracy, but instead to identify and go after the highest biller. This revelation destroys the underpinnings of Allstate's claims. Therefore, in addition to the required disqualification under MRPC 4.2, these attorneys must also be disqualified under MRPC 3.7.

Case law from this District supports disqualification. For example, in *DeBiasi v. Charter County of Wayne*, Mr. Jamil Akhtar was counsel for the plaintiff in a reverse race discrimination action.   284 F. Supp. 2d at 761.   Mr. Akhtar had represented the union associated with defendants and, through discovery, it appeared that the "confidential/privileged information that he apparently obtained in that capacity (and not through discovery in [the pending] action)" may make him a necessary fact witness during in the pending action.   *Id*.   The defendants filed a motion to disqualify Mr. Akhtar pursuant to MRPC 3.7.   *Id*.

Mr. Akhtar became a witness to substantive facts in support of his client in the pending action, and, by doing so, Mr. Akhtar "placed himself in the position of being a witness for his client."   *Id*. at 771.   And "[a]s a fact witness, [d]efendants have the right to cross-examine Mr. Akhtar as to the facts he present[ed] in the affidavit."   *Id*. at 772.   Mr. Akhtar became a fact witness "as to the intent of the parties and the understanding of the final language of the relevant contract provisions." *DeBiasi*, *supra*, 284 F. Supp. 2d. at 772.   Mr. "Akhtar's testimony as to the interpretation of the contract could support [d]efendants' argument that they acted in compliance with the contractual provisions when the decision was made to promote [an employee]." *Id*.

Similarly, Ms. McEttrick's communications with Mr. Zawaideh on August 5 have made her and Mr. Tilden witnesses in this case. On August 5, in her

16

unauthorized communications with Mr. Zawaideh, Ms. McEttrick repeatedly undermined Allstate's claims against Mr. Zawaideh and ZMC. (Ex. 1, ¶¶ 17, 18, 22, 23). Ms. McEttrick told Mr. Zawaideh that "if you just bill less, then you wouldn't be in this position." (Ex. 1, ¶ 22). She also told Mr. Zawaideh that all he needed to do was "bill less than the next guy, the highest biller is going to be on my client's radar." (Ex. 1, ¶ 23). These statements run directly counter to the broad (albeit baseless) allegations in Allstate's Complaint and other filings in this case of an alleged criminal conspiracy to defraud Allstate. Allstate has alleged 21 causes of action against ZMC and Zawaideh: sixteen claims under RICO (Counts I-XVI); Common Law Fraud (Count XVII); Civil Conspiracy (Count XVIII); Payment Under Mistake of Fact (Count XIX); Unjust Enrichment (Count XX), and Declaratory Relief (Count XXI). *See* ECF No. 1. In addition to the allegations contained in its 788-page Complaint, Allstate has repeatedly taken the opportunity to attempt to tarnish Mr. Zawaideh and ZMC's business reputation by alleging that they are part of a criminal investigation or that his and ZMC's actions have contributed to the national opioid epidemic. *See* ECF No. 48, PageID.2071; ECF No. 96, PageID.3463-64. Ms. McEttrick's statements to Mr. Zawaideh that he

should just "bill less" to stay off her "client's radar," will now be a central part of Defendants' defense at trial.[3]

Ms. McEttrick's testimony is also necessary for impeachment purposes. It is reasonable to assume that Ms. McEttrick's statements will "conflict with that of other witnesses." MRPC 3.7 cmt. Thus, her testimony is important regarding ZMC and Mr. Zawaideh's affirmative defenses. It is up to the trier of fact to weigh the credibility of the witnesses when determining the ultimate issues in this case. ZMC and Mr. Zawaideh should be able to present all of the evidence relevant to their affirmative defenses and should not be precluded from presenting a full defense. Through her misconduct, Ms. McEttrick made herself and Mr. Tilden fact witnesses.

## III.    Requested Relief

Based on Ms. McEttrick and Mr. Tilden's misconduct outlined above, this Court should enter an order immediately disqualifying Smith & Brink. This Court should also award costs to ZMC and Mr. Zawaideh for having to bring this motion. The costs and fees should include reasonable attorney fees for preparing this motion and the August 10, 2021 meet and confer; the cost of the deposition transcript of Ms.

---

[3] ZMC and Mr. Zawaideh have asserted several affirmative defenses in this case, including: fraud; illegality; laches; unclean hands; and that Plaintiffs' damages resulted from their own negligent, fraudulent or improper actions. *See* ECF No. 62, PageID.2864-65.

Devereaux to cross-reference McEttrick's allegations during the August 10 meet and confer; and the cost of the transcript of the meet and confer held on August 10, 2021.

## CONCLUSION

There are no subtleties here. These facts would not work for a law school professional responsibility final examination; the answer is too obvious.  Allstate's counsel clearly violated the Rules of Professional Conduct and gained an unfair advantage in this litigation.  Smith & Brink should be disqualified.

Dated:  August 16, 2021                                    Respectfully submitted,

**FINK BRESSACK**

By:    /s/ David H. Fink
David H. Fink (P28235)
Nathan J. Fink (P75185)
Morgan D. Schut (P81009)
*Attorneys for Defendants ZMC*
*Pharmacy, L.L.C. and Jalal Zawaideh*
38500 Woodward Ave., Ste. 350
Bloomfield Hills, MI 48304
Tel: (248) 971-2500
dfink@finkbressack.com
nfink@finkbressack.com
mschut@finkbressack.com

19

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 16, 2021 I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send such notification to all ECF attorneys of record.

**FINK BRESSACK**

By:    /s/ Morgan D. Schut
       Morgan D. Schut (P81009)
       38500 Woodward Ave.; Suite 350
       Bloomfield Hills, Michigan 48304
       Tel: (248) 971-2500
       mschut@finkbressack.com