# EXHIBIT 1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ALLSTATE INSURANCE COMPANY;
ALLSTATE PROPERTY AND
CASUALTY INSURANCE COMPANY;
ALLSTATE FIRE AND CASUALTY
INSURANCE COMPANY; ESURANCE
INSURANCE COMPANY; and
ESURANCE PROPERTY AND
CASUALTY INSURANCE COMPANY,

No: 19-cv-13721
Hon. Linda V. Parker
Mag. Judge Elizabeth Stafford

Plaintiffs,

vs.

INSCRIBED PLLC; INTEGRATIVE
NEUROLOGY PLLC; DIAGNOSTIC
SOLUTIONS LLC; WOOK KIM, M.D.,
P.C. d/b/a FARMBROOK
INTERVENTIONAL PAIN & EMG;
DETROIT INSTITUTE OF PAIN
MUSCULOSKELETAL MEDICINE
PLLC; MICHIGAN INSTITUTE OF
MUSCULOSKELETAL MEDICINE
PLLC; ZMC PHARMACY, L.L.C.;
INTEGRA LAB MANAGEMENT
LLC; GIREESH VELUGUBANTI,
M.D.; ARVINDER DHILLON, M.D.;
BACHU ABRAHAM, M.D.; AND
JALAL ZAWAIDEH, R.PH.,

Defendants.


## AFFIDAVIT OF JALAL ZAWAIDEH, PHARMD

1

State of Michigan          )
                           ) ss.
County of Oakland          )

Now comes Jalal Zawaideh, R.Ph., and after being duly sworn, states the following under oath and under penalty of perjury.

1. I, Jalal Zawaideh, am an adult, and I am making this Affidavit based upon personal knowledge.  I am competent to testify at trial if called upon to do so.

2. I am a licensed pharmacist and am the managing member (90% owner and day-to-day operations manager) of ZMC Pharmacy, L.L.C. ("ZMC").

3. On August 5, 2021, I appeared at the deposition of ZMC employee Jla Monet Devereaux, which was noticed by Plaintiffs and took place at Smith & Brink's Livonia office located at 38777 Six Mile Road, Suite 314, Livonia, MI 48152.

4. Fink Bressack has been representing both ZMC Pharmacy, LLC, and me in the above-referenced lawsuit.

5. Morgan D. Schut, a Fink Bressack attorney, was present for the deposition.

6. At one point before the deposition began, Ms. Schut was in a private conference room with Ms. Devereaux and I was seated in the Smith & Brink lobby.

7. While I was sitting in the lobby without counsel, Plaintiffs' attorney Jacquelyn McEttrick told me that Allstate's expert witness report was due that same day (August 5) and that we'd be seeing it later.  Ms. McEttrick said "you are not going to like the report", said something about their expert being affiliated with Harvard and Tufts and said "you are not going to be happy with me the next time you see me."

8. Before Ms. McEttrick discussed Allstate's expert with me, I had no information about their expert, and there was no way for me to know that their expert was affiliated with Harvard or Tufts.

9. Ms. McEttrick also asked me, "are you planning on attending all of the depositions?"  I told her that I was planning on it.

10. I asked about why Mitchell AutoRx was not being used as an expert for Allstate, when Allstate uses them on a daily basis, and Ms. McEttrick laughed and said, "yeah, that's part of the problem."

11. After that conversation, the deposition was conducted, with all attorneys and a court reporter present.

12. After Ms. McEttrick finished her direct examination of Ms. Devereaux, Ms. Schut took a break off the record to speak with me, alone, and then with Ms. Devereaux, alone, in a separate conference room.

13. While Ms. Schut was in a private meeting with Ms. Devereaux, Ms. McEttrick and Nathan Tilden were in the conference room with the court reporter, Shari Pavlovich, and me.

14. Ms. McEttrick made a comment about waiting for a settlement agreement in another case and either Ms. McEttrick or Mr. Tilden commented to the effect that "all of the parties in the No-Fault cases want to settle because of the new fee schedule going into effect." Ms. McEttrick then asked me, "do you still plan on billing no-fault under the new fee schedule?" I told her that I did, and that it will continue to be business as usual for me.

15. I said that the new fee schedule was in line with one of the exhibits (Exhibit B) that Ms. McEttrick had introduced during Ms. Devereaux's deposition.

16. Ms. McEttrick responded to my comment by saying that the new fee schedule does not apply in this case.

17. Ms. McEttrick also said to me, more than once, "Why wouldn't you just bill what Medicare's fee schedule is?" I then explained to her the extent of what ZMC does and the services that we provide in an effort to explain to her the reasonableness of our billing rates.

18. Ms. McEttrick laughed and said, "all you need to do is bill less than the next provider so you wouldn't be on my client's radar."

4

19. Ms. McEttrick then brought up Exhibit B again and said that if I would have just billed in line with Medicare, I could have been paid on the bill in Exhibit B. She said that if this case goes to trial she would bring up Exhibit B in front of a jury and that the jurors could "buy a house" with the amount of money charged in Exhibit B and that the jury would scoff at ZMC's bill.

20. I then, again, explained my experience with Allstate and the details that support why ZMC believes it charges reasonable rates in billing its No-Fault claims.

21. In explaining my position, I also said that there is always the possibility that a case gets dismissed, and Ms. McEttrick laughed and said "we know that isn't going to happen," referring to this RICO case.

22. I told her that I meant state claims, and she then said, "if you just bill less, then you wouldn't be in this position."

23. Ms. McEttrick said, again, that all I needed to do was "bill less than the next guy, the highest biller is going to be on my client's radar."

24. I told her, again, that my billing process was very much in line with the new fee schedule.

25. This conversation lasted for about 10 minutes.

26. Mr. Tilden sat next to Ms. McEttrick during the conversation.

27. I am not an attorney, and, before these discussions occurred, I was not aware of any ethical rule prohibiting a lawyer from speaking to an adverse represented party about the substance of pending litigation without that party's counsel being present.

28. Ms. McEttrick never advised me that I should have counsel present and she never mentioned anything to me about legal ethics or about the impropriety of her speaking to me about the substance of this case.

_____
Jalal Zawaideh, PharmD

State of Michigan      )
                       ) SS.
County of Oakland      )

    On the 13th day of August, 2021, before me, a notary public, personally appeared Jalal Zawaideh, who, being first duly sworn, did state that he has executed the foregoing document as his free act and deed.

_____

KIMBERLY S. HUNT
NOTARY PUBLIC, STATE OF MI
COUNTY OF MACOMB
MY COMMISSION EXPIRES Aug 8, 2024
ACTING IN COUNTY OF OAKLAND

Notary Public, Macomb County, MI
Acting in Oakland County, MI
My commission expires: _____