UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ALLSTATE INSURANCE CO.,
*et al*.,

                    Plaintiffs,         Civil Action No.: 19-13721
                                        Honorable Linda V. Parker
v.                                      Magistrate Judge Elizabeth A. Stafford

INSCRIBED PLLC, *et al*.,

                    Defendant.
_____/

## AMENDED OPINION AND ORDER GRANTING EMERGENCY MOTION TO DISQUALIFY COUNSEL [ECF NO. 110][1]

### I.    Introduction

Defendants ZMC Pharmacy, LLC, and Jalal Zawaideh (collectively called "ZMC") move to disqualify plaintiff Allstate Insurance Company's counsel, Jacquelyn McEttrick, Nathan Tilden, and their firm, Smith & Brink. ECF No. 110.[2]  ZMC asserts that McEttrick and Tilden violated Michigan

_____

[1] This amended opinion replaces the one filed on November 12, 2021. ECF No. 133.

[2] The Honorable Linda V. Parker referred the motion to the undersigned for hearing and determination under 28 U.S.C. § 636(b)(1)(A).  ECF No. 111. Judge Parker referral of the motion for hearing and determination was proper, as motions to disqualify are non-dispositive.  *DeBiasi v. Charter Cty. of Wayne*, 284 F. Supp. 2d 760, 768 (E.D. Mich. 2003).

Rules of Professional Conduct (M.R.P.C.) 4.2 and 5.1 by engaging in substantive discussions about the case with Zawaideh outside the presence of his counsel.

After Smith & Brink filed a brief in opposition, the Court held an evidentiary hearing on August 31, 2021. ECF No. 118; ECF No. 129.[3] The evidence shows that Smith & Brink attorneys engaged in unethical conduct and that McEttrick lied under oath. The Court will thus grant ZMC's motion to disqualify Smith & Brink and forward this opinion to the Chief Judge of this district and to the Michigan Attorney Grievance Commission.[4]

## II. Background

### A. Zawaideh's Allegations

Zawaideh testified at the evidentiary hearing that McEttrick twice engaged him in substantive discussions about the case outside the presence of his counsel on August 5, 2021, the day Allstate deposed ZMC's employee J'la Monet Devereaux. ECF No. 129, PageID.4505. Zawaideh testified that McEttrick asked him if he intended to attend all the

---

[3] The parties filed supplemental briefs after the hearing. ECF No. 129; ECF No. 130; ECF No. 131; ECF No. 132.

[4] ZMC also contends that Allstate's counsel should be disqualified under the "advocate-witness" rule, M.R.P.C. 3.7, because ZMC may now call McEttrick as a witness at trial. Because the Court will disqualify Smith & Brink on other grounds, it will not address the Rule 3.7 allegations.

depositions for the case; he said that he did.  *Id.*, PageID.4506.  She then volunteered that Allstate's expert witness report was due that day and that Zawaideh would not be happy with the report, or with her, after he read it. *Id.*; PageID.4507.   Zawaideh asked if Allstate had engaged an expert it used in earlier state court litigation, and McEttrick replied that Allstate was using a different expert who is affiliated with Tufts and Harvard Universities. *Id.*; PageID.4507-4508.  Zawaideh said that he had heard nothing about Allstate's expert before that conversation.  *Id.*, PageID.4509.

According to ZMC, McEttrick struck up another conversation with Zawaideh after his attorney and Devereaux left the deposition room during a break.  ECF No. 129, PageID.4514.  With Tilden and the court reporter present, McEttrick asked Zawaideh if he planned to continue to provide services under the new no-fault fee schedule.  *Id.*; PageID.4517.  He replied that he did plan to do so and that his billing rates were in line with the new fee schedule.  *Id.*  Zawaideh says that McEttrick then suggested that he simply bill according to the Medicare fee schedule, and less than competing providers, to stay off Allstate's radar.  *Id.*, PageID.4518.

Zawaideh testified that he and McEttrick then discussed an exhibit to the Devereaux deposition that included a patient's billing record.  *Id.*, PageID.4521.  Zawaideh said that McEttrick commented that a jury would

3

be shocked by the $200,000 bill because "they could purchase a house with that kind of money." *Id*.  Zawaideh testified that he challenged McEttrick's advice that he simply bill Allstate according to the Medicare fee schedule to be assured payment. *Id.*, PageID.4521-4525.  He commented that "the case could be dismissed." *Id.*, PageID.4523.  Zawaideh said that he was referring to a typical state court case involving first-party insurance benefits, but McEttrick thought he was saying that this federal lawsuit could be dismissed. *Id.*, PageID.4523-4524.  Zawaideh testified that McEttrick laughed and said that "this case is not getting dismissed." *Id.*, PageID.4524.

### B. ZMC's Alleged Corroboration of Zawaideh's Claims

ZMC is represented by attorneys from Fink Bressack, including David Fink and Morgan Schut.  Schut was handling the Devereaux deposition, which ended at 4:09 p.m.  ECF No. 110-3, PageID.3916.  Shortly after the deposition, Zawaideh told Schut about his discussions with McEttrick, and Schut then sent Zawaideh a text message at 4:24 p.m. with these bullet

points outlining statements Zawaideh attributed to McEttrick:



Thu, Aug 5, 4:24 PM

- just bill less so you won't be on our clients radar
- allstate is reimbursing at medicare billing approved rate –

- bill just above medicare then stay under the radar

- $200k jury comment - jury isn't gonna wanna hear this.  what if this case gets thrown out "haha"

- expert disclosures are in today; total fraud – runs tufts
- why tufts? use mitchell
- we use mitchell – "that's the problem"

ECF No. 126-3, PageID.4312; ECF No. 129, PageID.4529-4532.

Zawaideh testified that the bullet points were accurate.  ECF No. 129,

PageID.4531.  Twenty minutes after that text message, Allstate served

ZMC's counsel with the expert disclosure of Wilfred Hynes, M.D.  ECF No.

118-5.  Hynes is affiliated with Tufts University.  ECF No. 129,

PageID.4510, 4531, 4550.

So just as Zawaideh claimed McEttrick had told him, Allstate served

expert disclosures that day about an expert associated with Tufts

University.

ZMC subpoenaed Sharolyn Pavlovich—the court reporter who Allstate retained to transcribe the Devereaux deposition—to testify at the evidentiary hearing.  ECF No. 122-2, PageID.4194; ECF No. 129, PageID.4479.  Pavlovich was a reluctant witness; she filed a motion to quash the subpoena, which the Court denied.[5]   ECF No. 122; ECF No. 125.

At the hearing, Pavlovich recalled being in the deposition room during a break with McEttrick and Zawaideh; she was unsure if Tilden was there the whole time, as she left the room at some point to use the restroom.  ECF No. 129, PageID.4481, 4492.  Pavlovich remembered McEttrick commenting to Zawaideh about "[b]illing less to be under the radar."  ECF No. 129, PageID.4484.  Pavlovich also recalled McEttrick saying that "[a] juror could purchase a house for $200,000."  *Id.*, PageID.4485. Pavlovich did not recall McEttrick and Tilden having a conversation among themselves during the break, but she did not rule out the possibility that they did.  *Id.*, PageID.4492-4494.

---

[5] Pavlovich completed an affidavit for her motion to quash.  ECF No. 122-1. The affidavit aligned with her hearing testimony.  *Id.*

### *C. Smith & Brink's Responses to ZMC's Allegations*

After Fink notified Smith & Brink attorneys about Zawaideh's

allegations, he met and conferred with McEttrick and Tilden by Zoom on

August 10, 2021.  McEttrick told Fink that the alleged discussions "did not

happen."  ECF No. 126-2, PageID.4282.  She told Fink, "The only

conversation I had with [Zawaideh] before the deposition was introducing

myself, because I had never met him before."  *Id*., PageID.4283.  When

asked about Zawaideh's allegations that McEttrick told him about the

expert report and the expert's educational affiliation, McEttrick called the

allegations "false."  *Id*., PageID.4284.

As Fink continued to describe Zawaideh's claims, McEttrick said that

"absolutely none of that happened."  *Id*., PageID.4286; *see also id*.,

PageID.4288, 4299 (reiterating that nothing Zawaideh said was true).

McEttrick said that she did not remember what happened after Schut left

the deposition room.  "I truly don't remember.  I know I got up to get my

phone.  I know I was checking my notes.  I don't know if I was in the room

with him or not, but I'm certain there were no communications apart from . .

. ."  *Id*., PageID.4289.   Fink interrupted McEttrick, so she never completed

her thought after she said "apart from."  *Id*.

7

Fink continued to outline what Zawaideh alleged that McEttrick said during the deposition break and she reiterated, "These conversations did not occur." *Id*., PageID.4289-4291. She later told Fink that Zawaideh's allegations sounded "like wishful thinking about your client." *Id*., PageID.4292. McEttrick also wondered if Zawaideh was "confused" and thought she was talking to him during her questioning of Devereaux. *Id*., PageID.4293. Tilden said that he was "not in the room during any conversations." *Id*., PageID.4298.

At the end of the Zoom meeting, McEttrick "strongly encourage[d]" Fink to not move to disqualify Smith & Brink or its individual attorneys, and she warned that they would "have to report the falsity of this to the court." *Id*., PageID.4299. McEttrick told Fink that she believed he had not made the appropriate inquiries required under Federal Rule of Civil Procedure 11.[6] *Id*., PageID.4299, 4302.

---

[6] Rule 11 requires attorneys to certify with their signature that pleadings, written motions, and other papers are presented for proper purposes, are nonfrivolous, and factually supported "to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances." Rule 11(b). An attorney who violates Rule 11(b) may be sanctioned under Rule 11(c).

In an affidavit included with Allstate's response to the motion to
disqualify, McEttrick said that she "had very little conversation with
defendant Zawaideh on August 5, and never any conversations alone with
him."  ECF No. 118-2, PageID.4130.  She said that Schut was present and
actively participated in those limited conversations, and that Zawaideh
made small talk, discussing matters like his family and colleges his family
members attended in Massachusetts.  *Id*.  McEttrick claimed that, when
Schut left the deposition room, she (McEttrick) spent most of that break in
another room with her legal assistant and did not speak to Zaweideh.  *Id*.
She said that, when she was in the deposition room during that break, she
spoke only to Tilden about a separate case.  *Id*., PageID.4130-4131.
McEttrick said that she had been unaware that Zawaideh had been
"eavesdropping" on her and Tilden's conversation.  *Id*., PageID.4131.

At the August 31 hearing, McEttrick described a two-minute
conversation she had with Zawaideh in the reception area before the
deposition.  ECF No. 129, PageID.4550, 4561.  When asked whether any
other attorneys were present during that conversation, McEttrick said that
Tilden was nearby, but she did not say that Schut was there.  *Id.*,
PageID.4560.  McEttrick testified that Zawaideh "had volunteered that
some of his family members had attended schools in Massachusetts, that's

9

when the reference to Tufts University came up, for example, but there was nothing but colloquial small talk." *Id*.  McEttrick claimed that after Tufts was mentioned she said, "oh, that's where Allstate's expert . . . went to medical school." *Id*., PageID.4553.

Addressing the deposition break, McEttrick testified that she had talked to Tilden and that Zawaideh overheard those discussions.  ECF No. 129, PageID.4551-4554.  She said that her comment about jurors recognizing that the $200,000 billed could purchase a house was a joke she made with Tilden.  *Id*., PageID.4554.  She denied saying anything to Zawaideh about staying under the radar.  *Id*.

 At the hearing, the Court questioned McEttrick about the word "eavesdropping" she used in her affidavit because it "sounds like something was done that was surreptitious."  ECF No. 129, PageID.4563.  McEttrick acknowledged that her discussions with Tilden took place in the same room, roughly ten feet away from Zawaideh, but stood by her characterization of eavesdropping and claimed that he "was listening for some motivation of his own."  ECF No. 129, PageID.4561-4563.

In Allstate's response to the motion to disqualify, it also accused Fink of "confronting" the court reporter Sharolyn Pavlovich and "suggest[ing]" to Pavlovich that the conversations Zawaideh alleged did take place.  ECF

10

No. 118, PageID.4111-4112.  Allstate said that Pavlovich "expressly refuted" Zawaideh's version of events.  *Id*., PageID.4112.  And Allstate claimed that ZMC was motivated to "take extreme steps" to derail this litigation.  *Id*., PageID.4114.

### III.    Findings of Fact

#### A. *Zawaideh's allegations about his ex parte conversations with McEttrick are credible*.

Zawaideh's testimony was buttressed by Pavlovich's testimony that she recalled McEttrick saying "[b]illing less to be under the radar" and that "[a] juror could purchase a house for $200,000."  ECF No. 129, PageID.4484-4485.  Pavlovich did not recall McEttrick and Tilden talking among themselves.  *Id*., PageID.4481, 4492-4494.  Pavlovich's credibility was heightened by her natural role as an "impartial party" and her reluctance to testify on Zawaideh's behalf.  *Id*., PageID.4489.

The text message bullet-pointing McEttrick's alleged statements to Zawaideh also support his claims.  ECF No. 126-3, PageID.4312.  The message was sent 15 minutes after the deposition ended and included wording that mirrored Pavlovich's memory: "just bill less so you won't be on our clients [sic] radar" and "$200k jury comment—jury isn't gonna wanna hear this."  *Id.*  The text message also reflected Zawaideh's claim that

11

McEttrick discussed Allstate's expert disclosures and that the expert "runs tufts." *Id*.

Allstate sent its expert disclosures 20 minutes after the text message, and those disclosures confirmed that its expert is affiliated with Tufts University.  ECF No. 118-5.

### B. McEttrick's meet and confer statements, affidavit, and testimony under oath contradict each other and lack credibility.

McEttrick said during the Zoom meet and confer that "absolutely none" of what Zawaideh said happened; that the only conversations she had with him before the deposition was to introduce herself; that she remembered nothing about what happened when Schut left the deposition room; and that Zawaideh must have thought she was talking to him when she questioned Devereaux during the deposition.  ECF No. 126-2, PageID.4282-4286, 4288-4293, 4299.

In contrast, McEttrick's affidavit says that she not only introduced herself to Zawaideh, but that she also engaged in small-talk with him.  ECF No. 118-2, PageID.4130.  She said in her affidavit that Schut was a present and active participant in those conversations.  *Id*.  Yet, during the hearing, McEttrick testified that Tilden was nearby when she had her small-talk

conversation with Zaweidah; she did not say that Schut was there, contradicting her affidavit.  ECF No. 129, PageID.4560.

After saying during the meet and confer that she "truly [did not] remember" what happened when Schut left the deposition room, McEttrick said in her affidavit that she spoke only to Tilden about a separate case and that she did not realize that Zawaideh was eavesdropping on them. *Compare* ECF No. 126-2, PageID.4288-4289, *with* ECF No. 118-2, PageID.4130-4131.  But Tilden said during the meet and confer that he was "not in the room during any conversations," and Pavlovich was unsure if Tilden was in the room when she heard McEttrick making the relevant statements.  ECF No. 126-2, PageID.4298, ECF No. 129, PageID.4481, 4492-4494.

McEttrick testified during the hearing that the comment about the $200,000 bill was a joke she made to Tilden and she reiterated her claim that other comments Zawaideh attributed to her were part of her conversation with Tilden.  ECF No. 129, PageID.4554-4555.  This testimony contradicts her meet and confer statement that "absolutely none of that happened."  ECF No. 126-2, PageID.4286.  And McEttrick's testimony that she said nothing about Zawaideh staying under the radar conflicts with Pavlovich's testimony, the text message, and Zaweidah's

13

testimony.  ECF No. 129, PageID.4518, 4484, 4554-4555; ECF No. 126-3, PageID.4312.

McEttrick's hearing testimony provided her first explanation for how Zaweideh knew that Allstate's expert was linked to Tufts University.  ECF No. 129, PageID.4553.  She said that Tufts came up during their small-talk conversation and she then commented that Allstate's expert went to the school.  *Id.*  But during the meet and confer, when Fink reported that Zaweideh said that McEttrick discussed "some of the education affiliation of your expert," McEttrick called that allegation "false."  ECF No. 4283-4284. She also denied telling Zawaideh about Allstate's expert report.  *Id*.  Yet the text message referred to McEttrick saying that "expert disclosures are in today; total fraud – runs tufts," and Allstate sent the expert disclosure 20 minutes after Schut sent the text message to Zawaideh.  ECF No. 118-5, PageID.4139; ECF No. 126-3, PageID.4312.  McEttrick's claim that she merely mentioned that Allstate's expert went to Tufts is not credible.

### C. Although the record is mixed on whether Tilden was present when McEttrick made ex parte statements to Zawaideh, the Court finds that he was most likely there during the deposition break discussions.

Zawaideh testified that McEttrick was the only attorney present when she told him about the expert report and that Tilden "walked up at the tail end of the conversation."  ECF No. 129, PageID.4505-4510, 4512-4513.

14

But McEttrick testified that Tilden was nearby the entire time when she chatted with Zawaideh.  *Id*., PageID.4560.

Zawaideh testified that Tilden was present for the entire conversation during the deposition break.  *Id*., PageID.4526.  But Pavlovich did not know if Tilden was in the deposition room when McEttrick made the ex parte statements.  *Id*., PageID.4481, 4492.

Tilden said during the meet and confer that he was "not in the room during any conversations."  ECF No. 126-2, PageID.4298.  But McEttrick testified that the statements Zawaideh claimed she made were from private discussions she was having with Tilden, and that Zawaideh was eavesdropping.  ECF No. 129, PageID.4551-4552, 4554, 4563.

### D. Allstate's attorneys tried to pressure ZMC's counsel not to bring McEttrick's statements to the attention of the Court and then made unproven accusations against Zawaideh and defense counsel.

During the meet and confer, McEttrick told Fink that he knew that Zawaideh's allegations were false and that she "strongly encouraged [him] not to pursue this motion, because Allstate will, of course, have to report the falsity of this to the court."  ECF No. 126-2, PageID.4299.  McEttrick suggested that she would pursue Rule 11 sanctions against Fink if he moved to disqualify Smith & Brink, alleging that Fink had conducted an inadequate inquiry.  *Id*., PageID.4300, 4302.  But in their response brief,

Smith & Brink faulted defense counsel for not "immediately" raising the matter with the Court.  ECF No. 118, PageID.4109-4110.  In other words, Smith & Brink now suggests that the motion to disqualify should have been filed before defense counsel completed any investigation to address Zawaideh's claims.

In their response, Allstate's counsel accused ZMC and its counsel of filing the motion to disqualify to harass Allstate; of having an "improper ulterior motive"; of concocting a story; and of acting with "the utmost bad faith."   ECF No. 118, PageID.4104-4105.  Smith & Brink allege that defense counsel "knowingly and intentionally left defendant Zawaideh alone with Allstate's counsel and the court reporter."  *Id*., PageID.4110. Thus, Smith & Brink accuse defense counsel of intentionally entrapping them.  But they neither cite evidence to support this alleged plot nor explain how defense counsel successfully solicited Pavlovich to falsely corroborate Zawaideh's allegations.

To defend themselves, Smith & Brink attack Zawaideh's character based on unproven claims.  Specifically, Allstate cites the allegations of fraud in the complaint here, but those claims have not yet been adjudicated.  *Id*., PageID.4105, 4113-4114.  Smith & Brink also cite alleged criminal and disciplinary investigations by federal agencies, and attach in

support a Health and Human Services subpoena requesting information about ZMC for a "health oversight and/or law enforcement purposes." *Id*.; ECF No. 118-8, PageID.4151.  But neither ZMC nor Zawaideh has been charged with criminal conduct, let alone convicted of any crimes. *Id*., PageID.4105, 4113-4114.

Allstate's counsel also falsely accused Fink of acting improperly in his dealings with Pavlovich.  Smith & Brink alleged that (1) Fink confronted Pavlovich; (2) tried to influence her to sign a dishonest affidavit; (3) and claimed that Pavlovich confirmed Zawaideh's testimony when she had "expressly refuted the defendants' claimed version of events." *Id*., PageID.4112.  But instead of confronting Pavlovich, Fink merely telephoned her twice.  ECF No. 129, PageID.4496.  Fink's calls made Pavlovich uncomfortable only because she is "supposed to be an impartial party"; she did not describe him as acting confrontational or aggressive. ECF No. 129, PageID.4489.

In fact, Pavlovich confirmed that Fink had told her to sign his proposed affidavit only if she "thought it was accurate." *Id*., PageID.4498. Pavlovich did not expressly refute the affidavit Fink had proposed; she testified that she never read it. *Id*., PageID.4488, 4495.  And she denied telling Fink that she disagreed with his characterization of the

17

conversations.  *Id*., PageID.4491-4492.  But even after this testimony, Smith & Brink continued to accuse Fink of confronting Pavlovich and relying on facts that Pavlovich "had expressly declined to set forth in an affidavit."  ECF No. 131, PageID.4810-4811 & n.3.  Smith & Brink continues to push a false narrative.

McEttrick also falsely insinuated that Fink silenced her during the August 10 recorded meet and confer.  McEttrick had said during the meet and confer that Allstate's attorneys requested the meeting.  ECF No. 126-2, PageID.4299.  But at the hearing, McEttrick objected to the Court admitting the transcript of the meet and confer into evidence.  ECF No. 129, PageID.4475.  She argued that the statements made during that meeting were not under oath and thus lacked reliability, and that she did not have a chance to speak until "towards the end" of the meeting.  *Id*.  She repeated that "towards the end" of the meeting she "finally had a chance to speak." *Id*., PageID.4476.  But the transcript shows that McEttrick had ample chances to speak throughout the meeting.  ECF No. 126-2.  In fact, McEttrick was the one who repeatedly told Fink that she would "respond at the end" and that he should "keep going."  ECF No. 126-2, PageID.4285-4286, 4290-4293.  McEttrick's accusation that Fink stifled her ability respond to Zawaideh's allegations during the meet and confer is false.

18

## IV.   Analysis

### A.

"A motion to disqualify counsel is the proper method for a party to bring an alleged breach of ethical duties to the court's attention."  *DeBiasi v. Charter County of Wayne*, 284 F. Supp. 2d 760, 770 (E.D. Mich. 2003). A motion to disqualify is the proper method because federal courts have inherent powers to supervise the conduct of attorneys practicing before them, and "vital interests in protecting the integrity of their judgments, maintaining public confidence in the integrity of the bar, eliminating conflicts of interest, and protecting confidential communications between attorneys and their clients."  *Com. Ins. Co. v. Graphix Hot Line, Inc*., 808 F. Supp. 1200, 1203 (E.D. Pa. 1992).  Defense counsel was thus right to bring Zawaideh's allegations to the attention of this court, and McEttrick's efforts to strongly discourage Fink from doing so are not well taken.

A court confronted with a motion to disqualify counsel must weigh competing interests.  On the one hand, "[b]ecause disqualification separates a party from the counsel of their choice with immediate and measurable effect, disqualification is considered a drastic measure which courts should be hesitant to impose except when absolutely necessary." *Dirksing v. Safeco Ins. Co. of Illinois*, No. 5:20-CV-263-JMH, 2021 WL

2554918, at *2 (E.D. Ky. June 22, 2021) (citations and internal quotation marks omitted).  Courts must review motions to disqualify counsel with extreme caution because they can easily be misused as a harassment technique.  *Allen v. Hanover Ins. Grp.*,19-12024, 2021 WL 607101, at *1 (E.D. Mich. Jan. 14, 2021).  The moving party thus bears a heavy burden to prove that opposing counsel should be disqualified.  *MJK Family LLC v. Corporate Eagle Mgmt. Servs.*, 676 F. Supp. 2d 584, 592 (E.D. Mich. 2009).

On the other hand, federal courts have a strong interest in "preserving the integrity of its proceedings, and protecting the truth-seeking function of the proceedings."  *Essex Cty. Jail Annex Inmates v. Treffinger*, 18 F. Supp. 2d 418, 439 (D.N.J. 1998).  Thus, before a court decides to impose the extreme sanction of disqualifying counsel, it must find that "a reasonable possibility that some specifically identifiable impropriety actually occurred," and that "the public interest in requiring professional conduct by an attorney outweighs the competing interest of allowing a party to retain counsel of his choice."  *SST Casting, Inc. v. Amana Appliances, Inc.,* 250 F. Supp. 2d 863, 865-866 (S.D. Ohio 2002).  "[T]he paramount concern must be the preservation of public trust both in the scrupulous administration of justice and in the integrity of the bar," so "the recognizably

20

important right to choose one's counsel must yield to the ethical

considerations that embody the moral principles of our judicial process."

*Kinchen v. Brennan*, No. CV1810311PADFMX, 2020 WL 2374947, at \*1

(C.D. Cal. Mar. 17, 2020) (citation and internal quotation marks omitted).

The Court finds that, to preserve the public trust in the integrity of the

bar and protect the truth-seeking function of the proceedings, Smith & Brink

must be disqualified from representing Allstate in this case.

**B.**

The Court starts by addressing the ethical violations ZMC alleged.

ZMC argued that McEttrick's conduct at the Devereaux deposition violated

M.R.P.C. 4.2.  Rule 4.2(a) states: "a lawyer shall not communicate about

the subject of the representation with a person whom the lawyer knows to

be represented in the matter by another lawyer, unless the lawyer has the

consent of the other lawyer."  ZMC alleges that Tilden violated M.R.P.C.

5.1(c), which assigns vicarious responsibility to a partner of an attorney

committing an ethical rule violation if the partner knows of violative conduct

and either ratifies it or fails to take remedial action.  These Michigan rules

21

mirror the Model Rules of Professional Conduct.[7]  Since Rule 5.1(c) addresses vicarious liability, the first question is whether McEttrick's conduct violated Rule 4.2.  The Court finds that she did.

Rule 4.2 is prophylactic and designed to "(1) prevent an attorney from circumventing opposing counsel in order to obtain statements from the adversary; (2) to preserve the integrity of the attorney-client relationship; (3) to prevent the inadvertent disclosure of privileged information; and (4) to facilitate settlement by involving lawyers in the negotiation process."  *Eagle v. Hurley Med. Ctr.,* 292 F.R.D. 466, 478 (E.D. Mich. 2013).  The rule "guarantees fairness in the adversarial system" and "prevents unprincipled attorneys from exploiting the disparity in legal skills between attorney and laypeople."  *Papanicolaou v. Chase Manhattan Bank, N.A*., 720 F. Supp. 1080, 1084 (S.D.N.Y. 1989).

In *Papanicolauo*, the court disqualified the law firm representing the defendant after one of its attorneys had a 90-minute ex parte discussion with the plaintiff.  *Id*. at 1083-1086.  The law firm argued that it learned no more than it would have from the exhaustive discovery and the plaintiff's

---

[7] *See* https://www.americanbar.org/groups/professional_responsibility/publications/model_rules_of_professional_conduct/model_rules_of_professional_conduct_table_of_contents/ (last visited November 10, 2021).

response to a motion for summary judgment. *Id*. at 1085. But because "the parley's substance went to the nub of the lawsuit," defense counsel had to be disqualified to protect the plaintiff from any unfair advantage that *might* have resulted from the improper meeting. *Id*. The court emphasized that Rule 4.2 plainly requires attorneys to avoid discussing the merits of ongoing lawsuits with an opposing party without counsel present. *Id*.; *see also Inorganic Coatings, Inc. v. Falberg*, 926 F. Supp. 517, 520 (E.D. Pa. 1995) (agreeing with *Papanicolaou* that disqualification is required without regard to proven prejudice when an attorney has violated Rule 4.2 by engaging in ex parte discussions that went to the nub of the case).

Both *Papanicolaou* and *Inorganic* involved 90-minute discussions, but courts have "recognized that a Rule 4.2 violation can occur even in brief and insignificant encounters with a represented party." *Moore v. Club Exploria*, LLC, No. 19-CV-2504, 2021 WL 260227, at *3 (N.D. Ill. Jan. 26, 2021). "There is no escape clause for attorneys who speak to represented parties about the subject matter of the representation where the contact is brief and nothing pertinent is discovered." *Id*. at *7.

McEttrick violated Rule 4.2 by engaging in substantive discussions that went to the nub of the case—ZMC's billing practices and Allstate's allegations of fraud. Most of Zawaideh testimony described McEttrick

boasting about the strength case of Allstate's case, but he also said that McEttrick asked him about his past and future billing practices, which invited him to disclose privileged information.  Tilden was present when McEttrick asked those questions and he did nothing to stop the discussion, so he violated Rule 5.1(c).

Smith & Brink's ethical violations did not stop there.

### C.

In its supplemental brief, ZMC argues that "Smith & Brink's subsequent inconsistent accounts of August 5 that attempt to undermine the severity of their ethical violations instead result in additional ethical violations."  ECF No. 132, PageID.4851-4852.  The Court agrees.  Most egregiously, McEttrick lied in her affidavit and under oath during the evidentiary hearing.  Those lies may qualify as perjury under 18 U.S.C. § 1621, and they undoubtedly amount to a violation of M.R.P.C. 3.3.

Under Rule 3.3(a), lawyers owe a duty of candor to the Court, and must not "make a false statement of material fact or law to a tribunal" or "offer evidence that the lawyer knows to be false."  Violating the duty of candor is sanctionable under the Court's inherent authority.  *Beard v. Hawkins*, No. CV 14-13465, 2016 WL 6787628, at *7 (E.D. Mich. Sept. 13, 2016), *adopted in relevant part*, 2016 WL 6518490 (E.D. Mich. Nov. 3,

24

2016).   And "it is clear that a district court properly exercises its inherent power when it uses that power to disqualify an attorney who has made material misrepresentations to the Court." *Gordon v. Dadante*, No. 1:05-CV-2726, 2009 WL 2732827, at *7–8 (N.D. Ohio Aug. 26, 2009); *see also Field Turf USA, Inc. v. Sports Const. Grp*., LLC, No. 1:06 CV 2624, 2007 WL 4412855, at *5 (N.D. Ohio Dec. 12, 2007) (disqualifying counsel for violating duty of candor).

Smith & Brink also made baseless accusations that Fink committed misconduct in his interactions with Pavlovich.  By making those baseless allegations, Smith & Brink violated Rule 11(b)(3) (requiring that attorneys sign papers presented to the court to ensure that "the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery.").  Smith & Brink's violation of Rule 11 is ironic considering that McEttrick accused Fink of committing that type of violation when she discouraged him from bringing Zawaideh's allegations to the attention of the Court during the meet and confer.  And along the same lines as Smith & Brink's false portrayal of Fink's interaction with Pavlovich, McEttrick pretended that Fink silenced her during the meet and confer.

Using another disreputable tactic, Smith & Brink painted Zawaideh as a criminal whose allegations were unworthy of consideration, even though he has been neither found liable in this lawsuit nor guilty of any crimes. Besides, Rule 4.2 does not protect only the innocent; even when a party is guilty of illegal conduct, opposing counsel does not have license to engage in ex parte discussions with him or to exploit his lack of legal skills. *Papanicolaou*, 720 F. Supp. at 1084.

Smith & Brink also manufactured a made-for-TV plot in which ZMC "knowingly and intentionally" had Schut leave Zawaideh alone with Allstate's counsel and the court reporter in the deposition room, allowing him to eavesdrop on McEttrick and Tilden's conversation and concoct a story to frame them.  ECF No. 118, PageID.4104-4105, 4110; ECF No. 118-2, PageID.4131.

Simply put, Smith & Brink applied scorched-earth tactics to discourage Fink from bringing the serious allegations of misconduct before the Court, to persuade this Court to disregard the allegations, and to portray ZMC and Fink as bad actors.  ZMC's allegations of misconduct raised issues about the fundamental fairness and integrity of the proceedings, and Smith & Brink's deny-and-attack gamesmanship did not reflect the gravity of those allegations.

26

To preserve the integrity, fairness, and truth-seeking function of the court proceedings, the Court finds that it must disqualify Smith & Brink. Under the facts here, the paramount concern of preserving the public trust in the administration of justice outweighs Allstate's interest in keeping its counsel of choice.

## V.   Conclusion

The Court **GRANTS** ZMC's motion to disqualify Smith & Brink, **ECF No. 110**, and refers McEttrick to the Chief Judge of this Court and the Michigan Attorney Grievance Commission under Eastern District of Michigan Local Rule 83.22(c) and (e).

s/Elizabeth A. Stafford
ELIZABETH A. STAFFORD
United States Magistrate Judge

Dated: November 15, 2021

## NOTICE TO PARTIES ABOUT OBJECTIONS

Within 14 days of being served with this order, any party may file objections with the assigned district judge.  Fed. R. Civ. P. 72(a).  The district judge may sustain an objection only if the order is clearly erroneous or contrary to law.  28 U.S.C. § 636.  **"When an objection is filed to a**

27

**magistrate judge's ruling on a non-dispositive motion, the ruling**

**remains in full force and effect unless and until it is stayed by the**

**magistrate judge or a district judge."**  E.D. Mich. LR 72.2.

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on November 15, 2021.

<u>s/Marlena Williams</u>
MARLENA WILLIAMS
Case Manager